# Exhibit 3

# Notice of Annual and Special Meeting of Shareholders

# and

# Management Information Circular

**Dated May 14, 2008**

AFRICO RESOURCES LTD

**Meeting to be held:**

**Thursday, June 12, 2008 at 1:30 p.m.**
**Pacific Room, Metropolitan Hotel**
**645 Howe Street, Vancouver, British Columbia**

AFRICO RESOURCES LTD

# NOTICE OF ANNUAL AND SPECIAL MEETING OF SHAREHOLDERS

TO: All holders of common shares of Africo Resources Ltd.

We will hold an annual and special meeting of our shareholders on **Thursday, June 12, 2008** in the **Pacific Room** of the **Metropolitan Hotel** at **645 Howe Street, Vancouver, British Columbia**. The meeting will start at **1:30 p.m.** (Vancouver time). We cordially invite you to attend and encourage you to do so.

At the meeting we will:

(1) present our financial statements for the year ended December 31, 2007, together with the notes thereto and the report of our auditor on those statements;

(2) elect directors;

(3) re-appoint PricewaterhouseCoopers LLP, Chartered Accountants, as our auditor;

(4) authorize the Board of Directors to fix the auditor's remuneration;

(5) ask you to consider and, if you think it appropriate to do so, to pass, with or without amendment, a resolution approving amendment to, and the subsequent termination of, Africo's Shareholder Rights Plan Agreement, all as more particularly described in the Information Circular which accompanies this Notice of Meeting;

(6) ask you to consider and, if you think it appropriate to do so, to pass, with or without amendment, the Camrose Transactions Resolutions approving the proposed transactions with Camrose Resources Limited, all as more particularly defined and described in the Information Circular which accompanies this Notice of Meeting;

(7) ask you to consider and, if you think it appropriate to do so, to approve the adoption by the Board of Directors of the 2008 Stock Option Incentive Plan, all as more particularly described in the Information Circular which accompanies this Notice of Meeting; and

(8) consider any other proper business.

An Information Circular prepared by the management of Africo, together with a form of proxy, accompany this Notice of Meeting and should be read in conjunction with this Notice of Meeting.

May 14, 2008.

AFRICO RESOURCES LTD.

By: *"Chris Theodoropoulos"*

Chris Theodoropoulos
Chairman of the Board

**If you cannot attend, we encourage you to complete and return the enclosed form of proxy indicating your voting instructions. Please complete, date and sign your form of proxy or voting instruction form and return it by mail in the envelope provided for this purpose, or by facsimile to our transfer agent, Computershare Investor Services Inc., 9th Floor, 100 University Avenue, Toronto, Ontario M5J 2Y1 Canada (facsimile numbers: within North America 1-866-249-7775; outside North America 1-416-263-9524); or by following the procedures for telephone or Internet voting provided in the enclosed form of proxy or voting instruction form. To be valid, a completed form of proxy must be received by our transfer agent by no later than 1:30 p.m. (Vancouver time) on Tuesday, June 10, 2008 or, if the meeting is adjourned, by no later than 48 hours prior to the time of the adjourned meeting.**

**If you are not a registered shareholder, please refer to the accompanying Information Circular for information on how to vote your shares.**

# TABLE OF CONTENTS

**PART 1 – VOTING** ..... **1**
HOW A VOTE IS PASSED ..... 1
WHO CAN VOTE? ..... 1
VOTING BY PROXY ..... 2
NON-REGISTERED SHAREHOLDERS ..... 3

**PART 2 - VOTING SHARES AND PRINCIPAL HOLDERS THEREOF** ..... **4**

**PART 3 - THE BUSINESS OF THE MEETING** ..... **4**
FINANCIAL STATEMENTS ..... 4
ELECTION OF DIRECTORS ..... 4
APPOINTMENT OF THE AUDITOR ..... 6
AMENDMENT TO, AND SUBSEQUENT TERMINATION OF, THE SHAREHOLDER RIGHTS PLAN AGREEMENT ..... 7
TRANSACTIONS WITH CAMROSE RESOURCES LIMITED ..... 7
SUBSCRIPTION AGREEMENT WITH CAMROSE RESOURCES LIMITED ..... 8
TRANSFER AGREEMENT ..... 9
AKAM AGREEMENT ..... 10
RISKS TO AFRICO ASSOCIATED WITH COMPLETION OF THE CAMROSE TRANSACTIONS ..... 11
SHAREHOLDER APPROVAL OF THE TRANSACTIONS WITH CAMROSE RESOURCES LIMITED ..... 11
APPROVAL OF 2008 STOCK OPTION PLAN ..... 12

**PART 4 – EXECUTIVE COMPENSATION** ..... **13**
COMPENSATION OF NAMED EXECUTIVE OFFICERS ..... 13
TERMINATION OF EMPLOYMENT, CHANGE IN RESPONSIBILITIES AND EMPLOYMENT CONTRACTS 15
COMPOSITION OF THE COMPENSATION COMMITTEE ..... 18
REPORT ON EXECUTIVE COMPENSATION ..... 18
COMPENSATION OF DIRECTORS ..... 19
PERFORMANCE GRAPH ..... 20

