

Wilson Sonsini Goodrich & Rosati
PROFESSIONAL CORPORATION

1301 Avenue of the Americas, 40th Floor
New York, NY 10019-6022
PHONE 212.999.5800
FAX 212.999.5899
www.wsgr.com

March 6, 2018

**VIA CM/ECF**

The Honorable Nicholas G. Garaufis
Senior United States District Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

    Re:    <u>*United States v. OZ Africa Management GP, LLC*, No. 1:16-cr-00515-NGG</u>

Dear Judge Garaufis:

    We respectfully submit this letter on behalf of the Africo Owners in response to the government's letter concerning restitution dated March 2, 2018 (ECF No. 39), and defendant OZ Africa Management GP, LLC's ("Och-Ziff Africa") Sentencing Memorandum dated March 2, 2018 (ECF No. 37).

### Introduction

    What is clear from reading the government's letter to Your Honor is that somewhere along the way, there was a failure of communication between the government and counsel for the Africo Owners; for while the undersigned understood the government to tell us that our clients were ***not*** victims of the unlawful conduct of Och-Ziff Africa, the government has now made clear in its letter to Your Honor that the Africo Owners are indeed victims of that conduct.[1]  And while we are certainly gratified that the government has concluded that the Africo Owners are victims of Och-Ziff Africa's illegal conduct, the government has now taken the position that based on the current evidentiary record, certain complexities relating to the extent of the damage imposed on the Africo Owners *presently* bars an order of restitution.  Accordingly, the government has made clear that it is willing to work with counsel for the victims in order to try to overcome these complexities so that an appropriate order of restitution can be made at the sentencing of Och-Ziff Africa.

---

[1] There also appears to be some confusion on the government's part in connection with the positions taken by the Africo Owners throughout their dialogue with the government.  At footnote 3 of the government's letter, it suggests that the Africo Owners have abandoned one of the positions they earlier advocated.  *See* Gov. Br. at 7 n.3.  But as is clear from the March 2017 letter to which the government refers (ECF. No. 26-4), our position has remained consistent throughout: the defendant and its co-conspirators corrupted the DRC judicial system to their own benefit and to the detriment of the Africo Owners.

AUSTIN   BEIJING   BOSTON   BRUSSELS   HONG KONG   LOS ANGELES   NEW YORK   PALO ALTO
SAN DIEGO   SAN FRANCISCO   SEATTLE   SHANGHAI   WASHINGTON, DC   WILMINGTON, DE

**WSGR** Wilson Sonsini Goodrich & Rosati
PROFESSIONAL CORPORATION

The Honorable Nicholas G. Garaufis
March 6, 2018
Page 2 of 17

As discussed below, the complexities alluded to by the government in its submission, which purportedly stand in the way of a restitution order being made now, are illusory. The government has itself created these so-called complexities by manufacturing and stubbornly adhering to its "two-conspiracy" theory. As described in our prior submission and below, should the Court reject the government's two-conspiracy theory, there is nothing complex here at all. As charged by the government, Och-Ziff Africa conspired to unlawfully obtain and retain the property of our clients. If the defendant is held accountable for the conduct to which it pled guilty, the assessment of restitution is simple: the Africo Owners should be made whole by receiving restitution for the full amount of the property that was unlawfully taken from them. Even the government does not appear to contest this principal. On the other hand, if the Court is prepared to entertain the two-conspiracy theory – despite the plain language of the Information, the Statement of Facts, the government's position in similar cases, and common sense – then we are willing to meet with the government to assist it in overcoming whatever complexities have seemed to hobble it. In such a meeting, we are prepared to explain that the damage to our clients, whether this was one conspiracy as charged, or two separate and unrelated conspiracies, as the government now asks the Court to accept.

Apart from the above, we first address Och-Ziff Africa's demonstrably and knowingly false argument that Your Honor lacks the authority to order restitution in this case. We submit that Och-Ziff Africa's alarming misrepresentation in this regard tells the Court all it needs to know about the *bona fides* of the arguments being advanced by Och-Ziff Africa's extensive team of lawyers. We also circle back to some of the other arguments advanced by Och-Ziff Africa, all of which are as equally meritless as defendant's attack on this Court's authority.

We also address up-front the suggestion by the government that the $213 million paid to the government by Och-Ziff, and ear-marked for use to pay any penalty imposed by the Court in connection with the sentencing of Och-Ziff Africa, might be unavailable to be used to pay restitution. This position is contrary to the law. The Court most certainly has the authority to order any amount available for a fine or penalty to first be applied toward restitution to victims, up to the amount that the defendant is subject to paying under the plea agreement. If the amount of restitution exceeds the amount allocated for the payment of fines or penalties under the plea agreement, then the defendant would have the right to withdraw its plea, as the plea was made pursuant to Fed. R. Crim. P. 11(c)(1)(C). But as the government has made clear that it is determined to pursue this case even if Och-Ziff Africa withdraws its guilty plea, and as Och-Ziff Africa has made clear that it has no interest in withdrawing its plea, any suggestion of Och-Ziff Africa withdrawing its plea under any circumstance seems far-fetched.

WSGR  Wilson Sonsini Goodrich & Rosati
       PROFESSIONAL CORPORATION

The Honorable Nicholas G. Garaufis
March 6, 2018
Page 3 of 17

## Argument

I. **The Parties' Contentions that Your Honor Lacks the Authority to Impose Restitution or Use the Monetary Penalty to Satisfy a Restitution Award Are Utterly Baseless**

    A.    <u>Och-Ziff Africa's False Argument that the Court Cannot Order Restitution Because the Court Has Already Accepted Och-Ziff Africa's Plea</u>

Och-Ziff Africa's claim that Your Honor is now barred from ordering restitution in this case is plainly wrong. Och-Ziff Africa Br. at 3. According to the defendant, "[o]nce a Court accepts a Rule 11(c)(1)(C) plea, it may not change the terms of that plea at sentencing." *Id.* at 3 n.3. Och-Ziff Africa thus argues that "[b]ecause the Court accepted OZ Africa's Rule 11(c)(1)(C) plea, a sentence consistent with the Plea Agreement (*i.e.*, one that does not include an award of restitution) is not only appropriate, but *can be the only legal sentence.*" *Id.* at 3 (emphasis added). In other words: "Judge, you already accepted this deal, so now you are stuck with it." However, as Och-Ziff Africa's nine lawyers at two different internationally renowned law firms undoubtedly know – for it is clear from the face of the plea allocution itself – while the Court accepted Och-Ziff Africa's ***guilty plea***, the Court ***has not yet*** accepted the parties' ***plea agreement***. As the Court expressly stated during the plea colloquy:

> [T]he representations made in the plea agreement are subject to review by the Court and in the event that even though the Court is inclined to accept this 11(c)(1)(C) plea, if there is some reason why the Court determines that it would not be legally appropriate to do so, you would be entitled to take back your plea and litigation could proceed.

