# Exhibit A

**From:** Fodeman, Moe
**Sent:** Friday, March 24, 2017 10:26 AM
**To:** McDonald, James (CRM); Loonam, James (USANYE)
**Cc:** Sommer, Michael
**Subject:** United States v. OZ Africa Management GP, LLC, No. 16-cr-00515-NGG

Gentlemen:

Please see the attached correspondence.

Best,

Moe

---

Morris J. Fodeman ▪ Wilson Sonsini Goodrich & Rosati, PC
1301 Avenue of the Americas, 40th Floor ▪ New York, NY 10019
Phone | 212.497.7704 ▪ Fax | 212.999.5899 ▪ Mobile | 646.208.4387
mfodeman@wsgr.com

1



**Wilson Sonsini Goodrich & Rosati**
PROFESSIONAL CORPORATION

1301 Avenue of the Americas, 40th Floor
New York, NY 10019-6022

PHONE 212.999.5800
FAX 212.999.5899
www.wsgr.com

March 24, 2017

**VIA FEDERAL EXPRESS & EMAIL**

James Loonam
Deputy Chief, Business and Securities Fraud Section
United States Attorney's Office
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201

James P. McDonald
Trial Attorney, Fraud Section
United States Department of Justice
950 Constitution Ave., NW
Washington, DC 20530

Re:    *United States v. OZ Africa Management GP, LLC,* No. 16-cr-00515-NGG

Dear Gentlemen,

We represent former shareholders and other security holders of Africo Resources Limited
("Africo"). As a part of its far-reaching conspiracy to which they have pled guilty in the above-
captioned matter, OZ Africa Management GP, LLC (the "Defendant") – working with their co-
conspirators – perverted the Congolese legal system and "purchased" a favorable judgment, stealing
a valuable copper and cobalt mine from Africo and illegally and dramatically deflating the value of
the security holders' interests. The security holders of Africo as of the time of these actions are thus
crime victims under the Crime Victims' Rights Act, 18 U.S.C. § 3771 (the "CVRA") and the
Mandatory Restitution Act, 18 U.S.C. § 3663(a) (the "MRA"). We write to apprise you of their
status so that the Department of Justice will assure that they are accorded the rights afforded them
pursuant to the CVRA and the MRA.

As you know, among the various rights afforded to crime victims under the CVRA and the
MRA, is the right to "full and timely" restitution. 18 U.S.C. § 3771(a)(6); *see also,* 18 U.S.C. §
3663(A)(1)(a). Moreover, the Plea Agreement signed by the Defendant specifically envisions the
payment of restitution. *See* Plea Agreement at paragraph 12. We are in the process of calculating
the amount of restitution owed our clients and will provide you and the Court that information as
soon as it becomes available. In the meantime, please begin providing the notices to which our
clients are legally entitled as crime victims in the care of the undersigned so that we may ensure their
rights are fully vindicated.

**WSGR** Wilson Sonsini Goodrich & Rosati
PROFESSIONAL CORPORATION

March 24, 2017
Page 2 of 2

Thank you for your attention and anticipated cooperation.

Best Regards,

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

Michael S. Sommer
Morris J. Fodeman
Wilson Sonsini Goodrich & Rosati
Professional Corporation
1301 Avenue of the Americas
40th Floor
New York, New York 10019
Tel: (212) 999-5800
Email: msommer@wsgr.com
Email: mfodeman@wsgr.com

-----Original Message-----
From: Loonam, James (USANYE) [mailto:James.Loonam@usdoj.gov]
Sent: Wednesday, June 14, 2017 10:58 PM
To: Fodeman, Moe
Cc: Lax, Jonathan (USANYE); McDonald, James (CRM); Pitluck, David (USANYE); Sommer, Michael; McCarthy, Kate
Subject: Re: United States v. OZ Africa Management GP, LLC, 16-CR-515 (NGG)

Thanks. We will review and get back to you.

Best, James

Sent from my iPhone

On Jun 14, 2017, at 8:44 PM, Fodeman, Moe <mfodeman@wsgr.com<mailto:mfodeman@wsgr.com>> wrote:

Gentlemen,

As you know, we represent certain equity holders of Africo Resources Ltd. in connection with United States v. OZ Africa Management GP, LLC, 16-CR-515 (NGG).  As promised, attached please find our "white paper" which explains in detail why our clients are victims of the defendant's crime and entitled to mandatory restitution in an amount that makes them whole under the MVRA.  We have retained the services of a mining valuation expert to assist us in calculating our clients' losses and will share his report with you as soon as it's completed.  We are also in the process of gathering the holdings and sale price information for each of our clients that you requested during our last meeting.  In the meantime, we would like to schedule a meeting with you during the week of June 26 to discuss our clients' victim status and restitution claim.

We look forward to hearing from you.

Best regards,

Moe

_____

Morris J. Fodeman  ?  Wilson Sonsini Goodrich & Rosati, PC

1301 Avenue of the Americas, 40th Floor ? New York, NY 10019 Phone | 212.497.7704 ? Fax | 212.999.5899 ? Mobile | 646.208.4387 mfodeman@wsgr.com<mailto:ekane@wsgr.com>

This email and any attachments thereto may contain private, confidential, and privileged material for the sole use of the intended recipient.  Any review, copying, or distribution of this email (or any attachments thereto) by others is strictly prohibited.  If you are not the intended recipient, please contact the sender immediately and permanently delete the original and any copies of this email and any attachments thereto.

<Africo White Paper - 6-14.17.pdf>

**From:** Pitluck, David (USANYE) [mailto:David.Pitluck@usdoj.gov]
**Sent:** Wednesday, June 21, 2017 11:07 AM
**To:** Fodeman, Moe
**Cc:** McDonald, James (CRM)
**Subject:** Africo

Moe:

Thanks for your message last night. We are still processing your white paper but it has been helpful in our assessment of the issues. A few of us are taking vacations the next couple of weeks but it would be useful to schedule a meeting after the July holiday. We can reach out after our vacations to set something up for later in July, if that works on your end. I am around the rest of this week if you want to chat.

Thanks,

Dave

David Pitluck
Assistant United States Attorney
Eastern District of New York
Tel: (718) 254-6108
david.pitluck@usdoj.gov

**From:** Fodeman, Moe
**Sent:** Friday, June 23, 2017 11:42 AM
**To:** Pitluck, David (USANYE)
**Cc:** McDonald, James (CRM)
**Subject:** RE: Africo

David, thanks for getting back to me.

July is fine by us. Let me know when works and we'll make ourselves available. The only issue I'd flag is that there is this timing requirement under 18 USC 3664(d)(1) that talks about the government giving notice to the probation department of the identity of any victims and amounts subject to restitution no later than 60 days before sentencing. https://www.law.cornell.edu/uscode/text/18/3664 I know that may not apply here because the parties waived a probation report, but my clients are understandably concerned that a deadline might get missed given that sentencing is currently scheduled for September.

In the meantime, if there are any other issues (either raised by OZ's white paper or otherwise) that you'd like us to address, please let me know.

Enjoy the vacation!

Best,

Moe

_____
Morris J. Fodeman ▪ Wilson Sonsini Goodrich & Rosati, PC
1301 Avenue of the Americas, 40th Floor ▪ New York, NY 10019
Phone | 212.497.7704 ▪ Fax | 212.999.5899 ▪ Mobile | 646.208.4387
mfodeman@wsgr.com

**From:** Pitluck, David (USANYE) [mailto:David.Pitluck@usdoj.gov]
**Sent:** Wednesday, June 21, 2017 11:07 AM
**To:** Fodeman, Moe
**Cc:** McDonald, James (CRM)
**Subject:** Africo

Moe:

1

Thanks for your message last night. We are still processing your white paper but it has been helpful in our assessment of the issues. A few of us are taking vacations the next couple of weeks but it would be useful to schedule a meeting after the July holiday. We can reach out after our vacations to set something up for later in July, if that works on your end. I am around the rest of this week if you want to chat.

Thanks,

Dave

David Pitluck
Assistant United States Attorney
Eastern District of New York
Tel: (718) 254-6108
david.pitluck@usdoj.gov

**From:** Fodeman, Moe
**Sent:** Tuesday, July 18, 2017 11:04 AM
**To:** jonathan.lax@usdoj.gov; McDonald, James (CRM); Pitluck, David (USANYE)
**Cc:** Sommer, Michael; McCarthy, Kate
**Subject:** RE: United States v. OZ Africa Management GP, LLC, 16-CR-515 (NGG)

David, Jim, Jonathon,

I am just following up on our request for a meeting to discuss our clients' victim status, and to see if you had any questions regarding our "white paper." As you know, we would very much like to move this process forward.

Best,

Moe

_____
Morris J. Fodeman ▪ Wilson Sonsini Goodrich & Rosati, PC
1301 Avenue of the Americas, 40th Floor ▪ New York, NY 10019
Phone | 212.497.7704 ▪ Fax | 212.999.5899 ▪ Mobile | 646.208.4387
mfodeman@wsgr.com

**From:** Fodeman, Moe
**Sent:** Wednesday, June 14, 2017 8:42 PM
**To:** 'Loonam, James (USANYE)'; 'jonathan.lax@usdoj.gov'; 'McDonald, James (CRM)'; 'Pitluck, David (USANYE)'
**Cc:** Sommer, Michael; McCarthy, Kate
**Subject:** United States v. OZ Africa Management GP, LLC, 16-CR-515 (NGG)

Gentlemen,

As you know, we represent certain equity holders of Africo Resources Ltd. in connection *with United States v. OZ Africa Management GP, LLC,* 16-CR-515 (NGG). As promised, attached please find our "white paper" which explains in detail why our clients are victims of the defendant's crime and entitled to mandatory restitution in an amount that makes them whole under the MVRA. We have retained the services of a mining valuation expert to assist us in calculating our clients' losses and will share his report with you as soon as it's completed. We are also in the process of gathering the holdings and sale price information for each of our clients that you requested during our last meeting. In the meantime, we would like to schedule a meeting with you during the week of June 26 to discuss our clients' victim status and restitution claim.

1

We look forward to hearing from you.

