UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

-against-

OZ AFRICA MANAGEMENT GP, LLC,

Defendant.

Case No.: 1:16-cr-00515-NGG

## SUPPLEMENTAL SUBMISSION OF OZ AFRICA MANAGEMENT GP, LLC

Defendant OZ Africa Management GP LLC ("OZ Africa") makes this submission to address the June 28, 2018 letter and exhibits filed on behalf of former shareholders of Africo Resources Ltd. (the "Claimants"), and to demonstrate why their claim for restitution remains meritless.

It should be noted from the outset that the Claimants appear to have mischaracterized the Government's position when they state that the Government "has acknowledged that the Africo Owners are victims." Claimants' June 28, 2018 Letter (ECF 46) ("Claimants' Letter") at 7; *see id* at 1. As the Government informed the Court at the April 5, 2018 conference:

> We have had a lengthy, multi-year investigation against the defendant that has resulted in the agreement that was presented to the Court as well as a deferred prosecution agreement. . . . [R]estitution was not included in the plea agreement. . . . [W]e carefully considered [restitution] through multiple submissions encompassing the highest levels of our office and tried to reach the conclusion that we think is appropriate under the law and the facts . . . . **[W]e believe that these claimants from Afric[o] are not victims under the statute and that we should proceed to sentencing as -- under the terms as laid out in the agreement.**

April 5, 2018, Transcript of Proceedings at 6-7 (emphasis added).

This position remains legally and factually correct, and the Claimants' eleventh-hour submission does nothing to cure the fatal defects in their claims. The Claimants have submitted nothing new that is of any relevance to their claim for restitution, and there is therefore no need for another conference or a hearing prior to sentencing. The Court should reject the Claimants' attempt to further delay these proceedings, as well as their request for restitution, and proceed directly to sentencing under the terms in the Plea Agreement.

The Claimants have submitted the following documents to the Court, described below in the order presented:

1. A December 1, 2006 Bailiff's certification concerning the seizure of shares of Swanmines Sprl ("Swanmines"), which, upon the application of Alejandro Berardone, were to be sold in a public auction to satisfy an unpaid default judgment held by Mr. Berardone against Africo Resources Ltd. ("Africo"). The document indicates that notice of the auction was given to Swanmines. *See* Claimants' Letter, Exhibit 1.

2. A January 18, 2007 certification of the Bailiff, stating that he gave notice of the auction of "shares belonging to the company [Africo] in the company [Swanmines]" and that he completed that public auction on December 17, 2006, selling those shares to Akam Mining SPRL ("Akam") for US $600,000. *See* Claimants' Letter, Exhibit 2.

3. An April 18, 2007 order of the Congolese judge directing, at the request of Akam, a special meeting of Swanmines shareholders. *See* Claimants' Letter, Exhibit 3.

4. An April 27, 2007 Africo press release describing the default judgment and subsequent public auction of Swanmines shares. OZ Africa previously provided this same press release to the Government and the Court as Exhibit 9 to the Declaration of Samantha Lawson, dated March 2, 2018 (ECF 38). *See* Claimants' Letter, Exhibit 4.

5. A September 5, 2007 Africo press release containing a Dear Shareholder letter from Africo's Board of Directors (including Claimants) informing shareholders of developments relating to the Kalukundi property in the DRC. *See* Claimants' Letter, Exhibit 5.

6. A September 19, 2007 Africo News Release over the names of Claimants containing updates on DRC legal proceedings. *See* Claimants' Letter, Exhibit 6.

7. An undated (but apparently responding to an October 2007 letter) Statement of the DRC Ministry of Justice to the Manager of Akam Mining sprl noting that Africo did not own the shares of Swanmines that were subject to the public sale. *See* Claimants' Letter, Exhibit 7.

8. An April 2008 Road Map and Ordinance from the DRC Supreme Court of Justice. *See* Claimants' Letter, Exhibit 8.

9. January 15, 2009 Minutes of the general meeting of Swanmines shareholders recording: (i) a change in corporate address; (ii) the grant of a 12 month extension to finalize a Feasibility Study on the Kalukundi property; (iii) that Africo DRC Sprl replaced Akam as 75% shareholder of Swanmines, with a management board comprised of seven members (four from Africo DRC Sprl and three from Gecamines); and (iv) that the Chairman of the Board was Claimant Antony Harwood. *See* Claimants' Letter, Exhibit 9.

