UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

-against-

OZ AFRICA MANAGEMENT GP, LLC,

Defendant.

Case No.: 1:16-cr-00515-NGG

**CLAIMANTS' OPPOSITION TO MOTION OF OZ AFRICA MANAGEMENT GP, LLC FOR RECONSIDERATION OF THE COURT'S AUGUST 29, 2019 MEMORANDUM & ORDER**

# TABLE OF CONTENTS

INTRODUCTION .................................................................................................................. 1

BACKGROUND .................................................................................................................. 1

    A.    The Defendant Pleads Guilty to Conspiring to Violate the Foreign Corrupt Practices Act .................................................................................................. 1

    B.    The Africo Owners, OZ Africa, and the Government Extensively Brief the Africo Owners' Victim Status under the Mandatory Victims Restitution Act ("MVRA") ............................................................................................ 2

    C.    The Court Finds that the Africo Owners are Victims of OZ Africa's Crime ............... 3

ARGUMENT ........................................................................................................................ 4

    A.    Legal Standard ................................................................................................ 4

    B.    The Court Made No Error Regarding Africo's Status as a "Defunct" Company ......... 5

    C.    The Court's Decision was not Premised on Africo's Status as a "Defunct" Company .................................................................................................... 7

    D.    The Court Previously Considered and Rejected Defendant's Arguments Regarding the Form in Which the Victims Held their Property Interests ..................... 9

    E.    The Defendant's Final Scare Tactic Mischaracterizes the Court's Ruling ................. 12

CONCLUSION .................................................................................................................. 12

# **TABLE OF AUTHORITIES**

## **CASES**

*Allah v. Wien*,
 No. 01-CV-6302 (NGG)(LB),
 2004 U.S. Dist. LEXIS 28532 (E.D.N.Y. Oct. 7, 2004) ............................................................. 4

*Holmes v. Lorch*,
 No. 03 Civ. 4616 (LTS)(THK),
 2004 U.S. Dist. LEXIS 18867 (S.D.N.Y. Sept. 20, 2004) ......................................................... 5

*LoCurto v. United States*,
 No. 10-CV-4589 (NGG),
 2017 U.S. Dist. LEXIS 34737 (E.D.N.Y. Mar. 9, 2017) ............................................................ 9

*Michigan v. Bay Mills Indian Cmty.*,
 572 U.S. 782 (2014) ................................................................................................................ 11

*Mir v. Shah*,
 569 F. App'x 48 (2d Cir. 2014) ................................................................................................. 5

*N.Y. v. Parenteau*,
 382 F. App'x 49 (2d Cir. 2010) ................................................................................................. 5

*Norton v. Town of Islip*,
 No. 04 CV 3079 (NGG) (WDW),
 2007 U.S. Dist. LEXIS 52961 (E.D.N.Y. July 20, 2007) ....................................................... 5, 7

*Osuna v. CitiGroup Inc.*,
 No. 17cv1434 (RJS),
 2019 U.S. Dist. LEXIS 136685 (S.D.N.Y. Aug. 10, 2019) ........................................................ 9

*Pichardo v. Ashcroft*,
 374 F.3d 46 (2d Cir. 2004) ........................................................................................................ 5

*Shrader v. CSX Transp., Inc.*,
 70 F.3d 255 (2d Cir. 1995) .................................................................................................... 5, 7

*United States v. Bartleson*,
 74 F. Supp. 3d 947 (N.D. Iowa 2015) ....................................................................................... 4

*United States v. Bengis*,
 631 F.3d 33 (2d Cir. 2011) .................................................................................................. 3, 10

*United States v. Foreman*,
    No. 96 CR. 1209(HB),
    1997 WL 639025 (S.D.N.Y. Oct. 15, 1997) ................................................................................ 8

*United States v. Gushlak*,
    No. 03-CV-833 (NGG),
    2012 WL 1379627 (E.D.N.Y. Apr. 20, 2012) ........................................................................... 7

*United States v. Gushlak*,
    728 F.3d 184 (2d Cir. 2013) ............................................................................................. 3, 10

*United States v. Kasper*,
    60 F. Supp. 3d 1177 (D.N.M. 2014) ......................................................................... 10, 11, 12

