**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) ECF Case |
| | ) |
| - against - | ) Case No.: 1:16-cr-00515-NGG-LB |
| | ) |
| OZ AFRICA MANAGEMENT GP, LLC, | ) |
| | ) |
| | ) |
| Defendant. | ) |
| | ) |

## OPENING SUBMISSION REGARDING THE CALCULATION OF THE APPROPRIATE RESTITUTION AMOUNT FOR THE CLAIMANTS

**<u>INTRODUCTION</u>**

On August 29, 2019, the Court issued its Memorandum and Order finding that the Africo Owners were "victims of Defendant's crime under the MVRA[.]" Dkt. No. 51 at 1 ("Order"). In so holding, the Court found that the conspiracy to which OZ Africa had pleaded guilty was the direct and proximate cause of the loss of the Africo Owners' Kalukundi mining rights. *Id*. at 17-18. Specifically, the Court held that the Defendant was liable for "the initial theft of Claimants' Kalukundi mining rights," *id.* at 17, and the retention of those rights through the illegal Camrose takeover. *Id*. at 18.

In order to determine the proper restitution amount owed to the Defendant's victims, the Court then asked for further briefing on: "(1) the value of the mining rights themselves (as opposed to the value of a working mine on the site), as of either 2006-2008 or the present day; (2) whether the court should either apportion liability among the coconspirators or make Defendant jointly and severally liable for all of Claimants' losses under 18 U.S.C. § 3664(h); and (3) whether 'determining complex issue of fact related to the cause or amount of the victim's losses would complicate or prolong the sentencing process to a degree that the need to provide restitution to any victim is outweighed by the burden on the sentencing process[.]" *Id*. at 20 (footnotes and citation omitted). This submission addresses each of the issues raised by the Court.

## I. The Value of the Mining Rights

Pursuant to the Court's Order, we have provided an addendum to our original expert report updating the prior valuations based on changes in the relevant market since November 2017 (when our original expert report was submitted), including changes in the price of cobalt and copper, and changes to the DRC tax structure. According to Claimants' expert, Dr. Neal Rigby, the value of the Claimants' 75% stake in the undeveloped mining rights as of November 2019 for an undeveloped

mine is approximately $290.4 million, and for a developed mine $1.386 billion. At the DOJ's request, the report also provides alternative valuations based on the same discounted cash flow methodology, but with different price inputs (referred to as "spot" and "consensus") and alternative discount rate inputs (*see* footnote 8 to the addendum). The updated analysis is attached. *See* November 2019 SRK Addendum at Appendices F, L, and T.

## II.     The MVRA Requires a Restitution Award for the Entire Amount of the Victim's Harm

There is no legal basis for the Court to issue a restitution award against OZ Africa for anything less than the entire amount of the harm suffered by the Victims. The Court has held already that "in calculating Claimants' restitution", it will "consider Defendant liable for the initial theft of Claimants' Kalukundi mining rights, as Defendant knew or should have known about it." Order at 17. The Court has also already rejected "the notion that there were effectively two separate conspiracies—one to steal the Kalukundi mining rights and a second, joined by Defendant, to help Gertler retain those mining rights." *Id*. at 15. As the Court held, "Defendant pleaded guilty to a single conspiracy to bribe DRC officials, spanning from 2005 to 2015, and nothing in the plea agreement supports the notion that there were, in fact, two separate conspiracies." *Id*. Thus, the Court has held already that the Defendant is liable for losses caused by the entire conspiracy.