**PART 5 – SECURITIES AUTHORIZED FOR ISSUANCE UNDER EQUITY COMPENSATION PLANS** ..... **21**

**PART 6 – AUDIT COMMITTEE** ..... **23**

**PART 7 – CORPORATE GOVERNANCE** ..... **23**

**PART 8 – OTHER INFORMATION** ..... **26**
DIRECTORS AND OFFICERS INSURANCE ..... 26
INDEBTEDNESS OF DIRECTORS AND EXECUTIVE OFFICERS ..... 26
INTEREST OF CERTAIN PERSONS IN MATTERS TO BE ACTED ON AT THE MEETING ..... 27
INTEREST OF INFORMED PERSONS IN MATERIAL TRANSACTIONS ..... 27
MANAGEMENT CONTRACTS ..... 27
CEASE TRADE ORDERS AND CORPORATE BANKRUPTCY ..... 27
PENALTIES AND SANCTIONS ..... 28
PERSONAL BANKRUPTCY ..... 28
OTHER MATTERS ..... 28
ADDITIONAL INFORMATION ..... 28
DIRECTORS' APPROVAL ..... 28

SCHEDULE "A" – Rights Plan Termination Agreement
SCHEDULE "B" – Rights Plan Termination Resolution
SCHEDULE "C" – Camrose Transactions Resolutions

AFRICO RESOURCES LTD

# Management Information Circular

The information contained in this Information Circular, unless otherwise indicated, is as of May 14, 2008. In this Information Circular, unless otherwise specified, all references to "$" or "dollars" are to Canadian dollars.

This Information Circular is being mailed by the management of Africo Resources Ltd. ("Africo" or the "Corporation") to everyone who was a shareholder of record of our company on May 12, 2008, which is the date that has been fixed by the directors of Africo as the record date to determine the shareholders who are entitled to receive notice of the meeting.

We are mailing this Information Circular in connection with the solicitation of proxies by and on behalf of our management for use at the annual and special meeting of the shareholders of Africo that is to be held on Thursday, June 12, 2008, at 1:30 p.m. (Vancouver time) at the Metropolitan Hotel, 645 Howe Street, Vancouver, British Columbia. The solicitation of proxies will be primarily by mail. Certain employees or directors of Africo may also solicit proxies by telephone or in person. The cost of solicitation will be borne by Africo. Africo may after the date hereof choose to retain an information agent, in which case such costs will also be borne by Africo and same will be announced by press release.

Under Africo's By-laws, at least two persons must be present in person or represented by proxy, each being a shareholder entitled to vote at the meeting or a duly appointed proxy for an absent shareholder so entitled, before any action may validly be taken at the meeting. If such a quorum is not present in person or by proxy, we will reschedule the meeting.

## PART 1 – VOTING

### HOW A VOTE IS PASSED

Other than as noted below, all of the matters that are to be voted at the meeting as described in the attached Notice of Meeting are ordinary resolutions and can be passed by a simple majority – that is, if more than half of the votes that are cast in person or by proxy are in favour, then the resolution is approved. In addition, the resolution to approve the amendment to, and subsequent termination of, the Shareholder Rights Plan Agreement, as hereinafter defined and described, must be approved by a simple majority of votes cast by Africo's shareholders who are "independent shareholders" as defined by the Rights Plan. Further, shareholder approval of the 2008 Stock Option Plan requires a simple majority of the votes cast by Africo's shareholders who are not insiders of Africo or associates of such insiders and who are entitled to participate in the 2008 Plan. In this regard, as of May 12, 2008, the date fixed by our directors as the record date for determining who is entitled to receive notice of and to vote at the meeting and based on the information available to Africo, the votes attached to 527,737 common shares are not eligible to vote for approval of the 2008 Stock Option Plan. See Part 3 – The Business of the Meeting for more detail on the proposed resolutions to be put to shareholders at the meeting.

### WHO CAN VOTE?

If you are a registered shareholder of Africo as at May 12, 2008, you are entitled to attend the meeting and cast a vote for each share registered in your name on all resolutions put before the meeting. If the shares are registered in the name of a corporation, a duly authorized officer of the corporation may attend on its behalf but documentation indicating such officer's authority should be presented at the meeting. If you are a registered shareholder but do not wish to, or cannot, attend the meeting in person you can appoint someone who will attend the meeting and act as your proxyholder to vote in accordance with your instructions (see "Voting by Proxy"). If your

## PART 2 - VOTING SHARES AND PRINCIPAL HOLDERS THEREOF

Africo has authorized capital of unlimited common shares. Each shareholder is entitled to one vote for each common share registered in his or her name at the close of business on May 12, 2008, the date fixed by our directors as the record date for determining who is entitled to receive notice of and to vote at the meeting.

At the close of business on May 12, 2008, 27,213,092 common shares in the capital of Africo were outstanding. To the knowledge of Africo's directors and officers, the only persons who beneficially owned, directly or indirectly, or exercised control or direction over 10% or more of Africo's common shares on that date were:

| Name[(1)] | Number of common shares[(1)] | Percentage of issued shares |
|---|---|---|
| Geologic Resource Partners LLC | 3,320,700 | 12.2% |
| John Tognetti | 3,255,000 | 12.0% |

(1) Information as to ownership of shares has been extracted from insider reports or Early Warning Reports filed by the individuals pursuant to applicable securities legislation and publicly available through the internet at the Canadian System for Electronic Disclosure by Insiders (SEDI) at www.sedi.ca or at the Canadian System for Document Analysis and Retrieval (SEDAR).