Transcript of Plea, dated September 29, 2016, at 18:7-13 ("Sept. 29, 2016 Tr.").[2] Thus, the Court expressly left open the possibility that it would reject the plea agreement – particularly if the law required as much.[3]

---

[2] The Court also stated that while it granted the parties' request to waive the presentence report, it did so "subject to any information the Court may need specifically which it will address to the parties." Sept. 29, 2016 Tr. at 30:25-31:3.

[3] Not surprisingly, the cases cited by Och-Ziff Africa offer it no support whatsoever. In *Donato v. United States*, No. 09-CV-5617 (NGG), 2012 WL 4328368 (E.D.N.Y. Sept. 20, 2012), Your Honor, in rejecting an ineffective assistance of counsel claim based on the attorney's alleged representation that the court could sentence the defendant to below the range stipulated in the 11(c)(1)(C) plea, noted that while "'Rule 11(c)(1)(C) permits the defendant and the prosecutor to agree that a specific sentence is appropriate, . . . that agreement does not discharge the district court's independent obligation to exercise its discretion' in evaluating the agreed upon sentence and choosing whether to accept the plea. It is only *after* the court has accepted the plea agreement that the recommended sentencing range becomes binding." *Id.* at *5 (emphasis in original) (citation omitted). Similarly, in *United States v. Messina*, 806 F.3d 55 (2d Cir. 2015), in addressing a plea under Rule 11(c)(1)(B), the court merely noted that unlike a Rule 11(c)(1)(B) plea, a Rule 11(c)(1)(C) plea "is binding on a court that accepts the agreement[.]" *Id.* at 62. However, as previously noted, Your Honor has not yet accepted Och-Ziff Africa's plea agreement, and a district court is, of course, able to reject an 11(c)(1)(C) plea and provide the defendant with the opportunity to withdraw its plea. *See* Fed. R. Crim. P. 11(c)(3)(A). Finally, *United States*

**Wilson Sonsini Goodrich & Rosati**
PROFESSIONAL CORPORATION

The Honorable Nicholas G. Garaufis
March 6, 2018
Page 4 of 17

Och-Ziff Africa further contends that, because the Court did not specifically warn the defendant of the possibility of restitution during the plea colloquy as required under Fed. R. Crim. P. 11(b)(1)(K), it was not provided "sufficient notice" and, therefore, the Court is now barred from ordering restitution at sentencing. Och-Ziff Africa Br. at 4 n.4. Put another way: "Judge, you made a mistake at our plea and didn't tell us about restitution, so now you can't make us pay any restitution." What Och-Ziff Africa conveniently ignores, of course, is that any defect in the plea allocution or the failure to address restitution in the plea colloquy can be cured. *See United States v. Vaval*, 404 F.3d 144, 152 (2d Cir. 2005) ("Where a defendant, before sentencing, learns of information erroneously omitted in violation of Rule 11 but fails to attempt to withdraw his plea based on that violation, there can be no 'reasonable probability that, but for the Rule 11 violation, he would not have entered the plea,' and the plain error standard is not met.") (citation and alteration omitted); *see also United States v. Cacace*, 289 F. App'x 440, 441-42 (2d Cir. 2008) (affirming restitution order despite the fact that restitution was not addressed in the plea agreement or plea colloquy because defendant did not object to Probation's recommendation of restitution and failed to object at the time of sentencing or seek to withdraw his plea). Here, there can be no dispute that Och-Ziff Africa has been made fully aware of the possibility of restitution well before sentencing. Not only is restitution referenced in the plea agreement itself, which Och-Ziff Africa undoubtedly reviewed with its lawyers before entering its plea (*see* Plea Agmt. ¶ 12 ("The Defendant agrees that any fine or restitution imposed by the Court will be due and payable within ten (10) days of sentencing[.]") (ECF No. 11)), but the undersigned counsel repeatedly met with Och-Ziff Africa's counsel and the government to discuss the Africo Owners' restitution claim beginning in *April 2017*.[4]

In any event, as we noted in the Africo Owners' Letter to the Court dated February 20, 2018 (ECF No. 26) ("Africo Owners Victim Letter"), should the Court conclude that restitution beyond

---

*v. McCall*, 649 F. App'x 114 (2d Cir. 2016), *United States v. Green*, 595 F.3d 432 (2d Cir. 2010), and *United States v. Main*, 579 F.3d 200 (2d Cir. 2009) have nothing to do with the imposition of restitution prior to or at the time of sentencing, but rather address a defendant's *post-sentencing* (and thus post-acceptance of the plea agreement) application for a sentence reduction based on subsequent amendments to the Sentencing Guidelines where the defendant's Rule 11(c)(1)(C) plea dictated the original sentence.

[4] Again, the cases cited by the defendant are wholly unavailing. In *United States v. Harrington*, 354 F.3d 178 (2d Cir. 2004), where restitution was not addressed in the plea agreement or during the colloquy, and there was no indication the defendant was otherwise informed of the possibility of restitution, the remedy on appeal was not that the defendant was somehow relieved of having to pay restitution (as Och-Ziff Africa urges here), but only that the defendant was entitled to withdraw his plea. *Id.* at 185-86. In *United States v. Khan*, 857 F.2d 85 (2d Cir. 1988), *modified on reh'g*, 869 F.2d 661 (2d Cir. 1989), again the defendant was not advised of the possibility of restitution when he pled guilty. While the court remanded to allow the district court to either allow the defendant to re-plead or strike the restitution award, that case was decided *eight years before* the passage of the Mandatory Victim Restitution Act ("MVRA") making restitution mandatory. Finally, in *United States v. Gottesman*, 122 F.3d 150 (2d Cir. 1997) the court also did not address restitution under the MVRA, but rather pursuant to 18 U.S.C. § 3663(a)(3) which provides that a court may "'order restitution in any criminal case to the extent agreed to by the parties in a plea agreement.'" *Id.* at 151. Because the agreement made no reference to court-ordered restitution and only stated that the defendant would pay taxes due to the IRS, the Second Circuit held that restitution was inappropriate. *Id.* at 152.


Wilson Sonsini Goodrich & Rosati
PROFESSIONAL CORPORATION

The Honorable Nicholas G. Garaufis
March 6, 2018
Page 5 of 17

$213 million is warranted, Och-Ziff Africa would then have the option to withdraw its plea. *See* Sept. 29, 2016 Tr. at 18:7-13. That Och-Ziff Africa would prefer not to, is frankly irrelevant.[5] Och-Ziff Africa is not the aggrieved party, the Africo Owners are. And this Court's authority to impose restitution is in no way limited by the fact that Och-Ziff Africa would prefer to keep its current deal and not pay restitution or proceed to trial. *See United States v. Showerman*, 68 F.3d 1524 (2d Cir. 1995) (Och-Ziff Africa Br. at 4 n.5) (conditionally vacating judgment to give defendant opportunity to withdraw his appeal where plea agreement did not mention court's authority to impose restitution and court failed to advise defendant of restitution under Rule 11; if defendant did not withdraw appeal, sentence would be vacated and case remanded to district court where defendant would have opportunity to withdraw plea and go to trial if court decided to impose restitution).