Best regards,

Moe

---

**Morris J. Fodeman ▪ Wilson Sonsini Goodrich & Rosati, PC**
1301 Avenue of the Americas, 40th Floor ▪ New York, NY 10019
Phone | 212.497.7704 ▪ Fax | 212.999.5899 ▪ Mobile | 646.208.4387
mfodeman@wsgr.com

**From:** Pitluck, David (USANYE) [mailto:David.Pitluck@usdoj.gov]
**Sent:** Monday, July 24, 2017 9:17 PM
**To:** Fodeman, Moe
**Cc:** McDonald, James (CRM)
**Subject:** RE: Meeting

OK, great thanks. We will definitely reach out late this week if we have anything particular we want you be prepared to address.

Thanks,

Dave

**From:** Fodeman, Moe [mailto:mfodeman@wsgr.com]
**Sent:** Monday, July 24, 2017 8:39 PM
**To:** Pitluck, David (USANYE)
**Cc:** McDonald, James (CRM)
**Subject:** Re: Meeting

David,

Thanks for the email.

We are available on Monday at 10:30 am, but can make any of those times work.

In the meantime, if there are any issues or questions in particular that you want us to think about beforehand so we're fully prepared to address them for you at the meeting, that might help to move the process forward. Just a thought -- let us know.

Best,
Moe

Moe Fodeman
Wilson Sonsini Goodrich & Rosati
(o) 212.497.7704
(c) 646.208.4387

1

On Jul 24, 2017, at 5:41 PM, Pitluck, David (USANYE) <David.Pitluck@usdoj.gov> wrote:

> Moe:
>
> Jim and I would like to discuss your submissions next week when he is in NYC. Can you meet on Monday between 10:30 a.m. and 2 p.m. or on Tuesday starting at 10 a.m.?
>
> Please let us know if any of those times work for you.
>
> Thanks,
>
> David
>
> David Pitluck
> Assistant United States Attorney
> Eastern District of New York
> Tel: (718) 254-6108
> david.pitluck@usdoj.gov

This email and any attachments thereto may contain private, confidential, and privileged material for the sole use of the intended recipient. Any review, copying, or distribution of this email (or any attachments thereto) by others is strictly prohibited. If you are not the intended recipient, please contact the sender immediately and permanently delete the original and any copies of this email and any attachments thereto.

**From:** Fodeman, Moe
**Sent:** Tuesday, August 08, 2017 10:28 PM
**To:** Pitluck, David (USANYE); McDonald, James (CRM); jonathan.lax@usdoj.gov
**Cc:** Sommer, Michael; Grealis, Catherine; McCarthy, Kate
**Subject:** OZ Africa/Africo

David, Jim, Jonathan,

I'm writing to follow up on our July 31 meeting and my brief call with David yesterday.

First, during our meeting, you asked who the clearing agent was for Africo shares. I've confirmed that it was Computershare. I have attached a screenshot from their website which provides contact information.

Second, you asked about the attached 2014 Wall Street Journal article in which Tony Harwood is quoted. Candidly, the import of the article to the present issues is lost on us. All Mr. Harwood says in the article is that at some point after the Camrose transaction he learned that OZ was involved in financing the deal. What Mr. Harwood didn't know at the time of the interview, let alone in the Spring of 2008, was that OZ and Gertler conspired to bribe judges with OZ's money to coerce Africo's management and shareholders to accept the Camrose deal. In fact, as we said during our meeting, none of our clients had any idea of the existence of the defendant's illicit scheme until you publicly announced it September 2016. In any event, none of this matters. *When* one of our clients learned he was a victim entitling him to restitution has nothing to do with the fact that all of our clients *are* victims.

Third, you asked us if we were aware of any cases where the government left the question of victim status up to the court. We have yet to find any such case. We will of course continue to look, though as we mentioned during the meeting, the obvious implication from the CVRA (18 U.S.C. 3771(c)) is that the government is required to identify the victims of the crimes it prosecutes.

Fourth, David and I discussed the <u>Khan</u> case which, like the <u>Simons</u> case you mentioned in our meeting, relates to the FRCP 11 requirement that a defendant be advised of restitution at the plea hearing. As an initial matter, these cases (and the several other Second Circuit cases addressing this issue) are each distinguishable from ours. In <u>Khan</u> for example, decided in 1988 under a prior version of Rule 11, the defendant was specifically told during his allocution that no restitution would be sought against him. Here, while the court was silent on the issue of restitution, the plea agreement, which OZ Africa and its counsel no doubt read, specifically requires OZ Africa to pay any restitution imposed. Paragraph 12. In <u>Simons</u>, while the court ultimately found that it could not order restitution because the defendant had not been put on proper notice, the defendant was first informed of the victim's $2.7m restitution claim under the Violence

1

Against Women Act *at sentencing*. Here, OZ Africa has been on notice about our claim for at least five months and made no attempt to withdraw its plea. See <u>United States v. Vaval</u>, 404 F.3d 144, 152 (2d Cir. 2005) ("Where a defendant, before sentencing, learns of information erroneously omitted in violation of Rule 11 but fails to attempt to withdraw his plea based on that violation, there can be no 'reasonable probability that, but for the Rule 11 violation, he would not have entered the plea,' and the plain error standard is not met.") (citation and alteration omitted). Finally, in <u>United States v. Showerman</u>, 68 F.3d 1524 (2d Cir. 1995), also decided under a prior version of FRCP 11, the Second Circuit held that the district court violated Rule 11 by failing to advise the defendant that his sentence could include an order of restitution -- notwithstanding the fact that the plea agreement referenced restitution and defense counsel's communications with probation reflected counsel's awareness that the defendant had agreed to make restitution. The Second Circuit noted that the plea agreement "expressed the defendant's *agreement* to make restitution; it made no reference to the court's power to order restitution as part of the sentence." *Id.* at 1528 (emphasis in original). The OZ Africa plea agreement, however, states the defendant "agrees that any fine or restitution <u>imposed by the Court</u> will be due and payable within ten (10) business days of sentencing..." Paragraph 12. Thus, it recognizes the both the court's ability to impose restitution and the defendant's agreement to pay. In any event, even assuming there was a defect in the Rule 11 colloquy here that the defendant has not waved, that defect may be easily cured simply by having the Court advise the defendant that it is subject to mandatory restitution and affording it the opportunity to withdraw its guilty plea. The issue of proper notice has nothing to do with whether our clients are victims under the MVRA, which is what we have asked you to recognize. I'm sure you agree that the question of whether the defendant may be permitted to withdraw its guilty plea and attempt to renegotiate its deal with the government should have no bearing on that analysis.

Finally, please provide us with an update on when you expect to confirm our clients' victim status. As I noted to David yesterday, Bloomberg reported over the weekend that OZ withdrew its DOL waiver application. https://www.bna.com/ochziffs-retirement-asset-n73014462562/. Obviously, if true, sentencing may proceed as scheduled next month. Coupled with fact that OZ is, to use the words of a recent Business Insider article: "bleeding money," http://www.businessinsider.com/och-ziff-jimmy-levin-34-year-old-280-million-betting-future-2017-7, time is of the essence.

Please let me know if you have any questions or wish to discuss any of these issues further.

Best,

Moe

_____

**Morris J. Fodeman ▪ Wilson Sonsini Goodrich & Rosati, PC**
1301 Avenue of the Americas, 40th Floor ▪ New York, NY 10019
Phone | 212.497.7704 ▪ Fax | 212.999.5899 ▪ Mobile | 646.208.4387
mfodeman@wsgr.com

**(Computershare** Investor Centre - Canada          Country  Canada  ▾          Language  English  ▾          | Help | Contact Us

Home          Company Research

# Contact Us

## ❓ Instant support

### Ask our virtual agent Penny



Please enter a key word

**ASK PENNY**

**Top 5 Topics**

Account
Transfer
Info about shares
Tax
DRIP

## 📞 Contact Information

### ● Contact information for a specific company

Ticker symbol or Company Name:          ARL - AFRICO RESOURCES LTD          ❓

**Company Name:**  AFRICO RESOURCES LTD
**Ticker Symbol:**  Not Listed

### Transfer Agency

 **Mail**

**By Regular Mail**
510 Burrard Street 2nd Floor
Vancouver, British Columbia V6C 3B9
CANADA

 **Telephone**

**Toll Free**
800 564 6253

**Toll**
+1 (514) 982 7555

**Fax Number**
+1 (514) 982 7635
+1 (888) 453 0330

**Online Inquiry**

Use **Online Inquiry** to manage your
account and conduct transactions.

You may find the **Printable Forms**
area useful as well.



**Get instant
help from our
online resource**

**ASK PENNY**

**Take a tour of
the all-new
Investor Centre**

**WATCH VIDEO**

**Investor Centre
is now optimized
for your
smartphone**

**LEARN MORE**

DOW JONES, A NEWS CORP COMPANY ▼

This copy is for your personal, non-commercial use only. To order presentation-ready copies for distribution to your colleagues, clients or customers visit http://www.djreprints.com.

https://www.wsj.com/articles/och-ziffs-african-oil-mining-deals-probed-1398633905

MARKETS

# Och-Ziff Loans Financed Controversial Congo Deals

Hedge-fund firm discloses SEC, Justice Department investigate investments



Israeli billionaire Dan Gertler takes a tour of a copper and cobalt mine complex in Democratic Republic of Congo in 2012.
BLOOMBERG NEWS

*By John Carreyrou*

Updated April 28, 2014 1:34 p.m. ET

Hedge-fund company Och-Ziff Capital Management Group OZM +2.03% ▲ LLC helped finance controversial African oil and mining deals, a trail of corporate documents shows, and now faces scrutiny from U.S. authorities.

Och-Ziff disclosed in a March filing that the Securities and Exchange Commission and Justice Department are investigating investments by some of its funds "in a number of companies in Africa" under the Foreign Corrupt Practices Act and related laws.

Och-Ziff made two loans totaling $234 million to companies controlled by Israeli mining magnate Dan Gertler, documents reviewed by The Wall Street Journal show. Both loans were routed through offshore companies, the documents show.

— ADVERTISEMENT —



**THE WALL STREET JOURNAL.**

**THE 10-POINT** | **YOUR PERSONAL BRIEFING ON THE DAY'S TOP STORIES** | Scoops. Hard News. Features. Video. Straight to Your Inbox. | SIGN UP NOW ▶

On Monday, the firm's stock had fallen about 11% in afternoon trade.

---

**OCH-ZIFF'S PAPER TRAIL**

Hedge fund giant Och-Ziff Capital Management Group LLC helped finance controversial oil and mining deals in the Democratic Republic of Congo, documents pieced together by The Wall Street Journal show. Explore some of the documents here.



One of Israel's richest men, Mr. Gertler invests in mines across Africa. Some of his deals have been complicated by legal disputes and criticized for a lack of transparency.