10. The English translation of this document is the same as that for Claimants' Exhibit 2. *See* Claimants' Letter, Exhibit 10.

11. An October 24, 2007 Africo press release noting that Africo did not own the shares of Swanmines that were subject to the public sale. *See* Claimants' Letter, Exhibit 11.

12. A June 9, 2008 letter from counsel for Africo and the H&J Swanepoel Family Trust sprl to the Chief Clerk of the DRC Supreme Court of Justice requesting a status update on the case. *See* Claimants' Letter, Exhibit 12.

13. A June 12, 2008 letter from the Chief Clerk of the DRC Supreme Court of Justice to counsel for Africo and the H&J Swanepoel Family Trust sprl, indicating a decision in the case had not been made. *See* Claimants' Letter, Exhibit 13.

As discussed below, these documents add nothing of legal significance to what has already been presented to the Court. They do not change the fact that Claimants are not "victims" under the restitution statutes, and are not entitled to restitution as a matter of law.

First, the Claimants had no property interest in any mine or any mining rights in the Congo. *See* OZ Africa Memorandum, dated Mar. 2, 2018 (ECF 37), at 6-7 (the MVRA "applies only to a 'direct' loss of 'property'") (citing 18 U.S.C. §§ 3663A(b)(1), 3663A(a)(1), 3663A(a)(2)). The Claimants were shareholders in a Canadian public corporation, that owned shares in a Canadian private corporation, that owned shares in a Congolese trust company, that owned shares in a Congolese corporation, that held a permit to develop the mine. *See* Corporate Structure Chart, Lawson Supp. Decl. (ECF 41-2), at Ex. 25 (copy attached as Appendix A

hereto).[1] The Claimants' submission only confirms the lack of direct (by multiple levels) interest they had in what they now contend is their property. The Africo press release attached as Exhibit 4 to the Claimants' Letter describes Africo's interest as held "through its subsidiaries," as does the press release submitted by Claimants as Exhibit 6 to their Letter (describing Africo's interest as held through a subsidiary H&J Swanepoel Family Trust s.p.r.l. and acknowledging "that shares held by H&J are not those shares which Africo would have held."). The letter to Africo shareholders submitted by the Claimants as part of Exhibit 5 similarly describes the company's interest as indirect. *See also* Claimants' June 28, 2018 Letter, Exhibit 11 (describing Swanmines as "the entity that holds the Kalukundi license").[2] An injury to a corporation is not a "direct" injury to its shareholders, much less to shareholders removed several times over such as the Claimants. *See Starr Int'l Co., Inc.* v. *United States*, 856 F.3d 953, 967 (Fed. Cir. 2017) ("Typically, 'claims of corporate overpayment are treated as causing harm solely to the corporation and thus are regarded as derivative.'"), *cert. denied*, 138 S.Ct. 1324 (2018). Because they suffered no "direct" harm, the Claimants are not "victims" under the restitution statutes. *See United States* v. *Dharia*, 284 F. Supp. 3d 262, 271 (E.D.N.Y. Jan. 10, 2018) (Weinstein, J.) ("As Congress made clear in the MVRA, not every person with a grievance against a defendant is entitled to criminal restitution. Only those 'directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered' may obtain restitution."),

---

[1] Claimants have conceded that this complex corporate structure was created with attendant tax benefits in mind. *See* Letter to the Court from Counsel for Claimants dated Mar. 6, 2018 (ECF 43), at 14. But with the benefits and protections of this complex corporate structure comes the fact that, as the Court has recognized, Claimants' interests are no more than those of shareholders. *See* April 5, 20128, Transcript of Proceedings at 15 (The Court: "[Claimants] are shareholders."). No matter how many times Claimants misstate it, they were always no more than "shareholders," and their shareholder interests were always several steps removed from any interest in the Kalukundi property.

[2] The Statement of the DRC Ministry of Justice submitted by the Claimants as Exhibit 7 similarly confirms that the H&J Swanepoel Family Trust – "and not AFRICO Resources" – owned the interest in the property.