*United States v. Kline*,
    199 F. Supp. 2d 922 (D. Minn. 2002) ..................................................................................... 4

*United States v. Marino*,
    654 F.3d 310 (2d Cir. 2011) .......................................................................................... 4, 6, 10

*United States v. Qurashi*,
    634 F.3d 699 (2d Cir. 2011) .................................................................................................... 4

*United States v. Scott*,
    321 F. App'x 71 (2d Cir. 2009) ............................................................................................... 4

*United States v. Walia*,
    No. 14-CR-213 (MKB),
    2014 WL 3563426 (E.D.N.Y. July 18, 2014) ......................................................................... 8

*Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*,
    956 F.2d 1245 (2d Cir. 1992) .................................................................................................. 5

*Wilson v. City of N.Y.*,
    No. 06-CV-0229 (ARR)(VVP),
    2010 WL 3585906 (E.D.N.Y. Sept. 7, 2010) .......................................................................... 8

## STATUTES

1 U.S.C. § 1 ............................................................................................................................. 11

15 U.S.C. § 78dd-l .................................................................................................................. 1

15 U.S.C. § 78dd-2 ................................................................................................................. 1

18 U.S.C. § 371 ....................................................................................................................... 1

18 U.S.C. § 3663A ................................................................................................................ 12

# INTRODUCTION

Disappointed with the Court's recognition that the Africo Owners are indeed victims of the Defendant's crimes under the MVRA, OZ Africa has filed a motion for reconsideration that is baseless both on the law and the facts. Specifically, the Defendant raises arguments previously presented to and rejected by the Court, relying on the same cases and facts that were fully available during the lengthy period over which the parties extensively briefed the injuries OZ Africa and its co-conspirators inflicted on the Africo Owners. This alone bars a motion for reconsideration as a matter of law. Yet even if the Court considers OZ Africa's repackaged arguments on the merits – and the Court should not – OZ Africa has completely failed to demonstrate that the Court's analysis and conclusions on these issues is even remotely erroneous. Accordingly, the Court should deny the Defendant's motion and leave undisturbed its ruling that the Africo Owners are victims of OZ Africa's crimes.

# BACKGROUND

### A.  The Defendant Pleads Guilty to Conspiring to Violate the Foreign Corrupt Practices Act

On September 29, 2016, OZ Africa, a wholly-owned shell subsidiary of Och-Ziff Capital Management Group LLC ("Och-Ziff"), a publicly-listed, New York-based hedge fund, pled guilty to conspiring to violate the Foreign Corrupt Practices Act ("FCPA") in violation of 18 U.S.C. § 371 and 15 U.S.C. §§ 78dd-l and 78dd-2. *See* ECF No. 11. The Defendant and Och-Ziff, in a stipulated recitation of facts (the "Statement of Facts"), admitted that from 2005 to 2015, OZ Africa, Och-Ziff and their "DRC Partner" – Israeli businessman Dan Gertler – together with others, paid bribes to government officials to obtain illicit access to deeply discounted prices for, and controlling interests in, various lucrative investment opportunities. Statement of Facts at ¶ 16, ECF No. 11 at Ex. 3. One of the "attractive investment opportunities" that Defendant admittedly paid for "special access" to was

1

the mining rights to the Kalukundi property in the Democratic Republic of the Congo (the "Kalukundi mine" and "DRC," respectively), owned by Africo Resources Limited ("Africo"). *Id*. at ¶¶ 16-43. Specifically, the Defendant admitted that, together with its coconspirators, it paid millions of dollars in bribes to DRC judges to corruptly "orchestrate[] the taking of Africo's interest in the [Kalukundi] Mine," *id.* at ¶ 24, and to retain those mining interests in the face of legal challenges mounted by Africo, *id*. at ¶¶ 31-36, all in furtherance of its scheme to illegally obtain and retain mining interests in the DRC. *Id.* at ¶ 16.

Pursuant to OZ Africa's Plea Agreement, the government agreed to recommend that no fine be imposed on the Defendant. *See* ECF No. 11 at ¶ 20(a). The parties also agreed that any financial penalty the Court did impose against OZ Africa would be paid from the approximately $213 million payment Och-Ziff made pursuant to its own Deferred Prosecution Agreement. *Id*.