Under 18 U.S.C. 3664(h), where the Court has found that more than one defendant has contributed to a victim's loss, the Court has the discretion to make each defendant jointly and severally liable for the entire loss or can apportion the liability amongst the defendants based on contribution or economic circumstances. Here, of course, there is only a single defendant that has been charged by the Government, and only a single defendant who will be sentenced by the Court for this conspiracy. Section 3664(h) is thus inapplicable. Under the MVRA, the Court must

therefore enter an order for restitution for the entire amount of the victims' losses. *See United States v. Walker*, 353 F.3d 130, 131 (2d Cir. 2003) ("Under the MVRA, the court no longer has discretion to deny an award of restitution or to award restitution for anything less than the full amount of the victim's losses."); *United States v. Channita*, 9 F. App'x 274, 274-75 (4th Cir. 2001) (although the defendant argued that the court "should have apportioned the amount of restitution between him and the other participants in the crime, none of whom were defendants", the court found that because Channita was the only defendant, "the district court was 'required' to order Channita 'to make restitution to the victim of a covered offense in the full amount of each victim's loss.'") (citation omitted). *See also United States v. McGlown*, 380 F. App'x 487, 491 (6th Cir. 2010) (affirming Order holding defendant responsible for "entire restitution amount" even though additional persons were involved in the criminal scheme as the defendant was the only person charged in the indictment).[1]

---

[1] Even if other defendants were to be sentenced for this conspiracy – and there are none – the Court still has the discretion to make OZ Africa liable for the entire amount on a joint and several basis. *See, e.g.*, *United States v. Fiumano*, 721 F. App'x 45, 51-53 (2d Cir. 2018), *cert. denied*, 139 S. Ct. 651 (2018); *United States v. Nucci*, 364 F.3d 419, 422 (2d Cir. 2004); *United States v. Lucien*, 347 F.3d 45, 53-54 (2d Cir. 2003). *See also United States v. Smith*, 513 F. App'x 43, 46 (2d Cir. 2013) (holding defendant that pleaded guilty to one count of conspiracy to commit access device fraud jointly and severally liable with the other defendants); *United States v. Dalicandro*, 711 F. App'x 38, 43 (2d Cir. 2017) (holding both defendants "jointly and severally liable" when each defendant was "integral to the fraud"). *See also United States v. Desnoyers*, 590 F. App'x 54, 57-58 (2d Cir. 2014) (reversing the district court when it granted proportional restitution because the district court did not make the victim whole—"it was an abuse of discretion for the district court to then impose only a prorated share of the Count 1 restitution on [the defendant]. By doing so, the district court elevated [the defendant's] interests over those of his victims, requiring the victims, rather than [the defendant], to bear the cost of his co-conspirator's failure to bear his share"). "A sentencing court is not required to consider an individual's role in the offense when awarding restitution." *United States v. Salas-Fernandez*, 620 F.3d 45, 48-49 (1st Cir. 2010). Although a court may consider relative culpability, it is not obligated to do so. *See id.* at 49 ("[T]he court is not required to use any particular formula for apportionment or, indeed, to apportion the loss at all."). *See also United States v. Tzakis*, 736 F.2d 867, 871 (2d Cir. 1984) (because defendant "was convicted . . . for a conspiracy encompassing the entire fraudulent scheme," he could "be required to make restitution for damage caused to all of the scheme's victims" even if his role in scheme was "'comparatively minimal'"); *United States v. Baig*, 669 F. App'x 587, 589 (2d Cir. 2016) (affirming order that defendant be "jointly and severally liable" for the full restitution amount even when the defendant argued that his restitution should be apportioned "to reflect his *de minimis* role in the conspiracy").

Accordingly, there is no reason, either in law or equity, for the Court to apportion liability at all. The Defendant is liable for all of Claimants' losses under 18 U.S.C. § 3664(h).

## III. There is no Complexity Sufficient to Outweigh the Need to Provide Restitution

The only exceptions to the MVRA's requirement that restitution be calculated and awarded to the victims of a qualifying offense are contained in Subsection (c)(3) where "the court finds, from facts on the record, that — (A) the number of identifiable victims is so large as to make restitution impracticable; or (B) determining complex issues of fact related to the cause or amount of the victim's losses would complicate or prolong the sentencing process to a degree that the need to provide restitution to any victim is outweighed by the burden on the sentencing process." 18 U.S.C. § 3663A(c)(3). There are no issues of fact here that would complicate or prolong the sentencing process to a degree that the need to provide restitution is outweighed by the burden on the sentencing process.