## PART 3 - THE BUSINESS OF THE MEETING

### FINANCIAL STATEMENTS

The consolidated financial statements of Africo for the year ended December 31, 2007 will be placed before you at the meeting. These financial statements have been mailed to shareholders together with the Notice of Meeting and this Information Circular.

### ELECTION OF DIRECTORS

Directors of Africo are elected for a term of one year. The current term of office of each of the nominees proposed for election as a director will expire at the meeting, and each of them, if elected, will serve until the close of the next annual meeting, unless he resigns or otherwise vacates office before that time. Under Africo's Articles and in accordance with the requirements of the *Canada Business Corporations Act*, Africo shall have a minimum of three and a maximum of nine directors, the exact number of directors, within such limits, to be determined from time to time by the Board. Africo currently has five directors and six directors are proposed by management for election as directors at the meeting. Notwithstanding this, **pursuant to the terms of the Subscription Agreement described in Part 3 – The Business of the Meeting – Subscription Agreement with Camrose Resources Limited, Africo has agreed to support the nomination of four individuals designated by Camrose for appointment or election to Africo's Board of Directors and to take all steps necessary to ensure that the Board is comprised of no more than seven directors.** As such, the Board of Directors of Africo has set by resolution, in accordance with Africo's By-laws, the number of directors at seven.

**To fulfill Africo's obligations to Camrose Resources Limited with respect to Board representation, upon closing of the transactions contemplated by the Subscription Agreement, it is expected that David Adamson, John Dixon and Michael O'Brien, each a nominee for election as a director of Africo at the meeting, will resign and the three vacancies on the Board thereby created will be filled by three persons nominated by Camrose Resources Limited and, in addition, the Board will appoint, in accordance with its By-laws, one additional nominee of Camrose as a director to the Board, at which point Africo's Board of Directors will be comprised of seven directors, four of whom will be nominees of Camrose. Shareholders will not be given an opportunity to elect such nominees until the next annual general meeting.**

#### Nominees for Election

The following are the nominees proposed for election as directors of Africo together with the number of common shares and stock options that are beneficially owned, or controlled or directed, directly or indirectly, by each nominee. All of the nominees, with the exception of Michael O'Brien, are currently directors. Each of the nominees has agreed to stand for election and we are not aware of any intention of any of them not to do so. If,

however, one or more of them should become unable to stand for election, it is likely that one or more other persons would be nominated at the meeting for election and, in that event, the persons designated in the form of proxy will vote in their discretion for a substitute nominee.

| Name and place of residence | Principal occupation | Director since | Number of shares | Number of options |
|---|---|---|---|---|
| **DAVID W. ADAMSON**[(1)]<br>British Columbia, Canada<br><br>*Director*<br><br>*Member of the Audit Committee* | Exploration Geologist; President, CEO and a director of Rubicon Minerals Corporation, a Canadian based mineral exploration-stage company that explores for commercially viable gold and base metal deposits (since March 1996). | July 4, 2006 | 100,207 | 439,307 |
| **JOHN DIXON**<br>Tanzania<br><br>*Director*<br><br>*Chair of the Compensation Committee and Member of the Audit Committee and the Corporate Governance Committee* | President of Oryx Mining and Exploration, a Canadian company exploring for viable gold deposits in Africa (since July 2006); Independent Geologist with Bastillion Resources (Pty) Ltd., an independent geological and mining consulting company specialising in Africa (1996 – 2006). | July 4, 2006 | 83,658 | 200,000 |
| **ANTONY (TONY) HARWOOD**<br>England, United Kingdom<br><br>*President, Chief Executive Officer & Director*<br><br>*Member of the Compensation Committee* | President and CEO of Africo Resources (BC) Ltd. (since May 2006); Vice President, Placer Dome Inc., a publicly listed international gold mining company (June 1998 to March 2006). | July 4, 2006 | 110,195 | 670,000 |
| **LUKAS MARTHINUS (TINUS) MAREE**<br>British Columbia, Canada<br><br>*Director & Secretary*<br><br>*Member of the Audit Committee, the Compensation Committee and the Corporate Governance Committee* | President, River Capital Partners Ltd., a private investment company (since January 2001). | July 4, 2006 | 119,648 | 340,000 |

| Name and place of residence | Principal occupation | Director since | Number of shares | Number of options |
|---|---|---|---|---|
| **CHRIS THEODOROPOULOS**<br>British Columbia, Canada<br><br>*Director & Chairman of the Board*<br><br>*Member of the Corporate Governance Committee* | Self-employed businessman; Chairman of the Board of Africo (since July 2006) and its now wholly-owned subsidiary, Africo Resources (BC) Ltd. (since April 2005); Associate Counsel, Getz Prince Wells LLP, a law firm in Vancouver (November 2003 to March 2007); independent legal and business consultant (1996 to November 2003). | July 4, 2006 | 114,029 | 570,000 |
| **MICHAEL O'BRIEN**<br>British Columbia, Canada<br><br>*Director nominee & Chief Financial Officer* | Chief Financial Officer of Africo since March 2007 (acting Chief Financial Officer since December 2006); Consultant (August 2005 to February 2007); Chief Financial Officer and director of Irvin & Johnson Ltd (South Africa) (September 2004 to July 2005); Group Financial Manager of Irvin and Johnson Ltd (South Africa) (January 2003 to August 2004); Manager: Finance of Soekor Exploration and Production (Pty) Ltd (now part of PetroSA, South Africa) (August 1996 to September 2002). | Not applicable; nominee only | Nil | 200,000 |

(1) Although Mr. Adamson is being elected as a director at the meeting, he is expected to resign concurrently with the completion of the transactions contemplated with Camrose Resources Limited in favour of a nominee of Camrose Resources Limited. In the event that the transactions contemplated with Camrose Resources Limited do not complete, Mr. Adamson has advised Africo that he wishes to step down from the Board. In such case, Africo would seek an additional candidate to fill the vacancy created by Mr. Adamson's resignation.