> B. The Government's Suggestion that Your Honor May Lack the Authority to Order Restitution to the Africo Owners be Paid From Och-Ziff's Monetary Penalty Is Also Wrong

The government suggests in a passing footnote that Your Honor may lack the authority to use the monetary penalty paid by Och-Ziff to satisfy a restitution award. *See* Gov. Br. at 12 n.5. However, the DPA clearly states that "[t]he parties agree that *any criminal fine that might be imposed by the Court against OZ Africa Management GP, LLC*, in connection with its guilty plea and plea agreement, *will be paid from the $213,055,689 monetary penalty held in the escrow account*[ .]" DPA ¶ 7 (emphasis added).[6] As set forth in the Africo Owners Victim Letter, under 18 U.S.C. § 3612(c)(3) restitution must be paid before "[a]ll other fines, penalties, costs, and other payments required under the sentence." If the money paid by Och-Ziff Africa's parent is available to satisfy any fine that Your Honor may impose on Och-Ziff Africa, then it is available to be used instead to compensate victims of Och-Ziff Africa's crime.[7][8] Indeed, the government's suggestion to

---

[5] The contention that Och-Ziff Africa "has already complied with the serious requirements imposed by the Plea Agreement, and cannot be restored to the *status quo ante*" is ridiculous. *See* Och-Ziff Africa Br. at 4. As the government notes, Och-Ziff Africa is "an entity without significant current operations[.]" Government Sentencing Submission, dated Mar. 2, 2018, at 2 (ECF No. 40). While the monitor does apply to all Och-Ziff entities, it sits at the parent company (*id.* at 1), and the monetary penalty – that may be used to pay any fine imposed against Och-Ziff Africa – was paid by Och-Ziff, not Och-Ziff Africa. In any event, as explained above, not only are these penalties primarily imposed pursuant to the Deferred Prosecution Agreement, Och-Ziff Africa was plainly advised of the possibility that the Court might not accept the parties recommended sentence when it entered its plea. Sept. 29, 2016 Tr. at 18:7-13.

[6] The Plea Agreement states that the parties "agree to recommend jointly that the Court not impose a criminal fine on the Defendant, conditioned upon a monetary penalty in the amount of $213,055,689 paid by Och-Ziff and its affiliates under the terms specified in the DPA." Plea Agmt. ¶ 20(a).

[7] Indeed, Och-Ziff Africa has no basis to withdraw its plea should any restitution ordered by the Court not exceed the amount of the monetary penalty pursuant to the DPA and Plea Agreement. *See United States v. Vaval*, 404 F.3d 144, 152 (2d Cir. 2005) (where defendant was informed during Rule 11 proceeding that he would be subject to a maximum fine of $250,000, court "conclude[d] without difficulty that there is no reasonable probability that being told at the plea hearing of mandatory restitution of $6500 would have affected appellant's decision to plead guilty"); *United States v. Pomazi*, 851 F.2d 244, 248 (9th Cir.1988) (where defendant is advised during allocution that he is subject to paying a penalty, but is not so advised as to restitution, the imposition of restitution up to the penalty amount was not a breach of

Case 1:16-cr-00515-NGG   Document 43   Filed 03/06/18   Page 6 of 17 PageID #: 678

WSGR   Wilson Sonsini Goodrich & Rosati
PROFESSIONAL CORPORATION

The Honorable Nicholas G. Garaufis
March 6, 2018
Page 6 of 17

the contrary is strikingly at odds with its representation to the Court that it "embraces its obligations to the victims of crimes as set forth in the applicable law" and "recognizes the fundamental importance of victims' rights and its obligations in ensuring that victims of crime are treated appropriately within the confines of the applicable law." Gov. Br. at 10-11.[9]

In sum, this Court has the authority to order restitution in connection with the sentencing of the defendant, and to apply the entire penalty amount of $213 million as restitution to the victims of Och-Ziff's unlawful conduct.

## II. The Government's Current Position

### A. The Government's Contention – that Although the Africo Owners are Victims They Could be Deprived of Restitution – is Contrary to the MVRA

As noted, the government now acknowledges that the Africo Owners are victims of the defendant's crime[10] under the MVRA. Gov. Br. 1, 8, 13.[11] And yet despite that, and its repeated statement that it is prepared to meet with counsel for the Africo Owners to overcome any complexities that stand in the way of a restitution award, it nonetheless at least poses the possibility that "the Court conduct the sentencing and enter judgment in this matter, finding that the Claimants are victims of the defendant's offense, but that they are not entitled to restitution." Gov. Br. at 2. This position is alarming. The MVRA does not allow the government to discharge its obligations to victims merely by labelling them as such and then depriving them of any remedy. Having recognized that the Africo Owners are victims of the defendant's offense, the government is required

---

the plea agreement), *abrogated on other grounds by Hughey v. United States,* 495 U.S. 411 (1990); *United States v. Simon,* No. CR-08-0907(DLJ), 2009 WL 2424673, at *3 (N.D. Cal. Aug. 7, 2009) ("Restitution may still be ordered if the defendant has been advised of the maximum fine he faces under his plea agreement, and the intended restitution award (along with any fine imposed) does not exceed the maximum financial penalty allowed under the plea agreement.") (citations omitted).

[8] This common sense notion is consistent with Your Honor's recognition in the context of forfeiture that compensation to crime victims is more important than the government's receipt of the defendant's ill-gotten gains. *See United States v. Steel,* No. 11-CR-244 (NGG), 2012 WL 5879143, at *2 (E.D.N.Y. Nov. 21, 2012) ("While the court is mindful of the independence that the Attorney General enjoys in controlling the disposition of forfeiture funds, it is not apparent why victims of criminal activity should not be compensated for their proven losses before the Government receives a defendant's ill-gotten gains . . . . Thus, the court is properly more concerned with the prompt and likely compensation of victims than the Government's receipt of forfeiture funds.") (citations omitted).

[9] Indeed, it is hard to fathom that even Och-Ziff would oppose having the $213 million it has agreed to pay as a penalty instead used to compensate the victims of its crime rather than the government simply taking the money into its own coffers.

[10] The government raises no argument that the crime of conviction, conspiracy to violate the Foreign Corrupt Practices Act, is not a qualifying offense for which restitution may be ordered. *See generally* Gov. Br.

[11] The government has now abandoned the position that the Africo Owners, as shareholders, cannot be victims. Gov. Br. at 12 n.7.

**Wilson Sonsini Goodrich & Rosati**
PROFESSIONAL CORPORATION

The Honorable Nicholas G. Garaufis
March 6, 2018
Page 7 of 17

to seek restitution on their behalf in an amount that makes them whole for the harms they suffered. *See* 18 U.S.C. § 3771(c)(1).