The documents show Och-Ziff's loans helped finance two of Mr. Gertler's ventures in the Democratic Republic of Congo, where he has acknowledged developing close ties with President Joseph Kabila.

Global Witness, an anticorruption organization, has accused Mr. Gertler of gaining control of his Congo assets under opaque circumstances and at steep discounts to their true worth.

Mr. Gertler's Congo deals also have been criticized by Africa Progress Panel, an organization headed by former United Nations Secretary-General Kofi Annan that advocates equitable and sustainable development in Africa.

Mr. Gertler "vigorously contests any and all accusations of wrongdoing in any of" his Congo dealings, a spokesman for the Israeli billionaire said. "Though we are a private business, we recognize we do have certain disclosure obligations and as our business develops, we are acting to improve our transparency efforts."

It isn't clear what specific information U.S. government investigators are seeking from Och-Ziff. The SEC and Justice Department declined to comment.

With $40 billion under management, Och-Ziff is one of Wall Street's largest hedge-fund firms. It is also one of the few publicly traded American hedge-fund firms.

The loans to companies controlled by Mr. Gertler include one made in 2008 by an investment fund run jointly by Och-Ziff and South African partners; another was made in 2010 by Och-Ziff itself, according to the documents, which include offshore corporate-registration filings, investment memos and emails.

The loans were made under the oversight of Michael Cohen, then the head of Och-Ziff's London office and one of its most senior executives, the documents show. Mr. Cohen resigned last year after 15 years at the firm.

Mr. Cohen couldn't be reached for comment.

A person familiar with the agreements between Och-Ziff and Mr. Gertler said they included anticorruption clauses that would have triggered immediate repayment if breached. Those clauses never were invoked.

The deals began in early 2008. Two months after going public on the New York Stock Exchange in November 2007, Och-Ziff launched a joint venture with South African partners to invest in African "natural resources and related businesses," according to an Och-Ziff news release.

Och-Ziff contributed all the investment funds to the joint venture; the South African partners contributed some assets and expertise, according to people familiar with the matter.



The joint venture made a $115 million loan to Mr. Gertler in the spring of 2008, followed by an additional advance of $9 million, through a company registered in the British Virgin Islands, the documents reviewed by the Journal show and Mr. Gertler's spokesman confirms.

With the money, Mr. Gertler financed a deal that gave him control of a valuable copper and cobalt mine in southern Congo called Kalukundi, the documents show and Mr. Gertler's spokesman confirms.

Och-Ziff and its partners knew how Mr. Gertler planned to use the loan and negotiated substantial control rights over the company Mr. Gertler used to acquire control of the mine, the documents show.

Och-Ziff and its South African partners had "a right to participate in the day-to-day management of" the Gertler company and "visited" the Kalukundi mine in March 2008, according to one document.

Kalukundi was the subject of an ownership dispute at the time. A Congolese court had confiscated majority rights to the mine from Africo Resources Ltd., a publicly traded Canadian company, and awarded them to a Congolese company in proceedings Africo charged were fraudulent.

In an interview, Tony Harwood, Africo's then-chief executive, said Mr. Gertler approached him with a solution to the dispute: He offered to buy the Congolese company, return the rights to the Kalukundi mine to Africo and then buy majority control of Africo.

Africo agreed to the Gertler offer. The owners of the Congolese company received $13.5 million as part of the deal.

The Kalukundi dispute "predates" Mr. Gertler's involvement "and we can therefore offer no comment on the circumstances," Mr. Gertler's spokesman said. He added that Mr. Gertler didn't illegitimately use Africo's legal issues for his own advantage.

An official at Congo's Ministry of Mines referred questions about the Kalukundi mining rights to Gécamines, the state-owned mining company that holds minority rights to the mine through a joint venture with Africo. Gécamines didn't respond to requests for comment.

Mr. Harwood said he had no idea the money that financed the transactions came from Och-Ziff. But he said he realized the hedge fund's involvement in early 2009 when Africo, now under Mr. Gertler's control, held a meeting about acquiring another mining company. Och-Ziff representatives attended the meeting, Mr. Harwood said.

The British Virgin Islands company Och-Ziff routed the loan through received $160 million in August 2012, according to a public filing, implying a return on its loan to Mr. Gertler of $36 million.

In November 2010, Och-Ziff lent Mr. Gertler $110 million through a company registered in the Cayman Islands, the documents reviewed by the Journal show and Mr. Gertler's spokesman confirms.

Mr. Gertler's spokesman says the money was primarily used to start developing an oil concession that Mr. Gertler had obtained five months earlier.

That concession, which covered two oil blocks on Lake Albert between Congo and Uganda, also was controversial because the Congolese government had previously awarded it to a British oil company.

Mr. Gertler reimbursed the second Och-Ziff loan in January 2013, the documents show and Mr. Gertler's spokesman confirms. Mr. Gertler's spokesman declined to say how much interest Mr. Gertler paid.

The spokesman said Mr. Gertler "used the loan to deliver substantial investment into" the Lake Albert project.

**Write to** John Carreyrou at john.carreyrou@wsj.com

Copyright &copy;2017 Dow Jones &amp; Company, Inc. All Rights Reserved

This copy is for your personal, non-commercial use only. To order presentation-ready copies for distribution to your colleagues, clients or customers visit http://www.djreprints.com.

-----Original Message-----
From: Pitluck, David (USANYE) [mailto:David.Pitluck@usdoj.gov]
Sent: Tuesday, September 12, 2017 11:58 AM
To: Fodeman, Moe; McDonald, James (CRM)
Cc: Sommer, Michael; McCarthy, Kate
Subject: RE: OZ/Africo

Moe:

Making progress, but still working it on internally.  As you saw, the sentencing date pushed and we are cognizant of all deadlines.

Thanks,

David

-----Original Message-----
From: Fodeman, Moe [mailto:mfodeman@wsgr.com]
Sent: Monday, September 11, 2017 1:22 PM
To: Pitluck, David (USANYE) <DPitluck@usa.doj.gov>; McDonald, James (CRM) <James.McDonald@usdoj.gov>
Cc: Sommer, Michael <msommer@wsgr.com>; McCarthy, Kate <kmccarthy@wsgr.com>
Subject: OZ/Africo

David, Jim,

Hope you're both well.

Do you have an update for us on this?

Best,
Moe

Moe Fodeman
Wilson Sonsini Goodrich & Rosati

This email and any attachments thereto may contain private, confidential, and privileged material for the sole use of the intended recipient.  Any review, copying, or distribution of this email (or any attachments thereto) by others is strictly prohibited.  If you are not the intended recipient, please contact the sender immediately and permanently delete the original and any copies of this email and any attachments thereto.

**From:** Fodeman, Moe
**Sent:** Tuesday, October 03, 2017 1:24 PM
**To:** james.mcdonald@usdoj.gov
**Cc:** david.pitluck@usdoj.gov
**Subject:** OZ

Jim,

I am following up on my voice messages from yesterday. Please let me know when you are available for a call today.

Moe Fodeman
Wilson Sonsini Goodrich & Rosati
(O) 212.497.7704
(C) 646.208.4387

**From:** Fodeman, Moe
**Sent:** Friday, October 06, 2017 9:37 AM
**To:** Jacquelyn.Kasulis@usdoj.gov
**Cc:** Sommer, Michael
**Subject:** RE: U.S. v. OZ Africa (Och Ziff), 16-CR-515(NGG)/Africo Ltd.

Jackie, just following up on below. Are we on for Tuesday or Wednesday. Please let me know.

Thanks, and have a good weekend.

Best,
Moe

_____

Morris J. Fodeman ▪ Wilson Sonsini Goodrich & Rosati, PC
1301 Avenue of the Americas, 40th Floor ▪ New York, NY 10019
Phone | 212.497.7704 ▪ Fax | 212.999.5899 ▪ Mobile | 646.208.4387
mfodeman@wsgr.com

**From:** Fodeman, Moe
**Sent:** Wednesday, October 04, 2017 4:42 PM
**To:** Jacquelyn.Kasulis@usdoj.gov
**Cc:** Sommer, Michael
**Subject:** U.S. v. OZ Africa (Och Ziff), 16-CR-515(NGG)/Africo Ltd.

Jackie, it was good seeing you this am.

To follow up on OZ, my partner, Michael Sommer, and I would like to come to speak to you about our clients' restitution claim, which has been under consideration by EDNY and DOJ for many months.

As you may know, our clients — owners of a Canadian mining company called Africo — were informed of their victim status first by the FBI in late 2016 and then again by your Office in

1

April 2017. This wasn't surprising given that the statement of facts the defendant admitted to at its guilty plea: the stated purpose of the defendant's scheme was to "screw" Africo.

Despite the fact that the MVRA makes restitution mandatory and the government obligated to pursue it on behalf of victims, OZ has since raised a number of arguments with David, Jonathan and Jim why they they shouldn't have to pay restitution to our clients. At the government's request, in June we provided a white paper which explained why our clients are, in fact, victims under the MVRA and entitled to restitution to compensate them for OZ's crimes. Since then we have been waiting for confirmation that the government will continue to vindicate our clients' rights as victims including seeking restitution on their behalves at sentencing on December 15.

In terms of timing, I appreciate that you're just getting your feet wet on this issue, but there is a October 16 deadline (60 days before sentencing) under the MVRA to alert the court of a restitution claim. Given that, we were hoping that you would be available to meet with us early next week. We are available anytime Tuesday morning or Wednesday afternoon. To avoid having to squeeze in another presentation in the short available window, it might make sense to have the DOJ FCPA section supervisor(s) join as well — but we, of course, defer to you on that.

Best,
Moe

Moe Fodeman
Wilson Sonsini Goodrich & Rosati

**From:** Tsao, Leo (CRM) [mailto:Leo.Tsao@usdoj.gov]
**Sent:** Friday, October 13, 2017 5:40 PM
**To:** Fodeman, Moe; Kasulis, Jacquelyn (USANYE)
**Cc:** Grealis, Catherine; McCarthy, Kate; Sommer, Michael
**Subject:** RE: U.S. v. OZ Africa (Och Ziff), 16-CR-515(NGG)/Africo Ltd.

Thank you Moe.