*mandamus denied sub nom. In re PRP Brooklyn Eatery, LLC*, 2018 WL 2459564 (2d Cir. Apr. 2, 2018).[3]

Second, the actual *property* the Claimants did own – shares in Africo Resources Ltd. – was never taken from them, as a result of the offense or otherwise. The Claimants argue the offense "forced" them to enter into the Camrose Transactions, but the Camrose Transactions did not deprive a single Africo shareholder of a single share of Africo stock. *See* OZ Africa Memorandum, dated Mar. 2, 2018 (ECF 37), at 22-25. Each Claimant owned exactly the same number of shares after the Camrose Transactions as he or she did the day before. In fact, the day after the Camrose Transactions, each share of stock owned by the Claimants increased in value by almost 13% (*id*. at 13-14) and, in the aggregate, Claimants' holdings were worth $10 million more the day after the Camrose Transactions than they were the day before. *Id*. at 24.

Third, any claim of "dilution" of the Claimants' respective individual ownership interests in Africo as a result of the Camrose Transactions is not the loss of a property right, as required by the restitution statutes. *Id*. at 18-21; 18 U.S.C. § 3663A; 18 U.S.C. § 3664. No single Claimant held more than 12.2% of the company's stock, with most holding considerably less

---

[3] *See also United States* v. *Stevens*, 2018 WL 3148525, at *2 (2d Cir. June 26, 2018):

> The MVRA makes restitution mandatory for certain categories of crimes, including those that inflict property loss on their victims. 18 U.S.C. § 3663A(a). Only a victim is entitled to restitution under the MVRA. *See United States* v. *Maynard*, 743 F.3d 374, 378 (2d Cir. 2014). A "victim" for the purposes of the statute is "a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered . . . ." 18 U.S.C. § 3663A(a)(2). The MVRA thus aims to limit restitution to those harms that "ha[ve] a sufficiently close connection to the conduct at issue." *Robers* v. *United States*, 134 S. Ct. 1854, 1859 (2014) (citation and internal quotation marks omitted).

*Accord*, *United States* v. *Quatrella*, 722 F. App'x 64, 69 (2d Cir. Feb. 9, 2018) ("A 'victim' is 'a person directly and proximately harmed as a result of the commission of an offense,' including, for conspiracy offenses, 'any person directly harmed by the defendant's criminal conduct in the course of the . . . conspiracy.'") (citation omitted); *see also* April 5, 2018, Transcript of Proceedings at 10 (The Court: "The MVRA defines a victim with respect to a conspiracy as someone who is directly harmed by the defendant's criminal conduct. . . .").

than 1%. *See* Africo Notice of Annual and Special Meeting of Shareholders and Management Information Circular (May 14, 2008), Lawson Decl. (ECF 38), Ex. 3, at 4-6. None of the Claimants individually had control over Africo, and there was no agreement among them to act as a group (which would have been required to be publicly disclosed under the securities laws), so there was no dilution of control, and thus no loss of a property right. Further, even a claim of *wrongful* equity dilution – which is not what happened here – is not a direct claim. Rather, it is at most an indirect or derivative harm to shareholders. *See F5 Capital* v. *Pappas*, 856 F.3d 61, 72 (2d Cir. 2017), *cert. denied*, 138 S. Ct. 473 (2017) ("a claim for wrongful equity dilution . . . [is] not normally regarded as direct . . . because the alleged injury . . . falls only upon the individual shareholder in relation to his proportionate share of stock as a result of the direct injury being done to the corporation") (citations and internal quotation marks omitted); *Alpha Founders Holding, LLC* v. *Magellan Health, Inc.*, 2018 WL 1247405, at *7 (E.D.N.Y. Mar. 9, 2018) ("[e]quity dilution claims generally are considered derivative claims," noting that a direct claim exists in "limited circumstances involving controlling shareholders" not applicable here) (internal quotation marks omitted).

Fourth, even if a non-controlling minority interest was a property right – which it is not – any dilution of that interest was not proximately caused by OZ Africa's offense, since it would have occurred regardless of the offense. *See United States* v. *Marino*, 654 F.3d 310, 319 (2d Cir. 2011) ("Restitution should not be ordered in respect to a loss which would have occurred regardless of the defendant's conduct.") (citation and internal quotation marks omitted). In 2006, Africo's predecessor (Rubicon) disclosed in public filings that the "viability of the Kalukundi project *and the ability for the company to continue as a going concern*" depended on financing. *See* Rubicon Notice of Annual and Special Meeting of Shareholders and Management