Over the ensuing 17 months, OZ Africa filed four requests to delay sentencing, primarily so that it could obtain a waiver from the Department of Labor. *See* ECF Nos. 17, 21, 23, 24.

**B.      The Africo Owners, OZ Africa, and the Government Extensively Brief the Africo Owners' Victim Status under the Mandatory Victims Restitution Act ("MVRA")**

On February 20, 2018, the Africo Owners filed a motion requesting confirmation of victim status and an award of restitution under the MVRA. ECF No. 26. On March 2, 2018, the Defendant responded, opposing the Africo Owners' claim. ECF No. 37. That same day, the government filed its initial response. ECF No. 39. Three days later, OZ Africa filed a "supplemental declaration" in support of its argument that the Africo Owners could not recover under the MVRA because Africo was an "active" corporation, attaching a Federal Corporation Information Statement for Africo as well as an organizational chart. ECF No. 41. On March 6, 2018, the Africo Owners filed their reply. ECF No. 43. On April 5, 2018, the Court heard oral argument, during which the parties expanded on

their arguments. ECF No. 50. On June 28, 2018, the Africo Owners provided additional evidence in support of their restitution claim. ECF No. 46. The Defendant filed a supplemental submission on June 29, 2018, ECF No. 47, and the government filed a supplemental memorandum on July 13, 2018, ECF No. 48. The Africo Owners filed a final supplemental submission on July 19, 2018. ECF No. 49.

**C.     The Court Finds that the Africo Owners are Victims of OZ Africa's Crime**

On August 29, 2019, the Court issued its Memorandum and Order finding that the Africo Owners were "victims of Defendant's crime under the MVRA[.]" ECF No. 51 at 1. In so holding, the Court found that the conspiracy to which OZ Africa had pleaded guilty was the direct and proximate cause of the loss of the Africo Owners' Kalukundi mining rights, *id*. at 17-18, and asked for further briefing on, *inter alia*, the value of those mining rights. *Id*. at 20. In its decision, the Court analyzed and rejected OZ Africa's arguments with respect to the Africo Owners' status as victims under the MVRA. *Id*. at 8-18. Relevant to the Defendant's current motion for reconsideration, the Court found as follows:

First, the Africo Owners suffered a loss to "property" cognizable under the MVRA. *Id*. at 12. The Court rejected the Defendant's argument that the Africo Owners had not suffered an injury to property because they held ownership interests in a company that held its mining rights indirectly through special-purpose subsidiaries. *Id*. at 11. The Court recognized that "the MVRA defines 'victim' broadly; it contains no carve-out for holders of intangible property rights, such as shareholders who hold interests through special-purpose vehicles for tax purposes[.]" *Id*. at 12 (citing *United States v. Gushlak*, 728 F.3d 184, 187 (2d Cir. 2013) and *United States v. Bengis*, 631 F.3d 33, 39-40 & n.3 (2d Cir. 2011)).

Second, individual shareholders of Africo can be victims under the MVRA. *Id*. The Court specifically dismissed the Defendant's argument that the entity of Africo itself was the only proper victim of OZ Africa's crime. *Id*. (citing *United States v. Marino*, 654 F.3d 310, 321 (2d Cir. 2011) (finding individual shareholders were victims under the MVRA even where they lacked a private right of action)). In explaining its ruling, the Court used an analogy to demonstrate the absurdity of OZ Africa's argument, which would, taken to its logical conclusion, mean criminals whose crime "does <u>some</u> harm to a company would have to pay restitution [to the company], while a defendant whose crime does <u>overwhelming</u> harm to a company [that causes its collapse] would not have to pay restitution at all[.]" *Id*. (emphasis in original).