### A. The Number of Identifiable Victims

No party in this case has ever suggested that the number of identifiable victims makes restitution "impracticable" — nor could they. Courts in this circuit have consistently held that even where there are thousands of identifiable victims, that is not "so large as to make restitution impracticable[.]" *See United States v. Ageloff*, 809 F. Supp. 2d 89, 99 (E.D.N.Y. 2011) *aff'd sub nom. United States v. Catoggio*, 698 F.3d 64 (2d Cir. 2012) (ordering restitution for thousands of victims) (quoting 18 U.S.C. § 3663A(c)(3)); *United States v. Brennan*, 526 F. Supp. 2d 378, 385 (E.D.N.Y. 2007) ("[T]he court does not find that the number of victims is so large as to make restitution impracticable" even though the defendant defrauded thousands of advertisers); *Fiumano*, 721 F. App'x at 52 (ordering restitution for thousands of victims and finding defendant liable for losses occurring before he joined the charged conspiracy). Here, the class of victims has been

identified as those individuals or entities that held ownership interests in Africo in spring 2008 (the time of the corrupt takeover). To the best of our knowledge, that class is no larger than several hundred shareholders, of which those representing approximately 65% of the equity ownership have already been identified.[2] That is clearly not "so large as to make restitution impracticable[.]"

## B.      The Cause of the Victims' Losses

The Court has already determined that the conspiracy to which the Defendant has pled guilty was the direct and proximate cause of the Victims' losses. Order at 17 ("[I]n calculating Claimants' restitution, the court will consider Defendant liable for the initial theft of Claimants' Kalukundi mining rights, as Defendant knew or should have known about it" and for "coercing [the Africo shareholders] into accepting the Camrose takeover"). As described above, having found that the Defendant's crime is the cause of the Victims' losses, there is no legal basis to consider the apportionment of liability amongst other (non-existent) defendants.[3]

## C.      The Amount of Restitution

Finally, there is no sufficiently complex issue of fact in the determination of the restitution amount. The Court has determined that "[t]he property in question here is the misappropriated Kalukundi mining rights[.]" Order at 20 n.12. The Victims submitted a comprehensive expert report setting forth the value of the Kalukundi mining rights, both at the time of loss and at the time

---

[2] Courts have also regularly allowed the government to hold funds in trust for identified but not yet located victims. *See Ageloff*, 809 F. Supp. 2d at 104 ("I also accept and incorporate as part of this order the government's representation that it shall hold the collected restitution funds in trust, to exist for no longer than twenty years, at which time the restitution judgment will expire by operation of New York law and any undistributed funds shall be returned to Ageloff."); *see also United States v. Berardini*, 112 F.3d 606, 607 (2d Cir. 1997) (affirming district court's decision to order defendant to make restitution payment to government as trustee for the identified but not yet located victims).

[3] Our expert's report takes into account the country conditions in the DRC for both the undeveloped and developed valuations of the Kalukundi mining rights and includes an analysis of other mining transactions in the DRC. *See, e.g.*, November 2019 SRK Addendum at 6.

of sentencing, based on the industry accepted methodology.  In connection with the Court's request for this supplemental submission, we have provided an updated report to reflect changes to the price of cobalt and copper, and changes in the DRC tax structure.  While the valuation of mining properties is outside the experience of most individuals, it is a process undertaken on a daily basis throughout the world using methodologies accepted by those in the industry.  Indeed, Och Ziff itself undertook the same sort of valuation process when it was calculating the value of (and potential return on investment for) the stolen Kalukundi mining rights in 2008. November 2017 Report at Appendix R.  The Defendant, having managed to value the Kalukundi mining rights during the process of stealing them, should not now be allowed to claim that the determination of their value is impossible or that the very process it used is somehow deficient.