Africo's management recommends that shareholders vote in favour of the nominees for election as directors. **Unless you give other instructions, the persons named in the enclosed form of proxy intend to vote FOR the election of the nominees as directors of Africo for the ensuing year.**

## APPOINTMENT OF THE AUDITOR

During the financial year ended December 31, 2007, PricewaterhouseCoopers LLP, Chartered Accountants, served as Africo's auditor, having served as auditor of Africo since June 30, 2005.

For details of fees paid by Africo to PricewaterhouseCoopers LLP for audit services during the last two completed financial years, see "Item 10 – Audit Committee" in Africo's Annual Information Form dated March 28, 2008 for the financial year ended December 31, 2007, which has been filed with regulators through the Canadian System for Electronic Document Analysis and Retrieval (SEDAR) and is available for viewing with Africo's other public disclosure documents through the internet at www.sedar.com.

Africo's management recommends that shareholders vote in favour of the re-appointment of PricewaterhouseCoopers LLP, Chartered Accountants, as Africo's auditor for the ensuing year and in favour of granting the Board of Directors the authority to determine the remuneration to be paid to the auditor. **Unless you**

**give other instructions, the persons named in the enclosed form of proxy intend to vote FOR the appointment of PricewaterhouseCoopers LLP to act as our auditor until the close of our next annual meeting and to vote FOR the proposed resolution to authorize the Board of Directors to fix the remuneration to be paid to the auditor.**

**AMENDMENT TO, AND SUBSEQUENT TERMINATION OF, THE SHAREHOLDER RIGHTS PLAN AGREEMENT**

The completion of the transactions contemplated by the Subscription Agreement between Africo and Camrose Resources Limited, as fully described below at Part 3 – The Business of the Meeting – Subscription Agreement with Camrose Resources Limited, is conditional upon, among other things, the amendment to and subsequent termination of the Shareholder Rights Plan Agreement (the "Rights Plan") dated as of May 25, 2007 between Africo and Computershare Trust Company of Canada (the "Rights Agent").

The amendment and termination is set forth in an amendment and termination agreement (the "Termination Agreement") between Africo and the Rights Agent dated as of April 17, 2008. A copy of the form of Termination Agreement is attached as Schedule "A" hereto. A copy of the Rights Plan has been electronically filed with regulators through the System for Electronic Document Analysis and Retrieval (SEDAR) and is available for public viewing via the Internet at www.sedar.com.

The amendment to the Rights Plan is to provide for the waiver and release of any and all rights that may have accrued in favour of the shareholders and holders of Rights immediately prior to the termination of the Rights Plan pursuant to the Termination Agreement. Africo is not aware of any such rights that may have accrued and is seeking the waiver and release merely as a matter of prudence in connection with the termination of the Rights Plan. The amendment and termination of the Rights Plan is subject to shareholder approval at this meeting and will become effective immediately after such approval is obtained.

The Rights Plan may only be amended and terminated pursuant to a resolution passed by a majority of the votes cast by all holders of common shares of Africo who vote in respect of such amendment and termination (other than any holder who does not qualify as an "Independent Shareholder", as such term is defined in the Rights Plan, with respect to all common shares beneficially owned by such person). As of the date of this Circular, management of Africo is not aware of any shareholders that would not qualify as Independent Shareholders.

At the meeting, Independent Shareholders (as that term is defined in the Rights Plan) will be asked to pass a resolution in the form set out in Schedule "B" hereto (the "Rights Plan Termination Resolution") approving the Termination Agreement. The Board of Directors has determined that it is advisable and in the best interests of Africo and its shareholders that the Rights Plan be amended and terminated as set forth in the Termination Agreement.

**The Board of Directors unanimously recommends that shareholders vote IN FAVOUR of the Rights Plan Termination Resolution. In the absence of contrary instructions, the persons designated by management of Africo in the enclosed form of proxy intend to vote FOR the Rights Plan Termination Resolution.**

**TRANSACTIONS WITH CAMROSE RESOURCES LIMITED**

The following is a summary of three agreements that Africo has entered into, which is derived from, and should be read in conjunction with, the referenced agreements which are hereinafter referred to as the "Camrose Transactions". This summary is qualified in its entirety by the actual terms of the relevant agreements. The agreements have been filed with regulators through the Canadian System for Electronic Document Analysis and Retrieval (SEDAR) and are available for viewing with Africo's other public disclosure documents through the internet at www.sedar.com.

See also Part 8 – Other Information – Interest of Certain Persons in Matters to be Acted on at the meeting.

***SUBSCRIPTION AGREEMENT WITH CAMROSE RESOURCES LIMITED***

Pursuant to a Subscription Agreement dated as of April 17, 2008, as amended (the "Subscription Agreement"), between Camrose Resources Limited ("Camrose") and Africo, Camrose agreed to subscribe for 40,000,000 common shares of Africo and 20,000,000 common share purchase warrants, each warrant entitling the holder to acquire one common share of Africo at a price of $3.50 for a period of 18 months from closing of the subscription (the "Subscription"). The aggregate purchase price payable by Camrose is $100,000,000, being $2.50 for each common share and ½ of a warrant. Africo will use the proceeds from the Subscription to fund on-going exploration and feasibility study work including such other development expenditures that are necessary or incidental to the development of Africo's Kalukundi cobalt copper project located in the Katanga province of the Democratic Republic of Congo, including general and administrative costs related thereto.