The only exceptions to the MVRA's requirement that restitution be calculated and awarded to the victims of a qualifying offense are contained in Subsection (c)(3) where "the court finds, from the facts on the record, that – (A) the number of identifiable victims is so large as to make restitution impracticable; or (B) determining complex issues of fact related to the cause or amount of the victim's losses would complicate or prolong the sentencing process to a degree that the need to provide restitution to any victim is outweighed by the burden on the sentencing process." 18 U.S.C. § 3663A(c)(3). Neither of the parties has ever suggested the number of identifiable victims makes restitution "impracticable" – nor could they. As for the complexity of determining restitution, aside from a conclusory statement that the issue of restitution here is "highly complex and involves a difficult application of years of complicated facts to myriad legal concepts" the government offers no analysis as to why this statutory exception should apply, or why "issues of fact" would complicate or prolong sentencing process "to a degree that the need to provide restitution" would somehow be "outweighed." *See* Gov. Br. at 9-10; *see also United States v. Gushlak*, 728 F.3d 184, 192 (2d Cir. 2013) (affirming restitution ordered 18 months post-sentencing based on government's fourth submission on restitution, noting that "[S]ection 3663A(c)(3)(B) plainly does not require the district court to surrender whenever one or more complex issues of causation or loss calculation appear. To the contrary, the statute explicitly contemplates that the district court weigh against the burden of ordering restitution the victims' interests in receiving restitution"). Indeed, in a case where the government has already agreed to delay sentencing **18 months** for the exclusive benefit of the defendant so that it can pursue its Department of Labor waiver, it is unfathomable that any further conceivable resulting delay caused by resolution of the Africo Owners' $600 million restitution claim could outweigh their individual rights to be made whole.

> B. <u>The Government's Argument is Premised on its Baseless Two-Conspiracy Theory</u>

The government's argument that these victims are not "presently" entitled to restitution is premised solely on its contention that there were two separate conspiracies and that while the harm resulting from the first conspiracy is clear and uncomplicated, the government has not yet determined the "degree of harm" to the Africo Owners resulting from the so-called second conspiracy. Gov. Br. at 8. While in our opening submission we cited the well-established line of decisions that defendants convicted of conspiracy are liable for harms caused by the entire conspiracy, including those that pre-date its joining, *see, e.g., United States v. Bengis*, 783 F.3d 407, 413-14 (2d Cir. 2015), the government does not address any of those cases and does not cite a single case to support its two-conspiracy theory. Moreover, the government's two-conspiracy theory utterly fails in the face of, among other things, the plain language of the Information and Plea Agreement, both of which the government itself drafted.

> 1. *The Government Ignores Established Case Law*

**Wilson Sonsini Goodrich & Rosati**
PROFESSIONAL CORPORATION

The Honorable Nicholas G. Garaufis
March 6, 2018
Page 8 of 17

The government conveniently ignores the ample supporting authority raised in the Africo Owners Victim Letter, and notably fails to cite a single case in support of its contention that there were two distinct conspiracies involving the Africo Owners' interests in the Kalukundi mine. As the Africo Owners Victim Letter makes clear, there is only one conspiracy where there is a single, collective venture towards a common goal. *See United States v. Martino*, 664 F.2d 860, 876 (2d Cir. 1981). Here the common goal of the conspiracy was "to obtain special access to and preferential prices for opportunities in the government-controlled mining sector," through bribes paid to DRC government officials. Statement of Facts at ¶ 16 (ECF No. 11-3); Information at ¶ 16 (ECF No. 8). The government has provided ***no evidence*** that Gertler and other co-conspirators had a distinct objective in the period before Och-Ziff Africa joined the conspiracy, or that the defendant's joining changed anything about the conspiracy other than its access to financing. *See* Statement of Facts and Information. Rather, the common purpose remained constant throughout the entire period of the conspiracy – to obtain and retain attractive investment opportunities, including our client's property. *Id.* Och-Ziff and Och-Ziff Africa shared that purpose with the other conspirators and provided the financing for additional bribes. *See* Statement of Facts at ¶¶ 16-58; Information at ¶¶ 16-58.[12]

   2. *The Government Ignores the Language of the Information and Plea Agreement*

The government charged this case correctly and consistent with well-established Second Circuit precedent. Specifically, and as described in great detail in our prior submission, the Information and the Plea Agreement make clear that Och-Ziff and Och-Ziff Africa joined a pre-existing conspiracy, spearheaded by DRC Partner, to obtain and retain illegal access to attractive investment opportunities in the DRC through the bribery of DRC government officials. *See* Africo Owners Victim Letter at 15-17. This charge, and thus the defendant's offense conduct under the MVRA, includes both the actions to obtain the Africo Owners' interest in the Kalukundi property and those undertaken to retain and secure those interests in 2008.

   a. Paragraph 16, 59: The Purpose and Duration of the Conspiracy

---

[12] The Second Circuit has repeatedly held that multiple conspiracies do not arise from changes in membership, the passage of time, or multiple phases or spheres of operation. *United States v. Vila*, 599 F.2d 21, 24 (2d Cir. 1979) (rejecting defendant's argument regarding two distinct conspiracies operating in different locales and noting that "a single conspiracy is not transposed into a multiple one simply by lapse of time, change in membership, or a shifting emphasis in its locale of operations") (citation omitted); *see also United States v. Aracri*, 968 F. 2d 1512, 1521-22 (2d Cir. 1992) (finding a single conspiracy even where conspirators were involved in different, distinct phases of the scheme and there was acrimony among the participants); *United States v. Washington*, 48 F.3d 73, 80 (2d Cir. 1995) ("A conspiracy is not altered merely by a 'change in membership, or a shifting emphasis on its locale of operations.'") (quoting *Aracri*).

Case 1:16-cr-00515-NGG   Document 43   Filed 03/06/18   Page 9 of 17 PageID #: 681

WSGR  Wilson Sonsini Goodrich & Rosati
       PROFESSIONAL CORPORATION

The Honorable Nicholas G. Garaufis
March 6, 2018
Page 9 of 17

As described in detail in the Africo Owners Victim Letter, paragraphs 16 and 59 of the Information to which Och-Ziff Africa pled guilty, describe the duration and purpose of the DRC Corruption Scheme. The Information defines a conspiracy that lasted from 2005 to 2015, and in which Och-Ziff and Och-Ziff Africa participated from 2007 until 2013. Statement of Facts at ¶ 16; Information at ¶ 16. Through this conspiracy, Och-Ziff, Och-Ziff Africa, Gertler, and others conspired to bribe foreign officials to influence acts and decisions of those officials to assist the conspirators in obtaining and retaining business in the DRC mining sector. Statement of Facts at ¶ 16; Information at ¶¶ 16 and 60(a). The language from paragraph 16 is specifically incorporated into the single count of "Conspiracy to Bribe DRC Officials" in the Information. Information at ¶ 59.