Leo

**From:** Fodeman, Moe [mailto:mfodeman@wsgr.com]
**Sent:** Friday, October 13, 2017 4:47 PM
**To:** Tsao, Leo (CRM) ; Kasulis, Jacquelyn (USANYE)
**Cc:** Grealis, Catherine ; McCarthy, Kate ; Sommer, Michael
**Subject:** U.S. v. OZ Africa (Och Ziff), 16-CR-515(NGG)/Africo Ltd.

Jackie, Leo,

Per your request, on the issue of whether former shareholders of a company (and not just the company itself) are proper victims under the MVRA, the cases we would direct you to are **Marino**, 654 F.3d 310, 321 (2d Cir. 2011) ("Restitution under the MVRA is a remedy provided to victims independent of the availability, or lack thereof, of a private right of action against a defendant."); Judge Garaufis' decision in **Gushlak**, 2012 WL 1379627 (affirmed, 728 F.3d 184 (2d Cir. 2013)) and **Gordon**, 393 F.3d 1044 (9th Cir. 2004). These cases are discussed starting on page 18 of our White Paper.

The relevant inquiry is not whether the individual shareholders would have standing to bring a civil action. Rather, these cases (and others) make clear that the issue of whether someone is a victim of a crime under the MVRA turns on whether that individual was harmed by the defendant's crime. Since our clients were harmed (or "screwed" as the co-conspirators aptly put it), by some measure by the defendant's scheme, they are victims under the MVRA.

Indeed, this was the precise argument Jackie's Office made in **U.S. v. Schwamborn**. In defending the district court's restitution award, the Office cited Marino, and successfully argued shareholders of a company were proper victims under the MVRA because they were proximately harmed by the defendant's crime. *See* **Schwamborn** Br. at *26 ("[Defendant's] extensive reliance upon cases involving private actions under the civil securities law is unavailing. As noted before, the requirements of a private right of action are not controlling under the MVRA"). I've attached the Office's brief in **Schwamborn** for your convenience.

1

We are happy to provide you additional case law or further analysis if that would help you work through this or any other issue.

Have a good weekend,

Moe

**Morris J. Fodeman ▪ Wilson Sonsini Goodrich & Rosati, PC**
1301 Avenue of the Americas, 40th Floor ▪ New York, NY 10019
Phone | 212.497.7704 ▪ Fax | 212.999.5899 ▪ Mobile | 646.208.4387
mfodeman@wsgr.com

This email and any attachments thereto may contain private, confidential, and privileged material for the sole use of the intended recipient. Any review, copying, or distribution of this email (or any attachments thereto) by others is strictly prohibited. If you are not the intended recipient, please contact the sender immediately and permanently delete the original and any copies of this email and any attachments thereto.

**From:** Tsao, Leo (CRM) [mailto:Leo.Tsao@usdoj.gov]
**Sent:** Wednesday, October 25, 2017 12:41 PM
**To:** Fodeman, Moe; Kasulis, Jacquelyn (USANYE)
**Cc:** Grealis, Catherine; McCarthy, Kate; Sommer, Michael
**Subject:** RE: U.S. v. OZ Africa (Och Ziff), 16-CR-515(NGG)/Africo Ltd.

Moe:

I received the email. Apologies for not sending an acknowledgement earlier. Thanks.

Leo

**From:** Fodeman, Moe [mailto:mfodeman@wsgr.com]
**Sent:** Wednesday, October 25, 2017 12:17 PM
**To:** Tsao, Leo (CRM) ; Kasulis, Jacquelyn (USANYE)
**Cc:** Grealis, Catherine ; McCarthy, Kate ; Sommer, Michael
**Subject:** RE: U.S. v. OZ Africa (Och Ziff), 16-CR-515(NGG)/Africo Ltd.

Jackie, Leo,

I just wanted to confirm that you received the email below. It had a number of attachments, so it may have been too large to go through.

Also, during an earlier call, we represented that under the MVRA a defendant is liable for the foreseeable harm caused by co-conspirators — even if that harm occurred before that defendant joined the conspiracy. I have attached **United States v. Bengis**, 783 F.3d 407, 413-414 (2d Cir. 2015), that confirms this is, in fact, the law in the Second Circuit.

Best,

Moe

---

**Morris J. Fodeman ▪ Wilson Sonsini Goodrich & Rosati, PC**
1301 Avenue of the Americas, 40th Floor ▪ New York, NY 10019
Phone | 212.497.7704 ▪ Fax | 212.999.5899 ▪ Mobile | 646.208.4387

mfodeman@wsgr.com

**From:** Fodeman, Moe
**Sent:** Monday, October 23, 2017 1:37 PM
**To:** 'Tsao, Leo (CRM)'; 'Kasulis, Jacquelyn (USANYE)'
**Cc:** Grealis, Catherine; McCarthy, Kate; Sommer, Michael
**Subject:** U.S. v. OZ Africa (Och Ziff), 16-CR-515(NGG)/Africo Ltd.

Jackie, Leo,

Per your request, we are writing to provide you with authority for how to calculate victim losses under the MVRA.

As a starting point, the Second Circuit has repeatedly observed that, "the primary and overarching purpose of the MVRA is to make victims of a crime whole, to **fully** compensate these victims for their losses and to restore these victims to their original state of wellbeing." <u>United States v. Catoggio</u>, 326 F.3d 323 (2d. Cir. 2003) (emphasis added) (citations and quotations omitted) (remanded to Judge Dearie because court did not follow requirements of MVRA and out of concern that $80 million restitution award was inadequate to make victims whole; $190+ million ultimately awarded to ten thousand shareholder victims) . To this end, the MVRA provides that the defendant must pay an amount equal to the greater of the value of the property on the date of the loss or on the date of sentencing. 18 U.S.C. § 3663A(b)(1)(B)).

The Second Circuit has also observed that while the MVRA "unambiguously tells a court ... *when* to value" the property, "the statute is silent ... on the question of *how* the referenced property is to be valued" and that "nowhere does the statute reference 'fair market value' as the only measure to be used in making the restitution calculations contemplated by § 3663A(b)(1)(B)." <u>United States v. Boccagna</u>, 450 F.3d 107, 114 (2d Cir. 2006) (emphasis in original). Rather, the Court concluded that "the law appears to contemplate the exercise of discretion by sentencing courts in determining the measure of value appropriate to restitution in a given case." *Id.* The Court thus "construe[s] 'value' as used in the MVRA to be a flexible concept to be calculated by a district court by the measure that best serves Congress's statutory purposes." *Id.* at 115 citing 18 U.S.C.3663A(b)(1)(B)(i)(I) and (II). Again, that purpose is to make crime victims whole by **fully** compensating them for their loss.

True to these principals, the Second Circuit has made clear that "fair market value" of property (either at the time of the loss or at the time of sentencing) may not be adequate to put the victims in the position they would have been in "but for" a defendant's criminal conduct. In <u>United States v. Scott</u>, 321 Fed.Appx. 71 (2d. Cir. 2009), the Second Circuit affirmed a restitution order that included an award to Scott's victims' for an amount their investment accounts would have increased "but for" the defendant's embezzlement years earlier. *Id.* at 72 (cited approvingly by <u>United States v. Qurashi</u>, 634 F.3d 699, 702 (2d. Cir. 2011). Indeed, as the government correctly argued in its appellate brief in <u>Scott</u> (attached), expected increased investment value awarded to the victims was not unrecoverable "expectation damages," as the defendant contended, but rather an effort to restore the victims "to how they would have been had the thefts not taken place." 2008 WL 6549196 *23. *See also*, <u>United States v. Bartleson</u>, 74 F.Supp.3d 947, 984-85 (N.D. Iowa 2015) (restitution order includes "lost investment earnings" based on "assumptions" about how money would have been invested).

Instructively, in <u>Qurashi</u>, a case involving embezzled cash, the Second Circuit affirmed an EDNY restitution award that sought "to restore a [fraud] victim, to the extent money can do so, to the position he occupied before sustaining injury" by including pre-judgment interest. <u>Qurashi</u>, 634 F.3d at 703 (internal quotation and citation omitted). The Circuit reasoned that because "sentencing courts are required to compensate victims for 'the full amount of each victim's losses,' there is no reason to exclude *losses that result from the deprivation of the victim's ability to put its money to productive use."* *Id.* (quoting section 3664(f)(1)(A) (emphasis added)). The underlining premise is again that that the victim should be placed back in the position he/she would have been "but for" the defendant's crime.

As we explained on our call and previously, our expert will be providing values under two alternative methodologies. The first is based on the fair market value of an undeveloped mine using comparable mines as benchmarks. This methodology, which we have described to you as our "For Sale" sign in the ground, will address the value both at the time of the loss (April 2008) and at present - the time of sentencing. The second methodology is based on what the victims' investment would have been worth today had they been able to move forward with their documented, existing plan to develop this cobalt-rich mine had the defendant and its co-conspirators not committed their crimes. We submit, that as the goal of the MVRA is to restore victims "to how they would have been had the thefts not taken place" as the Second Circuit has mandated, (**Qurashi**, 634 F.3d at 702), this "but for" methodology is the appropriate one to utilize.

Best,

Moe

---

**Morris J. Fodeman ▪ Wilson Sonsini Goodrich & Rosati, PC**
1301 Avenue of the Americas, 40th Floor ▪ New York, NY 10019
Phone | 212.497.7704 ▪ Fax | 212.999.5899 ▪ Mobile | 646.208.4387
mfodeman@wsgr.com

**From:** Fodeman, Moe
**Sent:** Friday, October 13, 2017 4:47 PM
**To:** 'Tsao, Leo (CRM)'; 'Kasulis, Jacquelyn (USANYE)'
**Cc:** Grealis, Catherine; McCarthy, Kate; Sommer, Michael
**Subject:** U.S. v. OZ Africa (Och Ziff), 16-CR-515(NGG)/Africo Ltd.

Jackie, Leo,

Per your request, on the issue of whether former shareholders of a company (and not just the company itself) are proper victims under the MVRA, the cases we would direct you to are **Marino**, 654 F.3d 310, 321 (2d Cir. 2011) ("Restitution under the MVRA is a remedy provided to victims independent of the availability, or lack thereof, of a private right of action against a defendant."); Judge Garaufis' decision in **Gushlak**, 2012 WL 1379627 (affirmed, 728 F.3d 184 (2d Cir. 2013)) and **Gordon**, 393 F.3d 1044 (9th Cir. 2004). These cases are discussed starting on page 18 of our White Paper.