6

Information Circular (July 7, 2006), Lawson Decl. (ECF 38), Ex. 7, at 17 and 21.[4]  Debt financing was not a realistic option.  In SRK's 2008 report on the Kalukundi project *commissioned by the Claimants* in the ordinary course of business – not the 2017 report Claimants asked SRK to prepare to support their restitution claim – SRK said that if debt financing were the only option, the Kalukundi project might not be worth pursuing.  *See* SRK Report, Lawson Decl. (ECF 38), Ex. 14, at 42.  In public filing after public filing from 2006 into 2016, Africo made clear that equity financing would be necessary to maintain the company as a going concern, to develop the Kalukundi property, and to comply with the Swanmines Agreement, without which Swanmines would lose whatever mining rights it had.  *See* Africo Annual Information Forms for the Fiscal Years Ended December 31, 2007 and 2011 through 2015, Lawson Decl. (ECF 38), Exs. 2, 16, 5, 22, 23, and 4, at § 3.11 and § 3.12.  In those filings, sometimes in bold letters over the names of Claimants, Africo told its shareholders that this necessary equity financing would be "**significantly dilutive**."  *Id*. (emphasis in original).  Whether or not there ever was a conspiracy, Claimants' individual ownership interests in Africo would have been diluted, or in its own words Africo would have ceased to be a going concern.  Dilution of the Claimants' individual ownership interests was inevitable, and therefore not proximately caused by the offense.  *See Marino*, 654 F.3d at 319.

Fifth, even if these fatal deficiencies in Claimants' legal position were ignored, any harm to them from the offense is hypothetical and speculative.  *See* OZ Africa Memorandum, dated Mar. 2, 2018 (ECF 37), at 23-25.  Prior to the Camrose Transactions, and in the almost 10 years since, under a number of different owners and managers, the Kalukundi property has never been developed.  This lack of development is attributable to the many risks inherent in trying to

---

[4] *See also* Exhibit 5 to Claimants' June 28, 2018 Letter, noting that Africo would have to raise at least "C$210 million to build the mine."

7

develop a mining property in the DRC, about which Africo frequently warned its shareholders.[5] The factors that prevented the development of the property had nothing to do with OZ Africa or the offense. "'[A] defendant's restitution liability under the MVRA is capped at the actual loss incurred by his victims.'" *Quatrella*, 722 F. App'x at 69 (citation omitted).[6] Moreover, "[a] victim's right to restitution is not absolute: even the MVRA, the very name of which conveys that restitution is mandatory, recognizes that restitution need not be imposed if the court finds that correctly calculating or apportioning restitution would be impractical or would unduly prolong the sentencing process." *Federal Insurance Company* v. *United States*, 882 F.3d 348, 366 (2d Cir. 2018) (citing 18 U.S.C. § 3663A(c)(3)). It is noteworthy that the Second Circuit recently denied review of Judge Weinstein's rejection of the restitution claim in *United States* v. *Dharia*, 284 F. Supp. 3d 262 (E.D.N.Y. Jan. 10, 2018) (Weinstein, J.), stating:

> The district court did not abuse its discretion in determining that "complex issues of fact related to the cause or amount of the victim's losses would complicate or prolong the sentencing process to a degree that the need to provide restitution to any victim is outweighed by the burden on the sentencing process." 18 U.S.C. § 3663A(c)(3)(B).

*In re PRP Brooklyn Eatery, LLC*, 2018 WL 2459564, at * 1 (2d Cir. April 2, 2018).

Recent developments in the DRC make any assertion of loss by Claimants even more hypothetical and speculative. On March 9, 2018, the DRC enacted legislation that substantially reduces the profitability of, and therefore the ability to raise financing for and the valuation of, foreign investment in mining ventures in the DRC. The new legislation raises royalty rates for

---

[5] *See* Africo Annual Information Form (March 16, 2016), Lawson Decl. (ECF 38), Ex. 4, at § 3.12; Africo Annual Information Form (March 20, 2013), Lawson Decl. (ECF 38), Ex. 5, at § 3.12; Africo Annual Information Form (March 24, 2010), Lawson Decl. (ECF 38), Ex. 13, at § 3.12.