<u>Third</u>, OZ Africa mischaracterized the Africo Owners' injury as mere equity dilution. *Id*. at 13. The Court categorically rejected the Defendant's argument that the only losses suffered by the Africo Owners were the dilution of their shares or damage to the price of those shares. *Id.* at 11-13. Instead, the Court found that the Africo Owners lost their Kalukundi mining rights and the opportunity to exploit those rights. *Id*. at 13 (citing *United States v. Scott*, 321 F. App'x 71, 72 (2d Cir. 2009) (summary order); *United States v. Bartleson*, 74 F. Supp. 3d 947, 984-87 (N.D. Iowa 2015); *United States v. Kline*, 199 F. Supp. 2d 922, 924-27 (D. Minn. 2002); *United States v. Qurashi*, 634 F.3d 699, 703 (2d Cir. 2011)); *see also id*. at 17.

Unwilling to accept the Court's determinations, the Defendant has now filed a motion for reconsideration. As discussed below, that motion should be denied.

## ARGUMENT

### A. Legal Standard

"Reconsideration is an extraordinary remedy to be used sparingly in the interests of finality and the conservation of scarce judicial resources." *Allah v. Wien*, No. 01-CV-6302 (NGG)(LB), 2004

U.S. Dist. LEXIS 28532, at *6 (E.D.N.Y. Oct. 7, 2004) (quoting *Holmes v. Lorch*, No. 03 Civ. 4616 (LTS)(THK), 2004 U.S. Dist. LEXIS 18867, at *3 (S.D.N.Y. Sept. 20, 2004)). "Reconsideration should not be granted where 'the moving party seeks solely to relitigate an issue already decided'". *Mir v. Shah*, 569 F. App'x 48, 50 (2d Cir. 2014) (quoting *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)). "Motions for reconsideration . . . are 'generally not favored,' and are 'properly granted only upon a showing of exceptional circumstances.'" *Norton v. Town of Islip*, No. 04 CV 3079 (NGG) (WDW), 2007 U.S. Dist. LEXIS 52961, at *7 (E.D.N.Y. July 20, 2007) (quoting *Pichardo v. Ashcroft*, 374 F.3d 46, 55 (2d Cir. 2004)).

To prevail on a motion for reconsideration the movant must demonstrate "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (citations omitted). "Reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked-matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *N.Y. v. Parenteau*, 382 F. App'x 49, 50 (2d Cir. 2010) (quoting *Shrader*, 70 F.3d at 257).

As discussed below, OZ Africa has unquestionably failed to satisfy this stringent standard. Rather than pointing to a "mistake of fact which, once corrected, could alter the Court's conclusion," ECF No. 55 at 1, the Defendant instead purposely mischaracterizes the Court's Order, the Victims' arguments, and the relevant case law in an attempt to repackage its prior, unsuccessful arguments regarding the nature of the Victims' property.

**B.     The Court Made No Error Regarding Africo's Status as a "Defunct" Company**

The Defendant argues that the Victims made misstatements to the Court by describing Africo as "defunct." This argument is meritless. First, the use of the word "defunct" to describe Africo

following the conspirators' corrupt takeover was accurate. Second, Defendant mischaracterizes the Victims' arguments regarding the relevance of Africo's corporate status. Finally, the continued existence of Africo was fully before the Court during the entire pendency of the briefing and argument on this matter.

*First*, both the government and the Victims used the word "defunct" to communicate to the Court that, at the time Victims filed their claim in 2018, Africo was no longer an operational mining company. *See, e.g.*, ECF No. 26 at 4-5 ("In the end, rather than developing the mine, the conspirators consolidated the Kalukundi mine with other mining assets and transferred those assets among various corrupt entities for the benefit of the conspirators and to the further detriment of the Africo Owners.") (citing Statement of Facts at ¶¶ 37-58). The use of "defunct" accurately describes Africo's lack of operations (or development of the Kalukundi mining interests) and is consistent with the dictionary definition of the word. *See, e.g.*, *Defunct*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("Not existing or useful anymore; extinct; dissolved; terminated."); *Defunct*, OXFORD ENGLISH DICTIONARY ("No longer existing or functioning.") (https://www.lexico.com/en/definition/defunct); *Defunct*, MERRIAM-WEBSTER DICTIONARY ("[N]o longer living, existing, or functioning.") (https://www.merriam-webster.com/dictionary/defunct).