Additionally, courts have consistently granted restitution in situations much more complicated and intricate than this and in situations involving much longer delays.  *See United States v. Termini*, Nos. 3:10-cr-5 (SRU), 3:09-cr-245 (SRU), 2016 U.S. Dist. LEXIS 5082, at *2-3 (D. Conn. Jan. 15, 2016) (because restitution was "potentially complex", it was not immediately ordered; although restitution hearings were held in 2010 and 2011, no order was announced until 2016), *aff'd sub nom. United States v. Dalicandro*, 711 F. App'x 38 (2d Cir. 2017); *United States v. Wagner*, 280 F. Supp. 3d 811, 813 (E.D. Va. 2017) ("Since Defendant and her law firm were involved in as many as 2,462 transactions, determining the amount of restitution owed in this case is and was quite complex.").[4]

---

[4] Courts also have had no issue awarding restitution in cases where values needed to be determined for intangible property (*see United States v. Ebrahim*, No. 12 Cr. 471 (JPO), 2013 U.S. Dist. LEXIS 72072, at *6 (S.D.N.Y. May 21, 2013)), and items with sentimental value, from belongings (*United States v. Kaplan*, 839 F.3d 795, 802 (9th Cir. 2016)) to a church (*United States v. Shugart*, 176 F.3d 1373, 1375 (11th Cir. 1999)).

Courts in this circuit have held the same. As stated by the court in *Ageloff*, 809 F. Supp. 2d at 97, which, after years ordered $190,339,436.65 in restitution after being presented with a 1,718-page report that identified more than 9,000 victims by name:

> I read most of [the defendant's] objections to the Restitution Report as an effort to refuel that position by manufacturing complexity in the hope that I might, at this late date, wave the white flag and decide that the matter of restitution is too complex or too much of a burden on the system after all. It is neither. Indeed, it would be an unconscionable injustice to grant such a windfall to the architect, engineer and enforcer of a massive fraud that injured so many thousands of investors and netted him many millions of dollars, and who has already resorted to additional criminal conduct . . . to avoid the financial consequences of his crime.

*Id.* at 99. *See also United States v. Gushlak*, 728 F.3d 184, 192-93 (2d Cir. 2013) (affirming restitution ordered 18 months post-sentencing based on government's fourth submission on restitution, noting that "[S]ection 3663A(c)(3)(B) plainly does not require the district court to surrender whenever one or more complex issues of causation or loss calculation appear. To the contrary, the statute explicitly contemplates that the district court weigh against the burden of ordering restitution the victims' interests in receiving restitution"); *United States v. Illarramendi*, 677 F. App'x 30, 31 (2d Cir. 2017) (affirming $370,482,716.54 order of restitution despite proceedings being delayed by "ten and a half months" even where district court "acknowledged that the loss amount calculations would be extremely complicated"); *United States v. Bengis*, No. S1 03 Crim. 0308 (LAK), 2013 WL 2922292 (S.D.N.Y. June 14, 2013) (Dkt. No. 249); *see also id.* at Dkt. No. 196 at 4, 7 (relying on the expert report submitted by the government which offered "various methodologies" and made calculations based on company admissions, detailed information provided by co-conspirators and "hard data," the Court chose one of several available methodologies to determine the appropriate restitution amount). In *Illarramendi*, the government "submitted extensive documentation from the court-appointed Receiver" to determine the appropriate amount of

restitution, and the Receiver "spent considerable time and resources" on the matter. *United States v. Illarramendi*, No. 3:11-cr-41 (SRU), 2015 WL 8664174, at *3 (D. Conn. Dec. 11, 2015), *aff'd*, 677 F. App'x 30 (2d Cir. 2017). In fact, according to testimony by Mr. Brian Ong, a senior managing director at FTI Consulting, FTI staff and the Receiver had spent about 68,000 hours "looking at books and records, looking at emails, calculating losses, [and] reviewing claims[.]" *United States v. Illarramendi*, No. 3:11-cr-00041-SRU (D. Conn. June 15, 2015) (Dkt. No. 187) (Restitution Hearing Tr. at 44).[5]