Camrose is a recently-established special purpose vehicle, incorporated and registered in the British Virgin Islands, owned by a trust for the benefit of the family of Dan Gertler. It is the sole shareholder of Kigala International Limited, which has purchased the entire share capital of Akam Mining Sprl (see "Akam Agreement" below). Camrose is currently arms' length, and is not a related party, to Africo.

Completion of the Subscription is subject to, among other things:

(a) the Transfer Agreement (as defined and described below) being executed and delivered by each of the parties thereto and being in full force and effect;

(b) the Akam Agreement (as defined and described below) being executed and delivered by each of the parties thereto and being in full force and effect;

(c) the shareholders of Africo having approved the transactions contemplated by the Subscription Agreement, the issuance of shares under the Transfer Agreement and the Akam Agreement and the issuance of shares contemplated by the Note (all as defined and described below);

(d) acceptance by The Toronto Stock Exchange (the "TSX");

(e) the Board of Directors of Africo and the shareholders of Africo having approved the amendment to the Rights Plan to waive any rights thereunder which may have existed or exist since its inception and the termination and repeal of the Rights Plan; and

(f) the Rights Plan being amended and terminated.

The completion of the Subscription is to take place on or about the 65th day following the meeting to which this Circular relates, or such earlier date after the meeting as Africo may determine.

The Subscription Agreement also provides that Africo will support the nomination of four individuals designated by Camrose for appointment to Africo's Board of Directors upon closing of the transactions contemplated by the Subscription Agreement, and will take all steps necessary to ensure that the Board is comprised of no more than seven directors and that a quorum is not more than a majority of all directors. In addition, Africo has agreed to support Camrose's majority representation on Africo's Board indefinitely, provided that if (i) the percentage of issued and outstanding common shares of Africo beneficially owned by Camrose and its affiliates (the "Camrose Interest") is at least 40% but less than 50%, Africo will support the nomination of three Camrose representatives at the first annual meeting of Africo shareholders held after the Camrose Interest enters this range, (ii) the Camrose Interest is at least 30% but less than 40%, Africo will support the nomination of two Camrose representatives at the first annual meeting of Africo shareholders held after the Camrose Interest enters this range, (iii) the Camrose Interest is at least 20% but less than 30%, Africo will support the nomination of one Camrose representative at the first annual meeting of Africo shareholders held after the Camrose Interest enters this range, and (iv) the Camrose Interest is less than 20%, Africo shall have no further obligations until such time as the Camrose Interest is again 20% or more.

In addition, Africo has agreed to execute an investors' rights agreement in favour of Camrose and any lenders to Camrose pursuant to which Africo will agree, at its cost, to qualify by prospectus the resale in Canada of the shares of Africo held by them on a demand and on a "piggyback" basis on customary terms.

Further, the Subscription Agreement provides that as long as Camrose and its affiliates hold at least 10% of the issued and outstanding shares of Africo, if Africo or any subsidiary proposes to issue any further Africo shares or convertible securities, Camrose shall have the right to purchase the portion thereof equal to the percentage of shares of Africo then beneficially owned by Camrose and its affiliates. However, this right will not apply to shares issued under a stock option plan established from time to time for the benefit of participating employees of Africo or upon the conversion or exchange of, or the exercise of any right attaching to, any convertible securities, or the issuance of securities in connection with a *bona fide* business acquisition by Africo or in connection with *bona fide* strategic partnerships, alliances and similar transactions. Africo has also agreed that, if the Rights Plan were ever determined to have been triggered in connection with the Subscription, Africo will issue to Camrose sufficient additional shares (the "Additional Shares") at the same price as applies under the Rights Plan so that Camrose's percentage ownership position after the exercise of the Rights Plan remains the same as without such exercise.

Camrose has advanced the principal amount of $2,000,000 to Africo (the "Loan"), pursuant to a Demand Promissory Note (the "Note") dated April 17, 2008 from Africo to Camrose. The Note provides that:

(a) the Loan will bear interest at the a rate equal to the London Interbank Offer Rate plus 2% per annum, calculated and payable semi-annually in arrears, with interest on overdue interest at the same rate;

(b) Camrose may only make demand on the earliest to occur of (i) the completion of the Subscription, (ii) the termination of the Subscription Agreement, and (iii) August 31, 2008; and

(c) if and only if demand is made upon completion of the Subscription Agreement, the entire Loan shall be set off against the aggregate subscription price payable under the Subscription Agreement. If the transactions contemplated by the Subscription Agreement are not completed, at the option of Africo, the entire Loan may be repaid by the issuance of common shares of Africo at a deemed price of $2.50 per share (subject to usual anti-dilution provisions).