The government's argument that "[t]he charged conspiracy, as pled to by OZ Africa, however does not include pre-December 2007 conduct," is without citation to either the Information, Plea Agreement, or relevant case law. Gov. Br. at 13. The reason for this is clear: the government must ignore the existence of each of these documents in order to advance its "two-conspiracy" theory. The government's response also fails to explain how the form of the charge in this case is distinguishable from cases such as *United States v. Dupre*, No. 04 CR 267 (DLC), 2007 WL 1589451 (S.D.N.Y. June 4, 2007), *aff'd*, 296 F. App'x 113 (2d Cir. 2008), where the government successfully argued that restitution should be imposed for the entire conspiracy, including the time pre-dating the defendant's involvement in part because, while the larger conspiratorial time period was set out in the "background section of the Indictment," that time period was "fully incorporated into Counts One and Two of the Indictment." Brief for the United States of America, *United States v. Dupre*, Nos. 07-1455-cr(L), 07-1463-cr (CON), 2007 WL 7068149, at *47-49 (2d Cir. Nov. 5, 2007) (citations omitted).

b. Paragraph 24: The Initial Taking of Africo's Interests

In an attempt to distance itself from the single conspiracy that it charged, and to which Och-Ziff Africa pled guilty, the government claims that there is "[n]othing in the Statement of Facts [that] alleges that DRC Partner [Gertler] had any knowledge of or involvement in the Former Employee taking the mine." Gov. Br. at 14. Of course to support its contention, the government must read away paragraph 24 of the Information in which it describes the initial "taking" of the mine. Accordingly, the government now also argues that the description of the initial "taking" of Africo's interests in the Kalukundi property was included merely "to provide background for why the mine was in legal dispute when DRC Partner obtained it." Gov. Br. at 13.

Far from simply providing context, paragraph 24 offers a straight-forward (and stipulated) answer to the government's purported question regarding the "causal connection between the initial taking of the mine from Africo by the Former Employee and the actions of the defendant or its co-conspirators." Gov. Br. at 8. Specifically, paragraph 24 makes clear why the conspirators had to engage in additional bribery in order to **retain** the Africo Owners' stolen interests. The language of paragraph 24 provides that the "irregular . . . legal proceedings" to which the government now refers (Gov. Br. at 2), were in fact the "taking of Africo's interest in the DRC mine," which DRC Partner's go-to DRC Official "orchestrated" and then "made…available to DRC Partner." Statement of Fact

Case 1:16-cr-00515-NGG   Document 43   Filed 03/06/18   Page 10 of 17 PageID #: 682

WSGR  Wilson Sonsini Goodrich & Rosati
       PROFESSIONAL CORPORATION

The Honorable Nicholas G. Garaufis
March 6, 2018
Page 10 of 17

at ¶ 24; Information at ¶ 24. Because those interests were stolen from their rightful owners, the conspirators were thus forced to pay additional bribes to have any hope of keeping them. There would have been no need for the conspirators to pay bribes to retain the Africo Owners' interests in the mine if those interests had not been stolen in the first place. The conspirators could have merely purchased Akam and moved on with their plans to consolidate mining assets in the DRC. Instead, the conspirators engaged in fevered, corrupt machinations, bribing multiple DRC government officials, including judges, in order to retain those stolen interests, by having an impending judicial decision "rewritten" and delayed. Statement of Facts at ¶¶ 16-58; Information at ¶¶ 16-58.

        c. Paragraph 60: The Scope of the Conspiracy

Perhaps the most significant problem with the government's two-conspiracy argument is that the count of conviction specifically incorporates both the "obtaining" of the Africo Owners' interests in Kalukundi and the subsequent actions to "retain" those interests. Specifically, Och-Ziff Africa joined a conspiracy to bribe foreign government officials "in order to assist Och-Ziff in ***obtaining and retaining*** business for and with, and directing business to itself" and the other conspirators. Information at ¶ 60(a) (emphasis added). Neither the government nor the defendant provides any explanation as to how this language fails to capture the acquisition of the stolen interests as well as the retention of those stolen interests through bribery. Had Och-Ziff and its conspirators been able to purchase Africo's interests through proper legal channels, they undoubtedly would have done so, rather than risking criminal penalties by obtaining and retaining those interests through corruption. As noted above, and detailed extensively in the Africo Owners Victim Letter, the only reason that Och-Ziff Africa and its co-conspirators went to such extreme lengths was because they could not have obtained or retained them through legal means.

        3. *In Light of the Single Conspiracy, Och-Ziff Africa Must Pay Restitution for those Harms Caused by the Entire Conspiracy, Including those that were Reasonably Foreseeable Prior to Its Joining*

As described in detail in the Africo Owners Victim Letter, conspirators are liable for restitution encompassing the harms occurring throughout the entire conspiracy, including those actions that pre-date the defendant's joining, so long as such actions are reasonably foreseeable to the defendant. *See, e.g.*, *United States v. Boyd*, 222 F.3d 47, 51 (2d Cir. 2000) (affirming a district court restitution order holding the defendant "liable for the reasonably foreseeable acts of all co-conspirators"); *United States v. Gushlak*, No. 03-CR-833 (NGG), 2011 WL 782295, at *3 (E.D.N.Y. Feb. 24, 2011) ("Under *Boyd*, a participant in a conspiracy may be ordered to pay restitution for harm caused by the acts of his coconspirators done in furtherance of the conspiracy, even though he was not charged with engaging in the specific conduct causing the harm."). As previously explained, the Information and Plea Agreement describe a scheme lasting from 2005 to 2015, whereby the "DRC Partner, together with others, paid more than one-hundred million U.S. dollars in bribes to DRC officials to obtain special access to and preferential prices for opportunities in the government-controlled mining sector in the DRC." Statement of Facts at ¶ 16; Information at ¶ 16. While the government now argues that "[n]othing in the Statement of Facts alleges that DRC Partner had any knowledge of or


**Wilson Sonsini Goodrich & Rosati**
PROFESSIONAL CORPORATION

involvement in the Former Employee taking the mine," this contention is disingenuous at best. Gov. Br. at 14.

*First*, the Statement of Facts makes clear that the Former Employee was only able to make the mine asset available to DRC Partner through the "taking" of the interests through the corruption of the DRC courts "orchestrated" by DRC Official 2 for the benefit of DRC Partner. Statement of Facts at ¶ 24; Information at ¶ 24. Given publically available information that, "[DRC Partner] has been willing to use his significant political influence with [DRC Official 1] . . . and his clique to facilitate acquisitions, settle disputes and frustrate competitors. . . . [DRC Partner] was rumoured to have used his influence with [DRC Official 2], [DRC Official 1's] closest aide, and former Katanga governor in order to settle [a commercial] dispute in his favor . . . ," Statement of Facts at ¶ 19; Information at ¶ 19, and the government's own Information, which states that having "orchestrated the taking [of the mine]," DRC Official 2 "made it available to DRC Partner," Statement of Facts at ¶ 24; Information at ¶ 24, the government's current contention that there is no available evidence to establish that DRC Partner had knowledge regarding the taking of the mine is laughable.