The relevant inquiry is not whether the individual shareholders would have standing to bring a civil action. Rather, these cases (and others) make clear that the issue of whether someone is a victim of a crime under the MVRA turns on whether that individual was harmed by the defendant's crime. Since our clients were harmed (or "screwed" as the co-conspirators aptly put it), by some measure by the defendant's scheme, they are victims under the MVRA.

Indeed, this was the precise argument Jackie's Office made in **U.S. v. Schwamborn**. In defending the district court's restitution award, the Office cited Marino, and successfully argued shareholders of a company were proper victims under the MVRA because they were proximately harmed by the defendant's crime. *See* **Schwamborn** Br. at *26 ("[Defendant's] extensive reliance upon cases involving private actions under the civil securities law is unavailing. As noted before, the requirements of a private right of action are not controlling under the MVRA"). I've attached the Office's brief in **Schwamborn** for your convenience.

We are happy to provide you additional case law or further analysis if that would help you work through this or any other issue.

Have a good weekend,

Moe

---

**Morris J. Fodeman ▪ Wilson Sonsini Goodrich & Rosati, PC**
1301 Avenue of the Americas, 40th Floor ▪ New York, NY 10019
Phone | 212.497.7704 ▪ Fax | 212.999.5899 ▪ Mobile | 646.208.4387
mfodeman@wsgr.com

This email and any attachments thereto may contain private, confidential, and privileged material for the sole use of the intended recipient. Any review, copying, or distribution of this email (or any attachments thereto) by others is strictly prohibited. If you are not the intended recipient, please contact the sender immediately and permanently delete the original and any copies of this email and any attachments thereto.

**From:** Kasulis, Jacquelyn (USANYE) [mailto:Jacquelyn.Kasulis@usdoj.gov]
**Sent:** Tuesday, November 21, 2017 4:19 PM
**To:** Fodeman, Moe; Tsao, Leo (CRM)
**Cc:** Sommer, Michael; McCarthy, Kate; Grealis, Catherine
**Subject:** RE: U.S. v. OZ Africa (Och Ziff), 16-CR-515(NGG)/Africo Ltd.

Moe:

Thank you for sending this to us. We will be in touch soon. Have a Happy Thanksgiving.

Best,
Jackie


**Jacquelyn M. Kasulis**
Chief, Business & Securities Fraud Section
U.S. Attorney's Office
Eastern District of New York
271 Cadman Plaza East
Brooklyn, NY 11201
(718) 254-6103


**From:** Fodeman, Moe [mailto:mfodeman@wsgr.com]
**Sent:** Tuesday, November 21, 2017 4:14 PM
**To:** Kasulis, Jacquelyn (USANYE) ; Tsao, Leo (CRM)
**Cc:** Sommer, Michael ; McCarthy, Kate ; Grealis, Catherine
**Subject:** RE: U.S. v. OZ Africa (Och Ziff), 16-CR-515(NGG)/Africo Ltd.


Jackie, Leo,

Per your request, please use this link to find a valuation report on the Kalukundi Copper/Cobalt Project prepared by Dr. Neal Rigby and his team at SRK Consulting.

As you know, the MVRA requires the Court to order restitution in an amount equal to the *greater of* the value of the property on the date of the loss (in this case, April 2008) and the value of the property on the date of sentencing. 18

1

U.S.C. 3663A(b)(1)(B)(i). As you'll see, consistent with the that statutory mandate, and the case law interpreting it, Dr. Rigby did the following:

First, Dr. Rigby reviewed existing valuation reports of the undeveloped Kalukundi Project prepared in 2008 near the time of the loss, including one commissioned *by Och Ziff itself* around the time it and co-conspirators corruptly gained control of the property. Generally speaking, these valuations (all of which were well in excess of $100 million) were, in Dr. Rigby's expert opinion, quite conservative in their approaches. More significantly, these 2008 valuations were performed prior to significant increases in copper/cobalt prices in the intervening decade and the discovery (in 2013) of significantly more resources at the Kalukundi Project and, in some instances, after the onset of the global financial crisis in the Fall of 2008.

Second, Dr. Rigby determined the value of the undeveloped Kalukundi Project today, in November 2017, close to the scheduled time of sentencing. In doing so, Dr. Rigby used the same industry-standard methodology (discounted cash flow or "DCF") and conservative discount rates that Och-Ziff used in its own 2008 DCF valuation of the property. We also asked Dr. Rigby to value the property utilizing an alternative market approach analysis using comparable transactions to value the undeveloped Kalukundi Project today.

Third, we asked Dr. Rigby to determine the value of the Kalukundi Project had the illicit Camrose transaction not occurred, such that the mine was developed in accordance with the plan underway at Africo prior to the defendant's criminal acts. This approach is designed to put the victims back in the financial position they would have been in "but for" the criminal conspiracy. As you know, prior to the offense, the Africo equity holders effectively owned 75% of the Kalukundi Project. However, as you'll see, Dr. Rigby accounts for the fact that in order to construct the working mine, it would have been necessary to raise additional equity to fund that development. Raising the required equity would have diluted the victims' respective holdings in Africo, resulting in the victims owning a smaller percentage stake in a significantly more valuable project.

To give you a sense of how these valuations translate into restitution awards for our clients, once the (i) 25% of the mining license owned by Gacamines, (ii) the approximately 34% of equity holders we don't yet represent, and (iii) the offset for proceeds for the sale of shares by our clients over the years are subtracted:

- The DCF valuation as of November 2017 yields an award for our clients of approximately $450 million;

- The comparable transaction valuation as of November 2017 yields a range of awards of approximately $338 million to $470 million, and

- The "but for" valuation yields an award of approximately $588 million.

Please let us know if you have any questions. We are looking forward to hearing from you.

Best,

Moe

**Morris J. Fodeman ▪ Wilson Sonsini Goodrich & Rosati, PC**
1301 Avenue of the Americas, 40th Floor ▪ New York, NY 10019
Phone | 212.497.7704 ▪ Fax | 212.999.5899 ▪ Mobile | 646.208.4387
mfodeman@wsgr.com

**From:** Tsao, Leo (CRM) [mailto:Leo.Tsao@usdoj.gov]
**Sent:** Wednesday, October 25, 2017 12:41 PM
**To:** Fodeman, Moe; Kasulis, Jacquelyn (USANYE)
**Cc:** Grealis, Catherine; McCarthy, Kate; Sommer, Michael
**Subject:** RE: U.S. v. OZ Africa (Och Ziff), 16-CR-515(NGG)/Africo Ltd.

Moe:

I received the email. Apologies for not sending an acknowledgement earlier. Thanks.

Leo

**From:** Fodeman, Moe [mailto:mfodeman@wsgr.com]
**Sent:** Wednesday, October 25, 2017 12:17 PM
**To:** Tsao, Leo (CRM) <Leo.Tsao@CRM.USDOJ.GOV>; Kasulis, Jacquelyn (USANYE) <Jacquelyn.Kasulis@usdoj.gov>
**Cc:** Grealis, Catherine <cgrealis@wsgr.com>; McCarthy, Kate <kmccarthy@wsgr.com>; Sommer, Michael
<msommer@wsgr.com>
**Subject:** RE: U.S. v. OZ Africa (Och Ziff), 16-CR-515(NGG)/Africo Ltd.

Jackie, Leo,

I just wanted to confirm that you received the email below. It had a number of attachments, so it may have been too
large to go through.

Also, during an earlier call, we represented that under the MVRA a defendant is liable for the foreseeable harm caused
by co-conspirators — even if that harm occurred before that defendant joined the conspiracy. I have attached **United
States v. Bengis**, 783 F.3d 407, 413-414 (2d Cir. 2015), that confirms this is, in fact, the law in the Second Circuit.

Best,

Moe

_____

**Morris J. Fodeman · Wilson Sonsini Goodrich & Rosati, PC**
1301 Avenue of the Americas, 40th Floor · New York, NY 10019
Phone | 212.497.7704 · Fax | 212.999.5899 · Mobile | 646.208.4387
mfodeman@wsgr.com

**From:** Fodeman, Moe
**Sent:** Monday, October 23, 2017 1:37 PM
**To:** 'Tsao, Leo (CRM)'; 'Kasulis, Jacquelyn (USANYE)'
**Cc:** Grealis, Catherine; McCarthy, Kate; Sommer, Michael
**Subject:** U.S. v. OZ Africa (Och Ziff), 16-CR-515(NGG)/Africo Ltd.

Jackie, Leo,

Per your request, we are writing to provide you with authority for how to calculate victim losses under the MVRA.

As a starting point, the Second Circuit has repeatedly observed that, "the primary and overarching purpose of the MVRA
is to make victims of a crime whole, to *fully* compensate these victims for their losses and to restore these victims to

3

their original state of wellbeing." **United States v. Catoggio**, 326 F.3d 323 (2d. Cir. 2003) (emphasis added) (citations and quotations omitted) (remanded to Judge Dearie because court did not follow requirements of MVRA and out of concern that $80 million restitution award was inadequate to make victims whole; $190+ million ultimately awarded to ten thousand shareholder victims) . To this end, the MVRA provides that the defendant must pay an amount equal to the greater of the value of the property on the date of the loss or on the date of sentencing. 18 U.S.C. § 3663A(b)(1)(B)).

The Second Circuit has also observed that while the MVRA "unambiguously tells a court ... *when* to value" the property, "the statute is silent ... on the question of *how* the referenced property is to be valued" and that "nowhere does the statute reference 'fair market value' as the only measure to be used in making the restitution calculations contemplated by § 3663A(b)(1)(B)." **United States v. Boccagna**, 450 F.3d 107, 114 (2d Cir. 2006) (emphasis in original). Rather, the Court concluded that "the law appears to contemplate the exercise of discretion by sentencing courts in determining the measure of value appropriate to restitution in a given case." *Id.* The Court thus "construe[s] 'value' as used in the MVRA to be a flexible concept to be calculated by a district court by the measure that best serves Congress's statutory purposes." *Id.* at 115 citing 18 U.S.C.3663A(b)(1)(B)(i)(I) and (II). Again, that purpose is to make crime victims whole by *fully* compensating them for their loss.