[6] *See also United States* v. *Mingo Lamar*, 295 F. Supp. 3d 376, 379 and n.1 (S.D.N.Y. Mar. 29, 2018) ("The Supreme Court has articulated that 'restitution [is] to be tied to the loss caused by the offense of conviction.' . . . An 'offense of conviction' is defined in the U.S. Sentencing Commission Guidelines . . . as 'the offense conduct charged in the count of the indictment or information of which the defendant was convicted.'" (alteration in original) (citations omitted).

all non-ferrous metals 175% (from 2.0% to 3.5%), and royalty rates on "strategic" minerals 500% (to 10.0%), and it is reported that copper and cobalt are likely to be designated strategic. The new law also creates a special additional 50% tax on excess profits. *See* Appendix B hereto (compendium of recent articles on the changes in DRC law). Albert Yuma, Chairman of La Generale des Carrieres et des Mines ("Gecamines"), the DRC state-owned mining enterprise that owns 25% of Swanmines (through which Africo's investment is held), recently stated that Gecamines will restructure all contracts with its international partners, and that "the moans of our partners who fear to displease their shareholder boards do not concern us." Heidi Vella, *Overhauling the DRC's mining code*, MINING TECHNOLOGY (Mar. 28, 2018), https://www.mining-technology.com/features/overhauling-drcs-mining-code/. Mining companies have complained that the new law "will scare off investment" (*see* Aaron Ross, *Miners Insist on Rewrite of Congo Mining Code to Protect Exemptions*, REUTERS (Apr. 5, 2018), https://www.reuters.com/article/us-congo-mining-exclusive/exclusive-miners-insist-on-rewrite-of-congo-mining-code-to-protect-exemptions-idUSKCN1HC28U), making it even more difficult to raise the capital needed to develop the property.[7] The regulations were signed into law on June 9, 2018. *See* Fiston Mahamba, *Congo mining code regulations signed into law: aides*, REUTERS (June 9, 2018), https://www.reuters.com/article/us-congo-mining/congo-mining-code-regulations-signed-into-law-aides-idUSKCN1J50D8. These changes to the DRC mining laws make it even less likely that the mine at issue will ever be developed through foreign investment – for reasons having nothing to do with the offense – and make it even

---

[7] The commission charged with drafting regulations under the new mining code completed its work, and did not alter provisions that strip away a 10 year stability clause provided for in the previous mining code, retained the special additional 50% tax on excess profits, and rejected a mining industry proposal for a sliding scale for royalty rates on key commodities. *Congo mining regulations committee completes work, miners say*, REUTERS (May 14, 2018), https://www.reuters.com/article/congo-mining/congo-mining-regulations-committee-completes-work-miners-say-idUSL5N1SL6W5.

impractical to apportion responsibility for that the lack of development, or to calculate its financial impact on former shareholders.

Neither the Claimants' June 28 letter, nor any of the documents submitted with it, even addresses these numerous fatal deficiencies in their restitution claim. Their entire submission is devoted to trying to tie OZ Africa, through the actions of Akam, to the judicial sale of H&J Swanepoel Family Trust's interest in Swanmines, and reiterating facts concerning the offense that OZ Africa has admitted in the Statement of Facts, and that remain undisputed. But this is a diversion from the legal and factual defects in Claimants' restitution request – namely the lack of direct and proximate harm to the Claimants – for which Claimants have no answer, because there is none.

The Claimants were shareholders of Africo, several corporations removed from ownership of any mining license. The Claimants suffered no direct and proximate harm to any property interest. The Claimants are not "victims" of the offense as a matter of law. *See United States* v. *Stevens*, 2018 WL 3148525, at \*2 (2d Cir. June 26, 2018), quoted in footnote 3 above.

## Conclusion

The Claimants have submitted nothing new that is of any legal relevance to their claim for restitution. There is no need for another hearing. The Court should reject their attempt to delay these proceedings, and their request for restitution, and proceed directly to sentencing under the terms set forth in the Plea Agreement.