*Second*, the Victims' arguments regarding restitution did not rely on Africo's lack of corporate existence or operations; rather, the Victims' briefs made clear that individual shareholders' ability to recover under the MVRA or VWPA is well established, regardless of the operational status of the company in which they held (or hold) ownership interests. *See* ECF No. 26 at 23 ("[T]he case law interpreting the MVRA and VWPA makes clear that there is nothing that prevents a shareholder of a company – defunct or otherwise – from receiving a restitution award[.]") (citing *Marino*, 654

6

F.3d at 321 and *United States v. Gushlak*, No. 03-CV-833 (NGG), 2012 WL 1379627 (E.D.N.Y. Apr. 20, 2012)).

*Finally*, to the extent that the Defendant believed the Victims were using the word "defunct" in a manner potentially confusing to the Court, it raised that issue with the Court as early as March 2018: "WSGR represents that Africo is 'defunct.' That is not true. Africo is wholly owned by ERG." ECF No. 37 at 16 (citation omitted). The Defendant also previously filed a prior version of the same Federal Corporation Information Statement to which it now points the Court. *Compare* ECF No. 41 at Exh. 24 (filed March 5, 2018) *with* ECF No. 55 at Exh. A (filed September 6, 2019).

There was simply no confusion amongst the parties (or the Court) regarding whether Africo still existed as a non-operational corporate entity. The dispute between the parties was, instead, the *relevance* of that fact. As discussed further below, the Court, relying on established precedent, considered and rejected the Defendant's argument that the Victims' injuries were merely derivative of Africo's because the Africo Owners may lack standing to bring a civil claim against OZ Africa. ECF No. 51 at 11-12. This is precisely the type of re-argument prohibited in a motion for reconsideration. *See Norton*, 2007 U.S. Dist. LEXIS 52961, at *10 (denying motion for reconsideration where the Court found "Plaintiff's arguments on this point to be repetitive").

    **C.**    **The Court's Decision was not Premised on Africo's Status as a "Defunct" Company**

Even accepting *arguendo* that the Court misunderstood whether Africo continued to exist as a corporate entity, a change in this fact is not one that could alter the Court's conclusion. *See Shrader*, 70 F.3d at 257. The Defendant ignores the totality of the Court's Order and focuses on only a single analogy, which the Court used to demonstrate the absurdity of OZ Africa's argument that only a company and never its shareholders could recover under the MVRA. *See* ECF No. 51 at 12. The Victims did not argue, nor did the Court rely on the existence (or lack thereof) of the Africo corporate

entity to support the conclusion that the Africo Owners were victims of the Defendant's crime under the MVRA.  *See, e.g.*, ECF No. 26 at 24; ECF No. 51 at 11.

Instead, the Court correctly understood the nature of the Africo Owners' property interests, with each individual holding a non-controlling stake in a company which indirectly owned the Kalukundi mining rights.  ECF No. 51 at 10.  Based on that understanding, the Court found that: (1) the MVRA "contains no carve-out for holders of intangible property rights, such as shareholders who hold interests through special-purpose vehicles for tax purposes," *id*. at 12; (2) "individuals can be victims under the MVRA even where they lack a private right of action against a defendant," *id*.; (3) the Defendant is liable "for the initial theft of Claimants' Kalukundi mining rights, as Defendant knew or should have known about it," *id*. at 17; and (4) Defendant's bribery influenced "Claimants' decision to accept the Camrose Takeover," which is "sufficient to support an award of restitution under the MVRA."  *Id*. at 18.

Given the irrelevance of the purported factual error on which OZ Africa pins its hopes for reconsideration, the Defendant points to cases which it argues stand for the proposition that correction of a fact (any fact) is an appropriate basis on which to grant a motion for reconsideration.  ECF No. 55 at 2 n.1.  These cases are inapposite and fail to support the proposition for which they are cited.[1]

---

[1] *Wilson v. City of N.Y.*, 2010 WL 3585906, at *6, which the Defendant cites as "granting in part and denying in part defendants' motion for reconsideration based on previously uncredited facts," is a case based on existence of disputed facts for the basis of a summary judgment decision.  It contains no refence to "previously uncredited facts" on the cited page or otherwise.  *United States v. Walia*, 2014 WL 3563426, at *4, which the Defendant cites as "noting that the court granted defendant's motion for reconsideration after defendant introduced potential issues of fact," is in fact a case where the court granted a motion for reconsideration after the defendant filed a sworn affidavit creating a factual dispute following the court's denial of the defendant's initial request for a hearing on his motion to suppress.  In *United States v. Foreman*, 1997 WL 639025, at *1, which the Defendant cites as "granting defendant's motion for reconsideration after defendant raised facts not considered in his original motion," the court reconsidered its decision to allow the defendant to withdraw his guilty plea under Rule 32(g) following a letter from the defendant alleging that his lawyer had not adequately explained the nature of the charges against him and a hearing on the same.  None of these cases are analogous to the situation here.