As the Court understands, "[t]he complexity exception creates a balancing test where a court must weigh the need to provide restitution to a victim against the burden on the sentencing process posed by determining complex issues of fact." *United States v. Malone*, 747 F.3d 481, 486 (7th Cir. 2014). Here, the idea that a delay in sentencing could outweigh the need to provide restitution is baffling. ***First***, the government already agreed to delay sentencing for 18 months for the exclusive benefit of the *defendant* so that the defendant could pursue its Department of Labor waiver. ***Second***, due to the government's decision not to prosecute any individuals for the Defendant's wrongdoing, there are no individuals awaiting a decision regarding their liberty. It is unfathomable that any further conceivable resulting delay caused by resolution of the Victims' restitution claim could outweigh their individual rights to be made whole. This is not a case where a vulnerable defendant is potentially being held hostage by a process that will not even make his victims whole. Nor is it a

---

[5] Moreover, even if there were complex issues here, Section 3664(d)(6) provides the court with a mechanism to overcome what may initially seem impracticable issues. *See United States v. Cienfuegos*, 462 F.3d 1160, 1168 (9th Cir. 2006) ("The MVRA contemplates that some calculations may be complex, and, accordingly, authorizes the district court to 'require additional documentation or hear testimony,' *id.* § 3664(d)(4)").

process where unharmed individuals will be compensated—*see United States v. Reifler*, 446 F.3d 65, 139 (2d Cir. 2006) (overturning restitution order where coconspirators were treated as victims)—or the at-issue victims already recovered through forfeiture (*see Hsu v. United States*, 954 F. Supp. 2d 215, 222 (S.D.N.Y. 2013) (no order of restitution where victims "were already being compensated through forfeiture")).  It is just the opposite: the Defendant is part of a corporation – a large hedge fund.  It has the funds to make its victims whole.  Its victims have persistently fought for that right.  Any "burden" here on the sentencing process cannot outweigh that right.[6]

## CONCLUSION

For the foregoing reasons, Victims respectfully requests that the Court enter an order of restitution consistent with the harms suffered because of the Defendant's flagrant criminal conduct.


Dated:  November 22, 2019                    Respectfully submitted,

                                             WILSON SONSINI GOODRICH & ROSATI
                                             Professional Corporation

                                             *s/ Morris J. Fodeman*
                                             Morris J. Fodeman
                                             Michael S. Sommer
                                             Kate T. McCarthy
                                             1301 Avenue of the Americas, 40th Floor
                                             New York, New York 10019
                                             Telephone:  (212) 999-5800

---

[6] Even if the Court ultimately decides that it is impossible to determine an exact restitution amount, courts have routinely held that "[s]o long as the basis for reasonable approximation is at hand, difficulties in achieving exact measurements will not preclude a trial court from ordering restitution."  *United States v. Futrell*, 209 F.3d 1286, 1292 (11th Cir. 2000) (quoting *United States v. Savoie*, 985 F.2d 612, 617 (1st Cir. 1993)).  *United States  v. Hart*, 70 F.3d 854, 863 (6th Cir. 1995) (same); *Savoie*, 985 F.2d at 617 ("[W]here the precise amount owed is difficult to determine, [the VWPA] authorizes the court to reach an expeditious, reasonable determination of appropriate restitution by resolving uncertainties with a view toward achieving fairness to the victim.") (citation omitted); *United States v. Teehee*, 893 F.2d 271, 274 (10th Cir. 1990) ("The determination of an appropriate restitution amount is by nature an inexact science."); *United States v. Newsom*, 399 F. App'x 625, 627 (2d Cir. 2010) ("[O]rdering restitution requires a delicate balancing of diverse, sometimes incomparable, factors, some of which not only lack certainty but may indeed be based on mere probabilities, expectations, guesswork, even a hunch[.]") (citation omitted).  No attempt at precision should thwart the victims' rights to restitution here.

Facsimile:  (212) 999-5899
mfodeman@wsgr.com
msommer@wsgr.com
kmccarthy@wsgr.com

*Counsel for Claimants*