***TRANSFER AGREEMENT***

Africo entered into an agreement (the "Transfer Agreement") dated April 17, 2008 with La Congolaise des Mines et de Developpement (Comide Sprl) ("Comide"), a joint venture company owned as to 75% by an affiliate of Camrose and as to 25% by La Générale des Carriéres et des Mines ("Gécamines"), a mining company owned by the Government of the Democratic Republic of the Congo (the "DRC"). The Transfer Agreement provides that Comide has agreed to transfer to Swanmines sprl (to be owned at least 75% by Africo and the balance by Gécamines) Exploitation Permit No. PE2607 (the "Exploitation Permit"), consisting of 41 squares or blocks (approximately 34.83155 $km^2$) for copper, cobalt, gold and nickel extraction, situated in the Territory of Lubudi, District of Kolwezi, Province of Katanga.

The Exploitation Permit is owned and held by Comide. Comide Concession PE2607 (the "Concession") is located within the Kolwezi District of Katanga Province in the south-east of the DRC, approximately 60km to the east of Kolwezi and 1km to the north of the main road between Likasi and Kolwezi. The Concession is secured under the Exploitation Permit, which was issued to Comide on July 6, 2005, for a term of 20 years. This license area is contiguous with the Swanmines concession area of Kalukundi, further details of which are described in Africo's Annual Information Form dated March 28, 2008 (which has been filed with regulators through the Canadian System for Electronic Document Analysis and Retrieval (SEDAR) and is available for viewing with Africo's other public disclosure documents through the internet at www.sedar.com).

The purchase price for the transfer will be based on the value of the Exploitation Permit (the "Valuation") as determined by Stephan, Robertson & Kirsten (SRK) Consulting Engineering and Scientists. The Valuation will be started on the earlier of completion of an exploratory drilling program currently being carried out by Comide and six months after completion of the Subscription. The purchase price will be 75% of the mid point of the range determined by the Valuation (the "Mid-Point Amount"). The purchase price is 75% of the Mid-Point Amount because Gécamines will retain the 25% interest in the Exploitation Permit. The parameters and scope of the Valuation will be agreed upon by the parties in advance of the commencement of the Valuation. The Valuation will be carried out on a stand-alone basis, which means that the Concession will be valued separately and independently of the Kalukundi property, taking into account its own capital cost requirements. In the event that either party is not satisfied with the results of the Valuation, such party can nominate a second valuator to carry out a valuation with the other party's consent. In that event, the determining valuation will be the average of the two valuations carried

out. In the event of a dispute with respect to the scope and process of the Valuation, the parties have agreed to implement arbitration proceedings to resolve such dispute.

The purchase price will be paid by the issuance of common shares by Africo to affiliates of Comide, at a deemed price of $2.50 per share, subject to usual anti-dilution adjustments. Africo's management has been advised by Camrose that, while the number of common shares to be issued cannot be known at this time, based on the work done to date on the Concession, Camrose currently anticipates that no more than 120,000,000 common shares of Africo, representing a maximum valuation of $300 million, would have to be issued pursuant to the Transfer Agreement, which would represent approximately 62.3% of Africo's issued share capital after giving effect to the Subscription Agreement, the Akam Agreement and the Transfer Agreement, and 441% of Africo's current share capital.

Although the Transfer Agreement requires Africo to pay the purchase price even if it is more than $300 million, Africo's obligation to complete the transactions under the Transfer Agreement is conditional upon the receipt of all required approvals for the issuance of the number of common shares required to satisfy the purchase price, including the approval of the shareholders at the meeting and acceptance of the TSX. As required by the rules of the TSX, shareholder approval of a maximum number of shares to be issued is required. Accordingly, Africo is seeking approval for the potential issuance of up to 120,000,000 common shares in satisfaction of the purchase price payable under the Transfer Agreement or such lesser amount pursuant to the Valuation; and if the purchase price were to be more than $300 million, Africo would be required to again seek shareholder approval to issue such additional number of common shares as would be required to satisfy the purchase price.

Management of Africo believes that, although the actual number of shares to be issued pursuant to the Transfer Agreement is entirely dependent on the Valuation, the Transfer Agreement is in the best interests of Africo. The transactions contemplated by the Transfer Agreement will provide Africo with project synergies and additional land to facilitate completion of Africo's Kalukundi property, as the property covered by the Exploitation Permit is contiguous with the Kalukundi property. In addition to this agreement-specific benefit, completion of the transactions contemplated by the Subscription Agreement are conditional upon the Transfer Agreement and the Akam Agreement being executed and delivered by the parties. Thus, the Transfer Agreement is one part of a three part whole, the other two parts consisting of the Akam Agreement and the Subscription Agreement. Each agreement confers benefits on Africo, and management of Africo believes that the Camrose Transactions as a whole confer substantial benefits to Africo that exceed the sum of their parts.

The transfer is subject to, among other things, approval by the shareholders of Africo of the issuance of Africo common shares as consideration for the transfer, approval of the TSX, the implementation of the transfer of the Exploitation Permit as contemplated by the Transfer Agreement, completion of the Subscription Agreement and Africo being satisfied as to the legal validity of Comide's interest and title in the Exploitation Permit. The transactions contemplated by the Subscription Agreement, Akam Agreement and Transfer Agreement as a whole constitute a backdoor listing pursuant to the TSX Company Manual and Africo will be required to meet original listing requirements of the TSX in order to receive final TSX approval. There is no assurance that Africo will be able to meet these requirements in a timely fashion, or at all.