*Second*, the Statement of Facts provides evidence that the defendant knew that the Africo Owners' interests in the Kalukundi mine had been stolen for DRC Partner's benefit. As described above and in the Africo Owners Victim Letter, Och-Ziff, Och-Ziff Africa, and DRC Partner's payment of bribes to retain the Kalukundi mining interests is at a minimum, an implicit acknowledgement that those interests were obtained illegally. Had the conspirators believed that those interests were obtained legally and Africo's legal battle to regain them was meritless, they would not have needed to risk criminal sanctions by bribing DRC government officials to retain them.

*Third*, even if not explicitly known to Och-Ziff and Och-Ziff Africa, the fact that the Africo Owners' interests were stolen was at the very least reasonably foreseeable.[13] The 2006 conduct involved the same DRC official that the defendant knew to have a "special" relationship with DRC Partner, and who was again paid by Och-Ziff during the 2008 bid to retain Africo's mining interests. Statement of Facts at ¶¶ 19, 24, 32, 36; Information at ¶¶ 19, 24, 32, 36. Additionally, the methods through which the Africo Owners' interests were obtained, specifically the corruption of the DRC judicial system, was the same method through which Och-Ziff and DRC Partner worked to keep and secure those same interests in 2008. Statement of Facts at ¶¶ 23-36; Information at ¶¶ 23-36. *See also United States v. Tsirlina*, No. 13 CR 305 (RJD), 2014 WL 6632477, at *2 (E.D.N.Y. Nov. 21, 2014) ("[T]he Second Circuit has held that a defendant is 'liable for the reasonably foreseeable acts of all co-conspirators.' It does not matter that a defendant may 'not have agreed on the details of the

---

[13] As outlined in detail in the Africo Owners Victim Letter, the defendant need not have personally stolen the Africo Owners' mining interests for them to be victims of Och-Ziff Africa's conspiracy. *See* Africo Owners Victim Letter at 18-19 (discussing *Bengis*, 631 F. 3d at 35-42, where the court held that the defendants need not have "personally harvested the lobsters" in order for South Africa to be a victim under the MVRA, even though the defendants' offense of conviction centered on the trade in illegal lobsters rather than the initial illegal harvesting.).



conspiracy' or may be 'unaware' of his co-conspirator's acts. Where a defendant 'was a member of the conspiracy,' his 'offense was committed pursuant to the common plan of the conspiracy,' and he 'could reasonably have foreseen that a co-conspirator would commit the substantive offense,' he is liable for restitution arising out of those offenses.") (citations omitted); *United States v. Fiumano*, No. 16-3250-cr, --- F. App'x ----, 2018 WL 507171, at *4-5 (2d Cir. Jan. 23, 2018) (defendant liable for losses occurring before he joined charged conspiracy because the defendant knew or reasonably should have known that fraudulent activity occurred before he joined the fraud scheme given that defendant had previously engaged in a similar fraud scheme with his co-conspirator).[14] [15]

In light of the above, we respectfully submit that Your Honor should reject the government's "two-conspiracy" theory, thereby rendering moot the purported complexities that the government says stand in the way of an immediate restitution order. The defendant was a member of a conspiracy that unlawfully obtained and retained the property of our clients, and under the MVRA, it is required to pay restitution to the victims to make them whole. One such calculation under the MVRA is to award the victims the value of the stolen asset as of the day of sentencing.[16]

---

[14] As noted by the Second Circuit in *Fiumano*, restitution under the MVRA may be imposed jointly and severally. *Fiumano*, 2018 WL 507171, at *4-5; *see also* 18 U.S.C. § 3664(h) ("If the court finds that more than 1 defendant has contributed to the loss of a victim, the court may make each defendant liable for payment of the full amount of restitution or may apportion liability among the defendants to reflect the level of contribution to the victim's loss and economic circumstances of each defendant."). Thus, the government's contention that "apportioning the total harm to the defendant is unwarranted" since "Och-Ziff played no part in the initial taking of Kalukundi by the Former Employee" (Gov. Br. at 15), in no way impacts this Court's ability to award full restitution against Och-Ziff Africa. *See also* Brief for the United States of America, *United States v. Smith*, 513 F. App'x 43 (2d Cir. 2013), at 18-19 ("Once it is determined that a victim's losses are covered by the MVRA, the decision of the district court whether to order a particular defendant to pay the full amount of the loss, jointly and severally with other defendants, or to apportion the loss among defendants rests firmly within the discretion of the district court. *See United States v. Nucci*, 364 F.3d 419, 422 (2d Cir. 2004); *United States v. Lucien*, 347 F.3d 45, 53-54 (2d Cir. 2003) (affirming district court's decision not to apportion restitution liability among co-conspirators guilty of health care fraud in connection with staged auto accidents). "A sentencing court is not required to consider an individual's role in the offense when awarding restitution." *United States v. Salas-Fernandez*, 620 F.3d 45, 48-49 (1st Cir. 2010). While a court may consider relative culpability, it is not obligated to do so. *See id.* at 49 ("[T]he court is not required to use any particular formula for apportionment or, indeed, to apportion the loss at all.") The fact that the government has failed to indict any other participants here should not be used against the victims.

[15] As explained in the Africo Owners Victim Letter, even if the Court accepts that there were two distinct conspiracies and that the defendant is not responsible for the harm caused by the first, the Africo Owners were plainly harmed by the "second" conspiracy. The Africo Owners would have regained their stolen interests and would not have agreed to a takeover by the conspirators absent the bribery, funded by Och-Ziff, in 2008. *See* Africo Owners Victim Letter at 20-22. Had DRC Partner, Och-Ziff, and Och-Ziff Africa not paid bribes to get the court decision re-written (in their favor) and delayed until after the shareholder vote, the Africo Owners would have regained their interests and refused the DRC Partner's corrupt takeover. The government has now acknowledged that the Africo Owners were harmed by at least the second conspiracy. Gov. Br. at 8, 13.

[16] The mining valuation expert engaged by the Africo Owners, Neal Rigby, has presented this calculation in his report.