True to these principals, the Second Circuit has made clear that "fair market value" of property (either at the time of the loss or at the time of sentencing) may not be adequate to put the victims in the position they would have been in "but for" a defendant's criminal conduct. In **United States v. Scott**, 321 Fed.Appx. 71 (2d. Cir. 2009), the Second Circuit affirmed a restitution order that included an award to Scott's victims' for an amount their investment accounts would have increased "but for" the defendant's embezzlement years earlier. *Id.* at 72 (cited approvingly by **United States v. Qurashi**, 634 F.3d 699, 702 (2d. Cir. 2011). Indeed, as the government correctly argued in its appellate brief in **Scott** (attached), expected increased investment value awarded to the victims was not unrecoverable "expectation damages," as the defendant contended, but rather an effort to restore the victims "to how they would have been had the thefts not taken place." 2008 WL 6549196 *23. *See also,* **United States v. Bartleson**, 74 F.Supp.3d 947, 984-85 (N.D. Iowa 2015) (restitution order includes "lost investment earnings" based on "assumptions" about how money would have been invested).

Instructively, in **Qurashi**, a case involving embezzled cash, the Second Circuit affirmed an EDNY restitution award that sought "to restore a [fraud] victim, to the extent money can do so, to the position he occupied before sustaining injury" by including pre-judgment interest. **Qurashi**, 634 F.3d at 703 (internal quotation and citation omitted). The Circuit reasoned that because "sentencing courts are required to compensate victims for 'the full amount of each victim's losses,' there is no reason to exclude *losses that result from the deprivation of the victim's ability to put its money to productive use.*" *Id.* (quoting section 3664(f)(1)(A) (emphasis added)). The underlining premise is again that that the victim should be placed back in the position he/she would have been "but for" the defendant's crime.

As we explained on our call and previously, our expert will be providing values under two alternative methodologies. The first is based on the fair market value of an undeveloped mine using comparable mines as benchmarks. This methodology, which we have described to you as our "For Sale" sign in the ground, will address the value both at the time of the loss (April 2008) and at present - the time of sentencing. The second methodology is based on what the victims' investment would have been worth today had they been able to move forward with their documented, existing plan to develop this cobalt-rich mine had the defendant and its co-conspirators not committed their crimes. We submit, that as the goal of the MVRA is to restore victims "to how they would have been had the thefts not taken place" as the Second Circuit has mandated, (**Qurashi**, 634 F.3d at 702), this "but for" methodology is the appropriate one to utilize.

Best,

Moe

Morris J. Fodeman ▪ Wilson Sonsini Goodrich & Rosati, PC
1301 Avenue of the Americas, 40th Floor ▪ New York, NY 10019
Phone | 212.497.7704 ▪ Fax | 212.999.5899 ▪ Mobile | 646.208.4387
mfodeman@wsgr.com

**From:** Fodeman, Moe
**Sent:** Friday, October 13, 2017 4:47 PM
**To:** 'Tsao, Leo (CRM)'; 'Kasulis, Jacquelyn (USANYE)'
**Cc:** Grealis, Catherine; McCarthy, Kate; Sommer, Michael
**Subject:** U.S. v. OZ Africa (Och Ziff), 16-CR-515(NGG)/Africo Ltd.

Jackie, Leo,

Per your request, on the issue of whether former shareholders of a company (and not just the company itself) are proper victims under the MVRA, the cases we would direct you to are **Marino**, 654 F.3d 310, 321 (2d Cir. 2011) ("Restitution under the MVRA is a remedy provided to victims independent of the availability, or lack thereof, of a private right of action against a defendant."); Judge Garaufis' decision in **Gushlak**, 2012 WL 1379627 (affirmed, 728 F.3d 184 (2d Cir. 2013)) and **Gordon**, 393 F.3d 1044 (9th Cir. 2004). These cases are discussed starting on page 18 of our White Paper.

The relevant inquiry is not whether the individual shareholders would have standing to bring a civil action. Rather, these cases (and others) make clear that the issue of whether someone is a victim of a crime under the MVRA turns on whether that individual was harmed by the defendant's crime. Since our clients were harmed (or "screwed" as the co-conspirators aptly put it), by some measure by the defendant's scheme, they are victims under the MVRA.

Indeed, this was the precise argument Jackie's Office made in **U.S. v. Schwamborn**. In defending the district court's restitution award, the Office cited Marino, and successfully argued shareholders of a company were proper victims under the MVRA because they were proximately harmed by the defendant's crime. See **Schwamborn** Br. at *26 ("[Defendant's] extensive reliance upon cases involving private actions under the civil securities law is unavailing. As noted before, the requirements of a private right of action are not controlling under the MVRA"). I've attached the Office's brief in **Schwamborn** for your convenience.

We are happy to provide you additional case law or further analysis if that would help you work through this or any other issue.

Have a good weekend,

Moe

Morris J. Fodeman ▪ Wilson Sonsini Goodrich & Rosati, PC
1301 Avenue of the Americas, 40th Floor ▪ New York, NY 10019
Phone | 212.497.7704 ▪ Fax | 212.999.5899 ▪ Mobile | 646.208.4387
mfodeman@wsgr.com

This email and any attachments thereto may contain private, confidential, and privileged material for the sole use of the intended recipient. Any review, copying, or distribution of this email (or any attachments thereto) by others is strictly prohibited. If you are not the intended recipient, please contact the sender immediately and permanently delete the original and any copies of this email and any attachments thereto.

5

**From:** McDonald, James (USANYE) 1 [mailto:James.McDonald@usdoj.gov]
**Sent:** Thursday, November 30, 2017 1:06 PM
**To:** Fodeman, Moe
**Cc:** Pitluck, David (USANYE); Lax, Jonathan (USANYE); Moody, Gerald (CRM)
**Subject:** RE: Och Ziff

Moe,

Thank you for your email. Yes, Och-Ziff's counsel, with the consent of the government, filed a request for a 60 day adjournment of the OZ Africa sentencing. I will email you if and when that is granted by Judge Garaufis, and will also update you if a further adjournment is requested or anticipated.

With respect to the waivers, I don't have the specific details re: dates and what not, but did confirm that that the QPAM application was resubmitted to the Department of Labor. Please give me a call if you have any follow up.

Thanks,
Jim McDonald


---
James P. McDonald
Assistant U.S. Attorney
U.S. Attorney's Office
Eastern District of New York
271 Cadman Plaza East
Brooklyn, NY 11201
Office: (718) 254-6376
james.mcdonald@usdoj.gov


**From:** Fodeman, Moe [mailto:mfodeman@wsgr.com]
**Sent:** Tuesday, November 28, 2017 7:03 PM

1

**To:** McDonald, James (USANYE) 1
**Subject:** Och Ziff

Jim,

I see that Och Ziff's Counsel just filed their request for a 60-day sentencing adjournment. Do you have any sense whether the sentencing is likely to actually move forward in February if the request granted, or should we expect yet another request?

Also, as reported in the article below, apparently in August a Bloomberg reporter learned through a FOIA request that Och Ziff had actually *withdrew* its DOL application. Do you know if that's true? Do you know if they have actually reapplied, and if so when that reapplication went in?

Best,
Moe

https://www.bna.com/ochziffs-retirement-asset-n73014462562/

Shared via the Google app

Moe Fodeman
Wilson Sonsini Goodrich & Rosati
(O) 212.497.7704
(C) 646.208.4387

This email and any attachments thereto may contain private, confidential, and privileged material for the sole use of the intended recipient. Any review, copying, or distribution of this email (or any attachments thereto) by others is strictly prohibited. If you are not the intended recipient, please contact the sender immediately and permanently delete the original and any copies of this email and any attachments thereto.

-----Original Message-----
From: Kasulis, Jacquelyn (USANYE) [mailto:Jacquelyn.Kasulis@usdoj.gov]
Sent: Wednesday, January 31, 2018 11:31 AM
To: Sommer, Michael
Cc: Fodeman, Moe; Tsao, Leo (CRM); McCarthy, Kate; Grealis, Catherine
Subject: Re: U.S. v. OZ Africa (Och Ziff), 16-CR-515(NGG)/Africo Ltd.

Sounds good.

On Jan 31, 2018, at 11:26 AM, Sommer, Michael <msommer@wsgr.com<mailto:msommer@wsgr.com>> wrote:

Jackie and Leo - thank you.  Please call Kate McCarthy at 1:30 at 212-497-7790.  She is our fastest scribbler.

Best,
Michael

_____

Michael S. Sommer  ▪  Wilson Sonsini Goodrich & Rosati, PC
1301 Avenue of the Americas, 40th Floor ▪ New York, NY 10019 Phone | 212.497.7728 ▪ Fax | 212.999.5899 ▪ Mobile |
201-906-1939 msommer@wsgr.com<mailto:msommer@wsgr.com>

This email is sent by an attorney and may contain privileged and/or confidential information.  If you have received it in
error, please delete it and contact Mr. Sommer at the telephone number indicated above.

-----Original Message-----
From: Kasulis, Jacquelyn (USANYE) [mailto:Jacquelyn.Kasulis@usdoj.gov]
Sent: Wednesday, January 31, 2018 11:14 AM
To: Sommer, Michael
Cc: Fodeman, Moe; Tsao, Leo (CRM); McCarthy, Kate; Grealis, Catherine
Subject: Re: U.S. v. OZ Africa (Och Ziff), 16-CR-515(NGG)/Africo Ltd.

Michael - Leo and I can do a quick call at 1:30 pm to discuss any gaps you have in your notes.

1

On Jan 31, 2018, at 7:43 AM, Sommer, Michael
<msommer@wsgr.com<mailto:msommer@wsgr.com><mailto:msommer@wsgr.com>> wrote:

Jackie and Leo - we are speaking with our clients today at 3 PM. Despite writing as fast as we could, we have some significant gaps in our notes. Accordingly, could you please send over your script, or in the alternative, give us the name of someone in your office and phone number who can read it to us slowly sometime earlier than 3 PM today. Thanks very much.

Michael S. Sommer
Wilson Sonsini Goodrich & Rosati, PC
1301 Avenue of the Americas
New York, New York  10019
Office:  212-497-7728
Cell:  201-906-1939
Email:  msommer@wsgr.com<mailto:msommer@wsgr.com><mailto:msommer@wsgr.com>

On Jan 27, 2018, at 12:10 PM, Kasulis, Jacquelyn (USANYE)
<Jacquelyn.Kasulis@usdoj.gov<mailto:Jacquelyn.Kasulis@usdoj.gov><mailto:Jacquelyn.Kasulis@usdoj.gov>> wrote:

How about 2:00 pm?