Respectfully submitted,

| GIBSON, DUNN & CRUTCHER LLP | CAHILL GORDON & REINDEL LLP |
|---|---|
| By: /s/ Joel M. Cohen | By: /s/ Charles A. Gilman |
| Joel M. Cohen | Charles A. Gilman |
| Lee G. Dunst | Anirudh Bansal |
| Mark K. Schonfeld | Kevin J. Burke |
| Daniel P. Harris | Samantha Lawson |
| 200 Park Avenue | 80 Pine Street |
| New York, New York 10166 | New York, New York 10005 |
| Tel.: (212) 351-4000 | Tel.: (212) 701-3000 |

*Attorneys for OZ Africa Management GP, LLC*

June 29, 2018

11

**Appendix A**

Corporate Separation Between the WSGR Claimants and the Development Permit for the Kalukundi Proprerty as of March 28, 2008 (pre-Camrose Transactions)



[1] Ownership percentages, other than claimants, are derived from the Africo 2007 Annual Information Form (March 28, 2008) (Lawson Decl., Ex. 2).

[2] Africo's 2007 Annual Information Form states: "Dr. Antony Harwood, the President and Chief Executive Officer of Africo, currently holds 52% of the shares of [H&J]. He has agreed that he holds these shares in trust for Kisankala and has undertaken that the shares will be transferred back to Kisankala. The transfer is anticipated to take place in April, 2008. ... Accordingly, as at the date of this AIF, Africo does not own, directly or indirectly, 100% of H&J." Id. at 2, 14. There is no indication that the April 2008 transfer occurred and a valuation conducted November 28, 2008, after the Camrose Transactions, indicates that it had not. SRK Report (Lawson Decl., Ex. 14) ("[Africo] is a private Canadian registered company which holds a 36% interest in [H&J]."

[3] In an April 27, 2007 Press Release, Africo asserted that the transfer of this 75% interest in Swanmines, to satisfy a judgment against Africo, was "null and void because the Swanmines shares in question [were] owned by H&J" which was not a party to the legal proceedings. ARL Press Release (April 27, 2007) (Lawson Decl., Ex. 9).

# Appendix B

1. Heidi Vella, *Overhauling the DRC's mining code*, MINING TECHNOLOGY (Mar. 28, 2018), https://www.mining-technology.com/features/overhauling-drcs-mining-code/.

2. *Congo government to open talks this week about new mining code*, REUTERS (Mar. 20, 2018), https://www.reuters.com/article/us-congo-mining/congo-government-to-open-talks-this-wekk-about-new-mining-code-idUSKBN1GW2ZW.

3. Amrith Ramkumar, *Cobalt Extends Roaring 2017 Run, Fueled by Use in Batteries, Computer Chips*, WALL STREET JOURNAL (Apr. 2, 2018), https://www.wsj.com/articles/cobalt-extends-roaring-2017-run-fueled-by-use-in-batteries-computer-chips-1522693978?mod=searchresults&page=1&pos=1.

4. *Congo rejects mining industry proposal to soften new law*, REUTERS (Mar. 23, 2018), https://www.reuters.com/article/congo-mining/update-2-congo-rejects-mining-industry-proposal-to-soften-new-law-idUSL8N1R54YS.

5. Melanie Gouby, *New mining code to rock DRC*, BUSINESS LIVE (Mar. 15, 2018), https://www.businesslive.co.za/fm/features/africa/2018-03-15-new-mining-code-to-rock-drc/.

6. Henry Sanderson, *Largest miners in Congo quit chamber of commerce amid growing tax dispute*, FINANCIAL TIMES (Mar. 15, 2018), https://www.ft.com/content/aef30094-285c-11e8-b27e-cc62a39d57a0.

7. Aaron Ross, *Miners insist on rewrite of Congo mining code to protect exemptions*, REUTERS (Apr. 5, 2018), https://www.reuters.com/article/us-congo-mining-exclusive/exclusive-miners-insist-on-rewrite-of-congo-mining-code-to-protect-exemptions-idUSKCN1HC28U.

8. *Congo mining regulations committee completes work, miners say*, REUTERS (May 14, 2018), https://www.reuters.com/article/congo-mining/congo-mining-regulations-committee-completes-work-miners-say-idUSL5N1SL6W5.

9. William Clowes, *Miners Warn Congo It Faces $3 Billion Revenue Loss Over Law*, BLOOMBERG (May 30, 2018), https://www.msn.com/en-us/finance/companies/miners-warn-congo-it-faces-243-billion-revenue-loss-over-law/ar-AAxYZD0.

10. Fiston Mahamba, *Congo mining code regulations signed into law: aides*, REUTERS (June 9, 2018), https://www.reuters.com/article/us-congo-mining/congo-mining-code-regulations-signed-into-law-aides-idUSKCN1J50D8.