Instead, courts in this circuit have consistently recognized that correction of insignificant facts do not support a motion for reconsideration. *See, e.g.*, *Osuna v. CitiGroup Inc.*, No. 17cv1434 (RJS), 2019 U.S. Dist. LEXIS 136685, at *6 (S.D.N.Y. Aug. 10, 2019) ("[T]he Court's factual error, if any, was immaterial, and cannot support Plaintiffs' request for reconsideration."); *LoCurto v. United States*, No. 10-CV-4589 (NGG), 2017 U.S. Dist. LEXIS 34737, at *3 (E.D.N.Y. Mar. 9, 2017) ("A request for reconsideration under Local Rule 6.3 must point to controlling law or factual matters put before the court in that the movant believes the court overlooked, and that might *reasonably be expected to alter the conclusion* reached by the court.") (emphasis added). As the existence of the Africo corporate form was irrelevant to the Courts ruling, its purported correction does not rise to the level necessary to support the Defendant's motion.

### D. The Court Previously Considered and Rejected Defendant's Arguments Regarding the Form in Which the Victims Held their Property Interests

The Defendant's motion for reconsideration is, rather than an effort to correct a "factual error," a thinly-veiled attempt to reargue its already rejected position that the Africo Owners cannot be victims because they were shareholders. This argument was made repeatedly by the Defendant since briefing on this issue began in February 2018, and the Court rightly rejected it in light of well-established Second Circuit case law. *See* ECF No. 51 at 11-12. The Defendant's "newly discovered" case law is neither controlling nor does it stand for the proposition for which OZ Africa cites it.

In rejecting the Defendant's argument that the Victims' ownership interests failed to satisfy the standard set forth in the MVRA, the Court relied on established precedent in the Second Circuit, which makes clear that recovery under the MVRA is not limited to individuals with standing to bring a parallel civil claim. Specifically, the Court rejected the Defendant's argument that, as the Africo Owners lacked standing to sue for wrongful equity dilution and no individual shareholder controlled

9

Africo, their property rights were not covered by the MVRA. The Court relied on *United States v. Marino*, where the defendant, having pled guilty to misprision of a felony, was ordered to pay restitution to hedge fund investors who suffered losses as a result of the Ponzi scheme the defendant failed to report. 654 F.3d 310 (2d Cir. 2011). The Court also pointed to *United States v. Gushlak*, where a defendant was ordered to pay restitution to shareholders who had bought and sold stock during the period of the defendant's illegal activity. 728 F.3d 184 (2d Cir. 2013). The Court held that the Defendant's reliance on the form in which the Victims held their property (as shareholders in a single-asset company, which held the mining rights through subsidiaries for tax purposes) was misplaced because the MVRA also recognizes injuries caused to the holders of intangible property rights. *See* ECF No. 51 at 12 (citing *Bengis*, 631 F.3d 39-40 & n.3).

The single restitution case that the Defendant now belatedly provides the Court in its motion for reconsideration is not controlling precedent and does not even stand for the proposition for which OZ Africa cites it. The Defendant points the Court to *United States v. Kasper*, 60 F. Supp. 3d 1177 (D.N.M. 2014), in support of its claim that it is "well-established law that an attenuated, indirect injury such as that alleged by the claimants is not cognizable under the MVRA." ECF No. 55 at 4. OZ Africa provided the Court with the following description of the case: "denying victim status to sole shareholder of allegedly injured corporation because '[a] shareholder, even a sole shareholder, is not a corporation.'" *Id*.