***AKAM AGREEMENT***

Africo entered into an agreement (the "Akam Agreement") with Camrose dated April 17, 2008. The Akam Agreement acknowledges that Camrose has, through a wholly-owned subsidiary, entered into an agreement to purchase the outstanding shares of Akam Mining Sprl ("Akam"), which purchase has completed as at the date of this Circular. The Akam Agreement is intended to resolve the existing litigation regarding the Kalukundi property described in Africo's Annual Information Form dated March 28, 2008 (which has been filed with regulators through the Canadian System for Electronic Document Analysis and Retrieval (SEDAR) and is available for viewing with Africo's other public disclosure documents through the internet at www.sedar.com); and provides, for greater certainty, that Camrose will cause Akam to assign all of its rights, title and interest in Swanmines sprl (the "Swanmines Shares") to a wholly-owned subsidiary of Africo in consideration of the issuance to Camrose of 5,400,000 shares of Africo at a deemed price of $2.50 per share, subject to usual anti-dilution adjustments. The Akam Agreement also provides for mutual releases from Africo and Akam in connection with the Swanmines Shares on closing of the transaction.

The transaction is to complete upon the closing of the Subscription and is subject to approval by the shareholders of Africo of the issuance of the Africo common shares as the consideration for the transfer, completion of the Subscription and approval by the TSX.

***RISKS TO AFRICO ASSOCIATED WITH COMPLETION OF THE CAMROSE TRANSACTIONS***

Africo currently believes that the aggregate maximum number of shares that could be issuable to Camrose under the Subscription Agreement (and upon exercise of the warrants in connection therewith), the Transfer Agreement (assuming the maximum number of shares issuable thereunder), the Akam Agreement or otherwise in connection therewith would be approximately 185,400,000 common shares in the capital of Africo, representing 87.2% of Africo's then issued share capital and 681% of Africo's current issued capital assuming no other issuances of shares in the interim. Camrose's actual shareholdings will only be known when the Valuation contemplated by the Transfer Agreement is available. If the transactions contemplated by the Subscription Agreement, Transfer Agreement and Akam Agreement do not complete, the number of common shares of Africo issuable pursuant to the Note would be approximately 800,000.

**As such, Camrose will have, subject to applicable law, the ability to determine the outcome of certain matters submitted to shareholders for approval in the future, including the election and removal of directors, amendments to Africo's corporate governing documents and certain business combinations. Africo's interests and those of its controlling shareholder may at times conflict, and this conflict might be resolved against Africo's interests. The concentration of control in the bands of a significant shareholder may impact the potential for the initiation, or the success, of an unsolicited bid for Africo's shares.**

***SHAREHOLDER APPROVAL OF THE TRANSACTIONS WITH CAMROSE RESOURCES LIMITED***

Shareholder approval of the transactions contemplated with Camrose is required pursuant to the TSX Company Manual on the basis that the issuance of Africo's securities pursuant to such transactions will constitute more than 25% of Africo's outstanding share capital and will materially affect control of Africo. The resolutions to approve:

1. the proposed issuance of securities pursuant to the Subscription Agreement, the Additional Shares, and the potential issuance of common shares pursuant to the Note if the transactions contemplated by the Subscription Agreement do not complete;
2. the proposed issuance of common shares in the capital of Africo pursuant to the Transfer Agreement; and
3. the proposed issuance of common shares in the capital of Africo pursuant to the Akam Agreement;

are herein collectively referred to as the "Camrose Transactions Resolutions", the full text of which is set out in Schedule "C" hereto.

**Recommendation of the Board of Directors**

The Board of Directors of Africo has approved the terms of the Camrose Transactions. In reaching its conclusion, the Board of Directors:

- reviewed the risk factors relating to Africo as set out in Africo's Annual Information Form dated March 28, 2008 for the financial year ended December 31, 2007, which has been filed with regulators through the Canadian System for Electronic Document Analysis and Retrieval (SEDAR), particularly with respect to the litigation that Africo is currently involved in and Africo's need to acquire further working capital;
- reviewed the management, business, financial condition, operating results and prospects of Africo and the current industry, economic, market and regulatory conditions in the DRC;
- reviewed the potential consequences to Africo in the event that the Camrose Transactions do not complete particularly with respect to the ability of Africo to carry out the immediate development of the Kalukundi Property; and

- considered that the transactions contemplated by the Subscription Agreement, Akam Agreement and the Transfer Agreement are all part of a single transaction.

The Board of Directors did not quantify or otherwise attempt to assign relative weight to the specific factors considered in reaching its determination. The Board of Directors considers that the Camrose Transactions, overall, represent a reasonable business risk for Africo given Africo's current circumstances involving the uncertainty of its legal efforts to re-acquire the Kalukundi Property and its pressing requirement for working capital. The Camrose Transactions eliminate that uncertainty and provide sufficient working capital for the foreseeable future. Given the current circumstances, the Board of Directors has determined that if the Camrose Transactions are not approved, there is a material risk that Africo will be unable to re-acquire and develop the Kalukundi Property and may in that event cease to be a going concern. Shareholders are urged to consider these possible consequences of non-approval when voting their shares.

**Based on the above factors, Africo's management recommends that shareholders vote IN FAVOUR of the Camrose Transactions Resolutions. Unless they are instructed otherwise, the persons named in the enclosed form of proxy intend to vote FOR the Camrose Transactions Resolutions.**

## APPROVAL OF 2008 STOCK OPTION PLAN

At the meeting, shareholders who are not insiders of Africo or associates of such insiders and who are entitled to participate in the 2008 Plan (the "Disinterested Shareholders") will be asked to approve the implementation by the Board of Directors of the 2008 Stock Option Plan (the "2008 Plan").