**W$GR Wilson Sonsini Goodrich & Rosati**
PROFESSIONAL CORPORATION

The Honorable Nicholas G. Garaufis
March 6, 2018
Page 13 of 17

   C. <u>The Africo Owners Remain Willing to Assist the Government in Obtaining Any Other Information It Believes Necessary to "Determine the Degree of Harm Proximately Caused" by the Offense Conduct</u>

  If the Court is not prepared at this time to reject the government's two conspiracy theory – and we respectfully submit it should reject that theory out of hand – the government's submission makes clear that it is willing to adjourn the sentencing of Och-Ziff Africa so that it can meet with counsel to the victims to try to overcome whatever complexities stand in the way of an appropriate restitution award. We are happy to undertake such a meeting if one is necessary. And while we do not seek to undermine such a collaborative effort before it even begins, we are compelled to point out that the government's assertion, that it repeatedly asked the Claimants to provide additional information but that it received no response from us, is false. At no point during the nearly ten months it took the government to reach its preliminary conclusion did it ever once seek any additional information from us that was not immediately forthcoming. Indeed, we repeatedly offered to provide the government with additional facts or law that would assist in its decision-making, as made plain in the attached series of emails between the government and counsel to the victims spanning the time frame from March 2017 to January 2018. *See* Exhibit A attached hereto. But putting the past aside, as noted above, we are happy to meet with the government and provide it with whatever facts or law the government is struggling to grasp.

  **III. Och-Ziff Africa's Arguments are Meritless**

  The arguments raised by Och-Ziff Africa against restitution – most of which appear to have been already rejected by the government – are baseless. We address certain of these arguments below.[17]

  At a high level, Och-Ziff Africa argues that: (1) it did not pled guilty to a crime against property; (2) that the manner in which the Africo Owners' held their property forecloses them as victims under the MVRA; and (3) that assuming there was a recognizable property interest, any harms were not caused directly by Och-Ziff Africa or would have occurred regardless of its corrupt actions. As described in detail in both the Africo Owners Victim Letter and implicitly conceded by the government, these arguments are meritless.

  *First*, in arguing that the conspiracy it entered into (to bribe foreign government officials for special and preferential access to attractive investment opportunities in the DRC) was not a crime against the Africo Owners' property, Och-Ziff Africa Br. at 18-21, Och-Ziff mischaracterizes the definition of property under the MVRA and the harm suffered by the Africo Owners at the hands of

---

[17] We have not addressed all of Och-Ziff's laundry-list of arguments for there are far too many for us to address in this reply submission. We note, however, that we understand that all of Och-Ziff's arguments were previously presented to the government, and were thereafter rejected by the government as they do not appear in the government's letter to Your Honor. To the extent the Court would like the victims to address any of them, as opposed to the government providing that response, we stand ready to do so in a supplemental submission.

**Wilson Sonsini Goodrich & Rosati**
PROFESSIONAL CORPORATION

The Honorable Nicholas G. Garaufis
March 6, 2018
Page 14 of 17

Och-Ziff Africa. Och-Ziff Africa's reliance on *United States v. Adorno*, 950 F. Supp. 2d 426 (E.D.N.Y. 2013) (Gershon, J.) (Och-Ziff Africa Br. at 18 n.14) is unavailing. There, the court rejected the City of New York's request for restitution for a portion of the salary paid the defendant, a New York City employee who had accepted bribes, under an honest services fraud theory. The *Adorno* defendant, however, was convicted solely of violating a statute that did not require proof of fraud or deceit, and most significantly, was not convicted of conspiracy. Given that "conspiracy is a crime distinct from its underlying predicate acts and purposes, and involves additional harms, restitution may be awarded for a violation of the conspiracy statute even when it could not be awarded for the underlying predicates," *United States v. Cummings*, 189 F.Supp.2d 67, 73 (citation and alterations omitted), and even if "the objects of the conspiracy to which [the defendant] pleaded guilty do not independently authorize restitution." *Id*. Courts have found offenses involving bribery and conspiracy to commit bribery-related offenses to be crimes against property for the purposes of the MVRA, where such offenses were committed through corruption and deceit. *See, e.g., United States v. Green*, 722 F.3d 1146 (9th Cir. 2013); *United States v. Liu*, 200 F. App'x 39, 40 (2d Cir. 2006); *United States v. Finazzo*, No. 10-CR-457 (RRM) (RML), 2014 WL 3818628, at *35 (E.D.N.Y. Aug. 1, 2014), *aff'd in part*, 682 F. App'x 6 (2d Cir. 2017) and *vacated on other grounds*, 850 F.3d 94 (2d Cir. 2017). There can be no dispute that the conspiracy here involved crimes against the Africo Owners' property committed by fraud and deceit. The conspirators' forced a corrupt takeover on Africo by keeping stolen assets from the company through the bribery of judges. Statement of Facts at ¶¶ 23-36; Information at ¶¶ 23-36. The conspirators, of course, never informed the Africo Owners that the reason they were unable to reclaim their stolen assets was because of this conduct, let alone that the parties seeking to acquire Africo were the ones committing the bribery. *Id*.[18]

*Second*, Och-Ziff Africa argues that because the Africo Owners' interests were held through a special purpose vehicle – a corporate structure done for tax purposes and with which Och-Ziff is likely quite familiar – they are not entitled to restitution.[19] However, the form in which property is held has no bearing on whether the Africo Owners' were harmed. Indeed, the Second Circuit has

---

[18] Given the inherent weakness of this argument, the government all but concedes this point in its brief. Gov. Br. at 8-16.

[19] Specifically, the interests at stake in the DRC judgment were Africo's portion of the mining rights to the Kalukundi property. Africo Owners's rights were held through a wholly-owned subsidiary, H&J Swanepoel ("H&J"), which held 75% of the shares (representing 75% of the mining rights to Kalukundi) in the special purpose vehicle formed to hold the Kalukundi mining rights, Societe d'exploitation des gisements de Kalukundi ("Swanmines"). The remaining 25% of the mining rights (represented by 25% of the shares in Swanmines) to Kalukundi is held by Gecamines, a DRC government-owned entity. Och-Ziff Africa's furious effort to focus Your Honor on the structure of the Africo Owners' property interest in the mining rights, including its last-minute declaration (ECF No. 41), is an obvious effort to obscure the harm it knowingly caused its victims. Even under the structure set forth in its most recent declaration, the Africo Owners, including Mr. Anthony Harwood, held their interests through several, wholly-owned shell companies. *See* ECF No. 41-2. This fact is understood by the defendant now as it was understood in 2008 when they bribed DRC government officials so that it could obtain and retain those interests. *See* Expert Report of Dr. Neal Rigby, ECF No. 26-6 at Appendix R: AGC (Oz) Investment Memo 2008 at p.7.

**Wilson Sonsini Goodrich & Rosati**
PROFESSIONAL CORPORATION

The Honorable Nicholas G. Garaufis
March 6, 2018
Page 15 of 17

made clear that the definition of property includes property held through shares as well as even intangible property. *See* Africo Owners Victim Letter at 22-24; *see also United States v. Bengis*, 631 F.3d 33, 39-40 & n.3 (2d Cir. 2011) (Court rejected the notion that its prior decisions had limited the definition of "property" to "tangible property," noting that "[o]ur precedents dictate that the definition of property is broader than those cases suggest" (citing *United States v. Milstein*, 481 F.3d 132, 137 (2d Cir. 2007) (recognizing intangible property)).