On Jan 26, 2018, at 5:14 PM, Fodeman, Moe
<mfodeman@wsgr.com<mailto:mfodeman@wsgr.com><mailto:mfodeman@wsgr.com><mailto:mfodeman@wsgr.com>> wrote:

Hi Jackie, I probably should have mentioned this on my earlier email but I'm supposed to be on my flight out to Detroit at 4 pm.  Any chance you and Leo have any time before 2:30 pm on Monday? We can make ourselves available for whenever you have up to then.
Best,
Moe

Moe Fodeman
Wilson Sonsini Goodrich & Rosati
(O) 212.497.7704
(C) 646.208.4387

On Jan 26, 2018, at 3:17 PM, Kasulis, Jacquelyn (USANYE)
<Jacquelyn.Kasulis@usdoj.gov<mailto:Jacquelyn.Kasulis@usdoj.gov><mailto:Jacquelyn.Kasulis@usdoj.gov><mailto:Jacquelyn.Kasulis@usdoj.gov>> wrote:

Sure - we're free at 4:00 pm or later on Monday.

On Jan 26, 2018, at 2:37 PM, Fodeman, Moe
<mfodeman@wsgr.com<mailto:mfodeman@wsgr.com><mailto:mfodeman@wsgr.com><mailto:mfodeman@wsgr.com><mailto:mfodeman@wsgr.com>> wrote:

Hi Jackie, any chance we can do Monday instead?  I'm in a proffer all day at the Detroit USAO on Tuesday.

Thanks,

Moe

---

Morris J. Fodeman  ▪  Wilson Sonsini Goodrich & Rosati, PC
1301 Avenue of the Americas, 40th Floor ▪ New York, NY 10019 Phone | 212.497.7704 ▪ Fax | 212.999.5899 ▪ Mobile | 646.208.4387
mfodeman@wsgr.com<mailto:mfodeman@wsgr.com><mailto:mfodeman@wsgr.com><mailto:mfodeman@wsgr.com>
<mailto:mfodeman@wsgr.com>


-----Original Message-----
From: Kasulis, Jacquelyn (USANYE) [mailto:Jacquelyn.Kasulis@usdoj.gov]
Sent: Friday, January 26, 2018 2:33 PM
To: Fodeman, Moe
Cc: Tsao, Leo (CRM); Sommer, Michael; McCarthy, Kate; Grealis, Catherine
Subject: Re: U.S. v. OZ Africa (Och Ziff), 16-CR-515(NGG)/Africo Ltd.

Moe:

Are you available for a call on Tuesday morning with me and Leo?

Thank you,
Jackie

On Jan 4, 2018, at 3:16 PM, Fodeman, Moe
<mfodeman@wsgr.com<mailto:mfodeman@wsgr.com><mailto:mfodeman@wsgr.com><mailto:mfodeman@wsgr.com
><mailto:mfodeman@wsgr.com><mailto:mfodeman@wsgr.com>> wrote:

Jackie, Leo,

Thanks for the call today.  We appreciate you getting back to us and are glad to hear that things are still on track for a decision by your Offices by the end of this month.  If that should change, please let us know.

As I said on the call, if it looks like there is a serious possibility that the ultimate decision may be that the government does not view our clients as victims who are entitled to restitution, then we really would like the opportunity to "go up the chain" at your respective Offices before any final decision is made.

Happy New Year and stay warm!

Best,

Moe

---

Morris J. Fodeman  ▪  Wilson Sonsini Goodrich & Rosati, PC
1301 Avenue of the Americas, 40th Floor ▪ New York, NY 10019 Phone | 212.497.7704 ▪ Fax | 212.999.5899 ▪ Mobile | 646.208.4387
mfodeman@wsgr.com<mailto:mfodeman@wsgr.com><mailto:mfodeman@wsgr.com><mailto:mfodeman@wsgr.com>
<mailto:mfodeman@wsgr.com><mailto:ekane@wsgr.com>

From: Kasulis, Jacquelyn (USANYE) [mailto:Jacquelyn.Kasulis@usdoj.gov]
Sent: Tuesday, November 21, 2017 4:19 PM
To: Fodeman, Moe; Tsao, Leo (CRM)
Cc: Sommer, Michael; McCarthy, Kate; Grealis, Catherine
Subject: RE: U.S. v. OZ Africa (Och Ziff), 16-CR-515(NGG)/Africo Ltd.

Moe:

Thank you for sending this to us. We will be in touch soon. Have a Happy Thanksgiving.

Best,
Jackie


Jacquelyn M. Kasulis
Chief, Business & Securities Fraud Section U.S. Attorney's Office Eastern District of New York
271 Cadman Plaza East
Brooklyn, NY 11201
(718) 254-6103

From: Fodeman, Moe [mailto:mfodeman@wsgr.com]
Sent: Tuesday, November 21, 2017 4:14 PM
To: Kasulis, Jacquelyn (USANYE)
<JKasulis@usa.doj.gov><mailto:JKasulis@usa.doj.gov><mailto:JKasulis@usa.doj.gov><mail
to:JKasulis@usa.doj.gov><mailto:JKasulis@usa.doj.gov>>; Tsao, Leo (CRM)
<Leo.Tsao@usdoj.gov><mailto:Leo.Tsao@usdoj.gov><mailto:Leo.Tsao@usdoj.gov><mailto:
Leo.Tsao@usdoj.gov><mailto:Leo.Tsao@usdoj.gov>>
Cc: Sommer, Michael
<msommer@wsgr.com<mailto:msommer@wsgr.com><mailto:msommer@wsgr.com><mailto:msommer@wsgr.com><
mailto:msommer@wsgr.com><mailto:msommer@wsgr.com>>; McCarthy, Kate
<kmccarthy@wsgr.com><mailto:kmccarthy@wsgr.com><mailto:kmccarthy@wsgr.com><mailto:kmccarthy@wsgr.com><
mailto:kmccarthy@wsgr.com><mailto:kmccarthy@wsgr.com>>; Grealis, Catherine
<cgrealis@wsgr.com<mailto:cgrealis@wsgr.com><mailto:cgrealis@wsgr.com><mailto:cgrealis@wsgr.com><mailto:cgre
alis@wsgr.com><mailto:cgrealis@wsgr.com>>
Subject: RE: U.S. v. OZ Africa (Och Ziff), 16-CR-515(NGG)/Africo Ltd.

Jackie, Leo,
Per your request, please use this link<https://wsgr.sendthisfile.com/XcJZT1IYFbN3vUmL3YlQMwbs> to find a valuation
report on the Kalukundi Copper/Cobalt Project prepared by Dr. Neal Rigby<https://www.na.srk.com/en/mining/na-dr-
neal-rigby> and his team at SRK Consulting.
As you know, the MVRA requires the Court to order restitution in an amount equal to the greater of the value of the
property on the date of the loss (in this case, April 2008) and the value of the property on the date of sentencing. 18
U.S.C. 3663A(b)(1)(B)(i).  As you'll see, consistent with the that statutory mandate, and the case law interpreting it, Dr.
Rigby did the following:
First, Dr. Rigby reviewed existing valuation reports of the undeveloped Kalukundi Project prepared in 2008 near the time
of the loss, including one commissioned by Och Ziff itself around the time it and co-conspirators corruptly gained control
of the property.  Generally speaking, these valuations (all of which were well in excess of $100 million) were, in Dr.
Rigby's expert opinion, quite conservative in their approaches.  More significantly, these 2008 valuations were
performed prior to significant increases in copper/cobalt prices in the intervening decade and the discovery (in 2013) of
significantly more resources at the Kalukundi Project and, in some instances, after the onset of the global financial crisis
in the Fall of 2008.

4

Second, Dr. Rigby determined the value of the undeveloped Kalukundi Project today, in November 2017, close to the scheduled time of sentencing. In doing so, Dr. Rigby used the same industry-standard methodology (discounted cash flow or "DCF") and conservative discount rates that Och-Ziff used in its own 2008 DCF valuation of the property. We also asked Dr. Rigby to value the property utilizing an alternative market approach analysis using comparable transactions to value the undeveloped Kalukundi Project today.

Third, we asked Dr. Rigby to determine the value of the Kalukundi Project had the illicit Camrose transaction not occurred, such that the mine was developed in accordance with the plan underway at Africo prior to the defendant's criminal acts. This approach is designed to put the victims back in the financial position they would have been in "but for" the criminal conspiracy. As you know, prior to the offense, the Africo equity holders effectively owned 75% of the Kalukundi Project. However, as you'll see, Dr. Rigby accounts for the fact that in order to construct the working mine, it would have been necessary to raise additional equity to fund that development. Raising the required equity would have diluted the victims' respective holdings in Africo, resulting in the victims owning a smaller percentage stake in a significantly more valuable project.

To give you a sense of how these valuations translate into restitution awards for our clients, once the (i) 25% of the mining license owned by Gacamines, (ii) the approximately 34% of equity holders we don't yet represent, and (iii) the offset for proceeds for the sale of shares by our clients over the years are subtracted:

-       The DCF valuation as of November 2017 yields an award for our clients of approximately $450 million;

-       The comparable transaction valuation as of November 2017 yields a range of awards of approximately $338 million to $470 million, and

-       The "but for" valuation yields an award of approximately $588 million.

Please let us know if you have any questions. We are looking forward to hearing from you.

Best,

Moe

---

Morris J. Fodeman ▪ Wilson Sonsini Goodrich & Rosati, PC
1301 Avenue of the Americas, 40th Floor ▪ New York, NY 10019 Phone | 212.497.7704 ▪ Fax | 212.999.5899 ▪ Mobile | 646.208.4387
mfodeman@wsgr.com<mailto:mfodeman@wsgr.com><mailto:mfodeman@wsgr.com><mailto:mfodeman@wsgr.com>
<mailto:mfodeman@wsgr.com><mailto:ekane@wsgr.com>

From: Tsao, Leo (CRM) [mailto:Leo.Tsao@usdoj.gov]
Sent: Wednesday, October 25, 2017 12:41 PM
To: Fodeman, Moe; Kasulis, Jacquelyn (USANYE)
Cc: Grealis, Catherine; McCarthy, Kate; Sommer, Michael
Subject: RE: U.S. v. OZ Africa (Och Ziff), 16-CR-515(NGG)/Africo Ltd.

Moe:

I received the email. Apologies for not sending an acknowledgement earlier. Thanks.