Putting aside that the Defendant can only cite to a non-controlling District of New Mexico case for a proposition it holds out to the Court as "well-established," the Defendant then deliberately and shamelessly mischaracterizes the case. The claimant in *Kasper* was a federally-recognized tribal government that sought participation rights under the Crime Victims' Rights Act ("CVRA"). The underlying case involved the allegedly criminal conduct of employees at a business in which the

federally-recognized tribal government was the sole shareholder. *Kasper*, 60 F. Supp. 3d at 1177. The claimant argued that its company had been forced out of business as a result of the criminal conduct and was in the process of dissolving. *Id*. The issue was whether, under the CVRA (not the MVRA), a federally-recognized tribal government fell under the definition of "person." *Id*. at 1178. The New Mexico district court found that the definition of "person" in the Dictionary Act controlled, and that definition did not cover a domestic dependent nation that exercised inherent sovereign immunity. *Id*. (citing 1 U.S.C. § 1 and *Michigan v. Bay Mills Indian Cmty.*, 572 U.S. 782 (2014)). The court's statement, quoted by OZ Africa, was related to its rejection of the tribal government's argument that it could participate pursuant to the CVRA as a representative of the company (corporations being included in the CVRA's definition of "person") even if it could not as a tribal government. *Id*. at 1179.

Even a cursory review of this case makes clear that OZ Africa has sought to mislead Your Honor with its citation to *Kasper*. The claim in that case was made under the CVRA not the MVRA. The question presented to that court was whether a federally-recognized tribal government was a "person" under the CVRA, not whether a shareholder can satisfy the property and causation standards to recover under the MVRA. The claimant in that case was denied victim status under the CVRA, not because it was a shareholder, but because it was not a "person." And while it is disturbing that OZ Africa failed to advise this Court that the decision in *Kasper* did not turn on the MVRA, what is truly alarming is that OZ Africa and its counsel failed to alert Your Honor that the Judge in that case specifically noted that the result would have been different under the MVRA or the Victim and Witness Protection Act ("VWPA"), because the goal of those statutes was to expand the availability of restitution, including to individuals and government entities. *Id*.

11

The Defendant's citation of *Kasper* therefore provides no support at all for its continued insistence that shareholder injuries are not covered by the MVRA; its mischaracterization of that decision does, however, illuminate the lengths the Defendant is prepared to go to avoid accountability to the victims of its outrageous conduct.

E.     **The Defendant's Final Scare Tactic Mischaracterizes the Court's Ruling**

In a final attempt to seemingly frighten the Court into ruling in its favor, the Defendant argues that "if the Court concluded that shareholders are victims merely because they own shares in a victim corporation (which is a going concern), then all shareholders would be entitled" to claim rights including being heard at proceedings, conferring with the government, and receiving full and timely restitution, which is "clearly not what the MVRA contemplates." ECF No. 55 at 4. Putting aside that the statute and rights the Defendant lists here are from the CVRA not the MVRA,[2] the Defendant's apocalyptic prediction ignores the Court's most fundamental finding. The Africo Owners were not conferred the rights of victims "merely because they own shares in a victim corporation," but because the Court has found that the Defendant's egregious crime directly and proximately harmed the Africo Owners. ECF No. 51 at 17-18. The Defendant's payment of full and timely restitution to the Africo Owners is thus precisely what the MVRA contemplates. 18 U.S.C. § 3663A.

## CONCLUSION

For the foregoing reasons, the Africo Owners respectfully request that the Court deny the Defendant's motion and leave undisturbed its ruling that the Africo Owners are victims of OZ Africa's crimes.

---

[2] There are of course differences between the victims covered by the CVRA and MVRA, as discussed in *Kasper*. 60 F. Supp. 3d at 1179.

Dated:  September 20, 2019	Respectfully submitted,

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

*s/ Michael S. Sommer*
Michael S. Sommer
Morris J. Fodeman
Kate T. McCarthy
1301 Avenue of the Americas, 40th Floor
New York, New York 10019
Telephone:  (212) 999-5800
Facsimile:  (212) 999-5899
Email:  msommer@wsgr.com
Email:  mfodeman@wsgr.com
Email:  kmccarthy@wsgr.com

*Counsel for Claimants*