### Background

On April 22, 2008 (the "Adoption Date"), the Board of Directors of Africo adopted the 2008 Plan. The 2008 Plan is subject to approval by Africo's Disinterested Shareholders and the approval of the regulatory authorities having jurisdiction over Africo's securities. The maximum number of common shares issuable under the 2008 Plan (the "2008 Plan Maximum") is proposed to be 10,000,000 shares, which will represent approximately 13.8% of Africo's issued and outstanding common shares upon completion of the transactions contemplated by the Subscription Agreement and the Akam Agreement, as herein defined, which is an increase of 5,216,762 shares from the current plan maximum. In the event the transactions contemplated by the Subscription Agreement, Transfer Agreement and Akam Agreement do not complete, the 2008 Plan Maximum will be 5,442,618, which represents 20% of Africo's issued and outstanding shares as at the date of this Circular, which is an increase of 659,380 shares from the current plan maximum.

See Part 5 – Securities Authorized for Issuance under Equity Compensation Plans for a summary of Africo's current Stock Option Plan, the terms of which are identical in the proposed 2008 Plan with the exception of the following:

(a) the increase in the number of shares issuable under the 2008 Plan; and

(b) provision that stock options may only be exercised to the extent not earlier exercised or terminated in accordance with the terms of the 2008 Plan, and the earliest of:

    (i) the termination date specified in the Option Certificate issued by Africo specifying the terms of the option being granted to the optionee;

    (ii) where the optionee ceases to be an eligible person pursuant to the 2008 Plan by reason of termination for just cause, the date of such termination, or such later date determined by the Board, which can be no later than the original expiry date of the option; and

    (iii) where an optionee ceases to be an eligible person pursuant to the 2008 Plan for a reason other than disability, death or termination for just cause, 90 days after such date of termination, unless otherwise extended by the Board.

As of the date of this Circular, there are 3,975,000 incentive stock options outstanding under Africo's current stock option plan, which represents 14.6% of Africo's current issued and outstanding common shares.

any indebtedness to another entity the subject of a guarantee, support agreement, letter of credit or other similar arrangement or understanding provided by Africo or any of its subsidiaries.

## INTEREST OF CERTAIN PERSONS IN MATTERS TO BE ACTED ON AT THE MEETING

Except as described herein, none of the directors or executive officers of Africo or its subsidiaries, no proposed nominee for election as a director of Africo, none of the persons who have been directors or executive officers of Africo or its subsidiaries since the commencement of Africo's last completed consolidated financial year, and no associate or affiliate of any of the foregoing persons has any substantial interest, direct or indirect, by way of beneficial ownership of securities or otherwise, in any matter to be acted upon at the meeting other than the election of the directors (see Part 3 – The Business of the Meeting). The Board of Directors of Africo resolved to set aside a bonus pool amounting to 1% of the value of the proposed transactions with Camrose Resources Limited as described in this Circular, to a maximum of $1,135,000, to be distributed to employees, officers and directors of Africo at the discretion of Africo's Compensation Committee, and which bonuses are over and above any contractual entitlements, respectively, of employees, officers, and directors. See in this Circular Part 4 – Executive Compensation – Termination of Employment, Change in Responsibility and Employment Contracts.

## INTEREST OF INFORMED PERSONS IN MATERIAL TRANSACTIONS

Except as described herein, no proposed nominee for election as a director, and no director or executive officer of Africo or any of its subsidiaries who has served in such capacity since the beginning of the last financial year of Africo, and no shareholder holding of record or beneficially, directly or indirectly, more than 10% of Africo's outstanding common shares, and none of the respective associates or affiliates of any of the foregoing, had any interest in any transaction with Africo since the beginning of the last completed financial year, or in any proposed transaction that has materially affected Africo or any of its subsidiaries, or is likely to do so.

See Part 4 – Executive Compensation - Termination of Employment, Change in Responsibilities and Employment Contracts and Part 8 – Other Information – Management Contracts.

## MANAGEMENT CONTRACTS

The management functions of Africo and its subsidiaries are performed by our directors and executive officers and we have no management agreements or arrangements under which such management functions are performed by persons other than the directors and executive officers of Africo and its subsidiaries, respectively. See Part 4 – Executive Compensation - Termination of Employment, Change in Responsibilities and Employment Contracts and Compensation of Directors.

## CEASE TRADE ORDERS AND CORPORATE BANKRUPTCY

Except as described below, as at the date of this Information Circular, no proposed nominee for election as a director of Africo is, or has been, within 10 years before the date of this Information Circular:

1. a director, chief executive officer or chief financial officer of any company (including Africo and any personal holding company of the proposed director) that, while that person was acting in that capacity:

   (a) was subject to a cease trade order (including any management cease trade order which applied to directors or executive officers of a company, whether or not the person is named in the order) or an order similar to a cease trade order or an order that denied the relevant company access to any exemption under securities legislation that was in effect for a period of more than 30 consecutive days (an "Order"); or

   (b) was subject to an Order that was issued after the proposed director ceased to be a director, chief executive officer or chief financial officer and which resulted from an event that occurred while that person was acting in the capacity as director, chief executive officer or chief financial officer; or

2. a director or executive officer of any company (including Africo and any personal holding company of the proposed director) that, while that person was acting in that capacity, or within a year of that person ceasing to act in that capacity, became bankrupt, made a proposal under any legislation relating to