*Third*, as noted above, the harm to the Africo Owners' property here is straightforward, caused by the offense conduct, and covered by the MVRA. Och-Ziff Africa and its co-conspirators stole the Africo Owners' mining rights and then bribed DRC judges to prevent the Africo Owners from regaining their rights to the Kalukundi mine, using the stolen property as leverage to force the Africo Owners to accept a deal – that they would not otherwise have accepted – that diluted and significantly devalued their shares, causing the Africo Owners to loss control of Africo and the development of the mine in the process. Statement of Facts at ¶¶ 31-36. Simply stated, the Africo Owners held 75% of the mining rights to the Kalukundi Property as represented by their shares in Africo. Those mining rights were valuable – so valuable that they were one of the "attractive investment opportunities" that Och-Ziff traveled halfway around the world bribing judges to gain access to. Och-Ziff Africa and its co-conspirators interfered with and damaged the Africo Owners' property by taking and then ensuring that they could not regain the mining rights that were stolen from them, either in full or without ceding control over the development of their asset and much of its value to the conspirators. This harm is recompensable under the MVRA.[20][21] *See United States v.*

---

[20] *United States v. Kline*, 199 F. Supp. 2d 922 (D. Minn. 2002) is illustrative on this point. In that case, the victim, Melinda Begnaud contacted the two defendants to help her sell a large volume of shares in a relatively illiquid stock. The defendants possessed inside information that the issuer was facing an upcoming merger that would positively impact the price of the stock. Keeping this information from Ms. Begnaud, the defendants purchased her stock themselves and made a significant profit when the share price increased. *Id.* at 924-25. At the restitution hearing, the defendants argued that their offense of conviction – insider trading – was not material to Ms. Begnaud's stock sale and thus her harms did not meet the causation requirement under the MVRA. *Id.* at 925. The court summarily rejected this argument, finding that the insider trading was material to the shareholder's sale of stock, and thus the shareholder was entitled to restitution even though the shareholder might have received less money had she sold her shares through a non-insider stockbroker. This was because the shareholder was deprived of her right to either fairly win or fairly lose in her stock sale, and she was deprived of a price to which she should have been fairly entitled. *Id.* at 925-26.

[21] Citing *United States v. Dharia*, Nos. 14-CR-390, 15-CR-367, 2018 WL 357281 (E.D.N.Y. Jan. 9, 2018), Och-Ziff Africa contends that the Africo Owners were not harmed by its offense conduct because it "pleaded guilty to conspiring to bribe DRC officials in the DRC, not to misleading investors in a Canadian mining company." *See* Och-Ziff Africa Br. at 20 n.18. This argument is utterly baseless. Not only did *Dharia* not involve a conspiracy charge, but the purported victims in that case were not involved in the bank fraud schemes for which the defendant was convicted. 2018 WL 357281, at *9. In contrast, the Africo Owners and their mining interests are at the center of the defendant's scheme and charged conspiracy. *See* Statement of Facts at ¶¶ 16-58; Information at ¶¶ 16-60. Additionally, as described in detail in the Africo Owners Victim Letter, when a defendant is convicted of conspiracy, its offense conduct for the purposes of the MVRA includes the conspiracy as a whole. *See United States v. Battista*, 575 F.3d 226, 231-32 (2d Cir. 2009) ("Although Battista did not defraud the NBA directly, . . . the district court properly characterized the NBA as a 'victim' under the VWPA because the NBA was harmed by the conduct committed during the course of the conspiracy to transmit wagering information, . . . . Moreover, we must look at Battista's 'offense' of conspiracy, in which his criminal

**WSGR  Wilson Sonsini Goodrich & Rosati**
PROFESSIONAL CORPORATION

The Honorable Nicholas G. Garaufis
March 6, 2018
Page 16 of 17

*Scott*, 321 F. App'x 71, 72 (2d Cir. 2009) (court affirmed a restitution order that included an award to Scott's victims for an amount their investment accounts would have increased "but for" the defendant's embezzlement years earlier); *United States v. Bartleson*, 74 F.Supp.3d 947, 984-85 (N.D. Iowa 2015) (restitution order includes "lost investment earnings" based on "assumptions" about how money would have been invested); *United States v. Qurashi*, 634 F.3d 699, 703 (2d Cir. 2011) ("[T]here is no reason to exclude losses that result from the deprivation of the victim's ability to put its money to productive use.").[22]

### Conclusion

In light of the above and our prior submission, we respectfully request that Your Honor reject the government's "two-conspiracy" theory, thereby rendering moot the purported complexities that the government says stand in the way of an immediate restitution order. The defendant was a member of a conspiracy that unlawfully obtained and retained the property of our clients, and under the MVRA, it is required to pay restitution to the victims to make them whole.

Respectfully submitted,

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

_____
Morris J. Fodeman
Michael S. Sommer

Cc: For Och-Ziff Africa (via email):
F. Joseph Warin, Gibson, Dunn & Crutcher LLP
Joel M. Cohen, Gibson Dunn & Crutcher LLP
Lee G. Dunst, Gibson, Dunn & Crutcher LLP
Mark K. Schonfeld, Gibson, Dunn & Crutcher LLP
Daniel P. Harris, Gibson, Dunn & Crutcher LLP
Charles A. Gilman, Cahill Gordon & Reindel LLP
Anirudh Bansal, Cahill Gordon & Reindel LLP
Kevin J. Burke, Cahill Gordon & Reindel LLP
Samantha Lawson, Cahill Gordon & Reindel LLP

---

conduct encompasses not just his own acts but also those of his co-conspirators. By this standard, Battista's crime plainly harmed the NBA.") (citation omitted); *see also United States v. Schwamborn*, 542 F. App'x 87, 88-89 (2d Cir. 2013) (defendant "directly and proximately" caused investor victims' losses under MVRA where, among other things, it was "entirely foreseeable that the victims here would lose their investments" because the stock was worthless and the "risk of loss that [defendant] created by promoting worthless stock was 'within the zone of risk' concealed by the scheme") (citation omitted); Africo Owners Victim Letter at 18-19.

[22] The cases cited by Och-Ziff Africa are primarily civil shareholder derivative claims that do not address the MVRA and have no application here. *See* Och-Ziff Africa Br. at 22.

**WSGR** Wilson Sonsini Goodrich & Rosati
PROFESSIONAL CORPORATION

The Honorable Nicholas G. Garaufis
March 6, 2018
Page 17 of 17


Cc: <u>For the United States Department of Justice,
United States Attorney's Office, E.D.N.Y.</u> (via email):
Sandra L. Moser, Acting Chief, Criminal Division, Fraud Section
David C. Pitluck, Assistant U.S. Attorney
James P. McDonald, Assistant U.S. Attorney
Jonathan P. Lax, Assistant U.S. Attorney
Gerald M. Moody, Jr., Trial Attorney