Leo

From: Fodeman, Moe [mailto:mfodeman@wsgr.com]
Sent: Wednesday, October 25, 2017 12:17 PM
To: Tsao, Leo (CRM)
<Leo.Tsao@CRM.USDOJ.GOV<mailto:Leo.Tsao@CRM.USDOJ.GOV><mailto:Leo.Tsao@CRM.USDOJ.GOV><mailto:Leo.Tsao@CRM.USDOJ.GOV><mailto:Leo.Tsao@CRM.USDOJ.GOV>>; Kasulis, Jacquelyn (USANYE)
<Jacquelyn.Kasulis@usdoj.gov<mailto:Jacquelyn.Kasulis@usdoj.gov><mailto:Jacquelyn.Kasulis@usdoj.gov><mailto:Jacquelyn.Kasulis@usdoj.gov><mailto:Jacquelyn.Kasulis@usdoj.gov><mailto:Jacquelyn.Kasulis@usdoj.gov>>

Cc: Grealis, Catherine
<cgrealis@wsgr.com<mailto:cgrealis@wsgr.com><mailto:cgrealis@wsgr.com><mailto:cgrealis@wsgr.com><mailto:cgre
alis@wsgr.com><mailto:cgrealis@wsgr.com>>; McCarthy, Kate
<kmccarthy@wsgr.com<mailto:kmccarthy@wsgr.com><mailto:kmccarthy@wsgr.com><mailto:kmccarthy@wsgr.com><
mailto:kmccarthy@wsgr.com><mailto:kmccarthy@wsgr.com>>; Sommer, Michael
<msommer@wsgr.com<mailto:msommer@wsgr.com><mailto:msommer@wsgr.com><mailto:msommer@wsgr.com><
mailto:msommer@wsgr.com><mailto:msommer@wsgr.com>>
Subject: RE: U.S. v. OZ Africa (Och Ziff), 16-CR-515(NGG)/Africo Ltd.

Jackie, Leo,

I just wanted to confirm that you received the email below.  It had a number of attachments, so it may have been too
large to go through.

Also, during an earlier call, we represented that under the MVRA a defendant is liable for the foreseeable harm caused
by co-conspirators — even if that harm occurred before that defendant joined the conspiracy.  I have attached United
States v. Bengis, 783 F.3d 407, 413-414 (2d Cir. 2015), that confirms this is, in fact, the law in the Second Circuit.

Best,

Moe

_____

Morris J. Fodeman  ▪  Wilson Sonsini Goodrich & Rosati, PC
1301 Avenue of the Americas, 40th Floor ▪ New York, NY 10019 Phone | 212.497.7704 ▪ Fax | 212.999.5899 ▪ Mobile |
646.208.4387
mfodeman@wsgr.com<mailto:mfodeman@wsgr.com><mailto:mfodeman@wsgr.com><mailto:mfodeman@wsgr.com>
<mailto:mfodeman@wsgr.com><mailto:ekane@wsgr.com>

From: Fodeman, Moe
Sent: Monday, October 23, 2017 1:37 PM
To: 'Tsao, Leo (CRM)'; 'Kasulis, Jacquelyn (USANYE)'
Cc: Grealis, Catherine; McCarthy, Kate; Sommer, Michael
Subject: U.S. v. OZ Africa (Och Ziff), 16-CR-515(NGG)/Africo Ltd.

Jackie, Leo,

Per your request, we are writing to provide you with authority for how to calculate victim losses under the MVRA.

As a starting point, the Second Circuit has repeatedly observed that, "the primary and overarching purpose of the MVRA
is to make victims of a crime whole, to fully compensate these victims for their losses and to restore these victims to
their original state of wellbeing." United States v. Catoggio, 326 F.3d 323 (2d. Cir. 2003) (emphasis added) (citations and
quotations omitted) (remanded to Judge Dearie because court did not follow requirements of MVRA and out of concern
that $80 million restitution award was inadequate to make victims whole; $190+ million ultimately awarded to ten
thousand shareholder victims) .  To this end, the MVRA provides that the defendant must pay an amount equal to the
greater of the value of the property on the date of the loss or on the date of sentencing. 18 U.S.C. § 3663A(b)(1)(B)).

The Second Circuit has also observed that while the MVRA "unambiguously tells a court ... when to value" the property,
"the statute is silent ... on the question of how the referenced property is to be valued" and that "nowhere does the
statute reference 'fair market value' as the only measure to be used in making the restitution calculations contemplated

by § 3663A(b)(1)(B)." United States v. Boccagna, 450 F.3d 107, 114 (2d Cir. 2006) (emphasis in original).  Rather, the Court concluded that "the law appears to contemplate the exercise of discretion by sentencing courts in determining the measure of value appropriate to restitution in a given case." Id.  The Court thus "construe[s] 'value' as used in the MVRA to be a flexible concept to be calculated by a district court by the measure that best serves Congress's statutory purposes." Id. at 115 citing 18 U.S.C.3663A(b)(1)(B)(i)(I) and (II).  Again, that purpose is to make crime victims whole by fully compensating them for their loss.

True to these principals, the Second Circuit has made clear that "fair market value" of property (either at the time of the loss or at the time of sentencing) may not be adequate to put the victims in the position they would have been in "but for" a defendant's criminal conduct.  In United States v. Scott, 321 Fed.Appx. 71 (2d. Cir. 2009), the Second Circuit affirmed a restitution order that included an award to Scott's victims' for an amount their investment accounts would have increased "but for" the defendant's embezzlement years earlier. Id. at 72 (cited approvingly by United States v. Qurashi, 634 F.3d 699, 702 (2d. Cir. 2011).  Indeed, as the government correctly argued in its appellate brief in Scott (attached), expected increased investment value awarded to the victims was not unrecoverable "expectation damages," as the defendant contended, but rather an effort to restore the victims "to how they would have been had the thefts not taken place."  2008 WL 6549196 *23.  See also, United States v. Bartleson, 74 F.Supp.3d 947, 984-85 (N.D. Iowa 2015 (restitution order includes "lost investment earnings" based on "assumptions" about how money would have been invested).

Instructively, in Qurashi, a case involving embezzled cash, the Second Circuit affirmed an EDNY restitution award that sought "to restore a [fraud] victim, to the extent money can do so, to the position he occupied before sustaining injury" by including pre-judgment interest. Qurashi, 634 F.3d at 703 (internal quotation and citation omitted).  The Circuit reasoned that because "sentencing courts are required to compensate victims for 'the full amount of each victim's losses,' there is no reason to exclude losses that result from the deprivation of the victim's ability to put its money to productive use." Id. (quoting section 3664(f)(1)(A) (emphasis added)).  The underlining premise is again that that the victim should be placed back in the position he/she would have been "but for" the defendant's crime.

As we explained on our call and previously, our expert will be providing values under two alternative methodologies. The first is based on the fair market value of an undeveloped mine using comparable mines as benchmarks.  This methodology, which we have described to you as our "For Sale" sign in the ground, will address the value both at the time of the loss (April 2008) and at present - the time of sentencing.  The second methodology is based on what the victims' investment would have been worth today had they been able to move forward with their documented, existing plan to develop this cobalt-rich mine had the defendant and its co-conspirators not committed their crimes.  We submit that as the goal of the MVRA is to restore victims "to how they would have been had the thefts not taken place" as the Second Circuit has mandated, (Qurashi, 634 F.3d at 702), this "but for" methodology is the appropriate one to utilize.

Best,

Moe

---

Morris J. Fodeman  ▪  Wilson Sonsini Goodrich & Rosati, PC
1301 Avenue of the Americas, 40th Floor ▪ New York, NY 10019 Phone | 212.497.7704 ▪ Fax | 212.999.5899 ▪ Mobile | 646.208.4387
mfodeman@wsgr.com<mailto:mfodeman@wsgr.com><mailto:mfodeman@wsgr.com><mailto:mfodeman@wsgr.com>
<mailto:mfodeman@wsgr.com><mailto:ekane@wsgr.com>

From: Fodeman, Moe
Sent: Friday, October 13, 2017 4:47 PM
To: 'Tsao, Leo (CRM)'; 'Kasulis, Jacquelyn (USANYE)'
Cc: Grealis, Catherine; McCarthy, Kate; Sommer, Michael
Subject: U.S. v. OZ Africa (Och Ziff), 16-CR-515(NGG)/Africo Ltd.

Jackie, Leo,

Per your request, on the issue of whether former shareholders of a company (and not just the company itself) are proper victims under the MVRA, the cases we would direct you to are Marino, 654 F.3d 310, 321 (2d Cir. 2011) ("Restitution under the MVRA is a remedy provided to victims independent of the availability, or lack thereof, of a private right of action against a defendant."); Judge Garaufis' decision in Gushlak, 2012 WL 1379627 (affirmed, 728 F.3d 184 (2d Cir. 2013)) and Gordon, 393 F.3d 1044 (9th Cir. 2004).  These cases are discussed starting on page 18 of our White Paper.

The relevant inquiry is not whether the individual shareholders would have standing to bring a civil action.  Rather, these cases (and others) make clear that the issue of whether someone is a victim of a crime under the MVRA turns on whether that individual was harmed by the defendant's crime.  Since our clients were harmed (or "screwed" as the co-conspirators aptly put it), by some measure by the defendant's scheme, they are victims under the MVRA.

Indeed, this was the precise argument Jackie's Office made in U.S. v. Schwamborn.  In defending the district court's restitution award, the Office cited Marino, and successfully argued shareholders of a company were proper victims under the MVRA because they were proximately harmed by the defendant's crime.  See Schwamborn Br. at *26 ("[Defendant's] extensive reliance upon cases involving private actions under the civil securities law is unavailing. As noted before, the requirements of a private right of action are not controlling under the MVRA").  I've attached the Office's brief in Schwamborn for your convenience.

We are happy to provide you additional case law or further analysis if that would help you work through this or any other issue.

Have a good weekend,

Moe

Morris J. Fodeman ▪ Wilson Sonsini Goodrich & Rosati, PC
1301 Avenue of the Americas, 40th Floor ▪ New York, NY 10019 Phone | 212.497.7704 ▪ Fax | 212.999.5899 ▪ Mobile | 646.208.4387
mfodeman@wsgr.com<mailto:mfodeman@wsgr.com><mailto:mfodeman@wsgr.com><mailto:mfodeman@wsgr.com><mailto:mfodeman@wsgr.com><mailto:ekane@wsgr.com>

This email and any attachments thereto may contain private, confidential, and privileged material for the sole use of the intended recipient.  Any review, copying, or distribution of this email (or any attachments thereto) by others is strictly prohibited.  If you are not the intended recipient, please contact the sender immediately and permanently delete the original and any copies of this email and any attachments thereto.