UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>-against-<br><br>OZ AFRICA MANAGEMENT GP, LLC,<br><br>Defendant. | Case No.: 1:16-cr-00515-NGG |

**MEMORANDUM OF LAW IN SUPPORT OF OZ AFRICA
MANAGEMENT GP, LLC'S MOTION FOR DISCOVERY UNDER
FEDERAL RULE OF CRIMINAL PROCEDURE 17(C)**

Pursuant to Federal Rule of Criminal Procedure 17(c), Defendant OZ Africa Management GP, LLC ("OZ Africa") respectfully requests that the Court order the issuance of the attached subpoenas to Claimants, Claimants' expert, and Claimants' expert's firm, respectively, requiring them to produce the limited information sought herein within ten days of the Court's Order on this motion, or at such reasonable time as the Claimants may request.

**Legal Standard**

Discovery concerning issues relevant to sentencing, including regarding restitution, is clearly appropriate under Rule 17, and it is equally clear that such discovery may be sought from restitution claimants. *See United States* v. *Winner*, 641 F.2d 825, 833 (10th Cir. 1981) ("Although Rule 17 subpoenas are generally employed in advance of trial, we see no reason why their use should not be available for post-trial motions and sentencing."); *United States* v. *Donaghy*, 570 F. Supp. 2d 411, 419 (E.D.N.Y. 2008) (Amon, J.) (ordering victims to respond to defendant's subpoena for documents related to restitution request); *United States* v. *Lester*, 2016 WL 5109611, at *1 (E.D. Cal. Sept. 19, 2016) (granting defendant's post-trial Rule 17 subpoena seeking "a

number of documents" from the victim in the case); *United States* v. *Sandoval*, 2010 WL 2757188, at *4 (S.D. Fla. July 13, 2010) (stating that defendant may seek documents "relevant to [his] sentencing" from victim pursuant to a properly-filed Rule 17 subpoena); *United States* v. *Yaroch*, 2008 WL 1701650, at *3-4 (E.D. Mich. Apr. 10, 2008) (discussing Rule 17 subpoena seeking testimony and documents from third parties in advance of a hearing on sentencing and restitution matters); *see also United States* v. *Gonzalez*, 2002 WL 31641109, at *1 (S.D.N.Y Nov. 13, 2002) (defendant's motion requesting authorization to issue subpoenas in advance of his sentencing is an "orderly and desirable procedure and one frequently followed") (internal citations and quotation marks omitted).

Discovery is particularly appropriate in a restitution case since restitution must be determined on a victim-by-victim basis and requires an evaluation of the actual loss to each victim caused by the defendant's criminal conduct. *See United States* v. *Catoggio*, 326 F.3d 323, 328-29 (2d Cir. 2003); *United States* v. *Carboni*, 204 F.3d 39, 47 (2d Cir. 2000) ("a court's power to order restitution is limited to actual loss"); *United States* v. *Gushlak*, 728 F.3d 184, 195 (2d Cir. 2013) (stating that the Court "disapprove[s] of [restitution] loss calculations that incorporate hypothetical or speculative losses").

Expert discovery is also clearly appropriate in the restitution context. *See United States* v. *Gushlak*, No. 03-cr-0833 (E.D.N.Y. Aug. 19, 2011) (unpublished order) (Garaufis, J.) (ordering Government to produce "information on which the Government's expert will base his expert report and opinion," in response to which the Government filed a list of all documents provided to its restitution expert); *see also* (ECF 69 at 1-2; ECF 69-1) (Claimants' submission relying upon expert analysis).

As discussed below, OZ Africa's requests are narrowly-tailored to seek evidence relevant to the issues before the Court. *See* ECF 51 at 20; *United States* v. *Nixon*, 418 U.S. 683, 700 (1974) (Rule 17(c) subpoena is appropriate where defendant seeks specific, relevant, and admissible evidence).

## OZ Africa is Entitled to the Discovery Requested

"'Federal courts have no inherent power to order restitution, which is traditionally a civil remedy. A sentencing court's power to order restitution, therefore, depends upon, and is necessarily circumscribed by, statute.'" *Fed. Ins. Co.* v. *United States*, 882 F.3d 348, 357 (2d Cir. 2018) (citing *United States* v. *Zangari*, 677 F.3d 86, 91 (2d Cir. 2012)). Claimants allege they are "victims" and seek restitution under the Mandatory Victims Restitution Act ("MVRA"), 18 U.S.C. § 3663A(b), which provides:

> (b) The order of restitution shall require that such defendant—
>> (1) in the case of an offense resulting in damage to or loss or destruction of ***property of a victim*** of the offense—
>>> (A) return the property to the owner of the property or someone designated by the owner; or
>>> (B) if return of the property under subparagraph (A) is impossible, impracticable, or inadequate, pay an amount equal to—
>>>> (i) the greater of—
>>>>> (I) the value of the property ***on the date of the damage, loss, or destruction***; or
>>>>> (II) the value of the property ***on the date of sentencing***, less
>>>> (ii) the value (***as of the date the property is returned***) of any part of the property that is returned[.]

18 U.S.C. § 3663A(b) (emphasis added).

The issue of loss under the MVRA is thus driven by the identity of the "property of a victim" that is being valued, and by three dates of valuation. Before any analysis can be done pursuant to the MVRA's loss calculation methodology, the Court must identify the "property of

[the] victim" and determine its value: (1) "on the date of the damage, loss, or destruction"; (2) "on the date of sentencing"; and (3) "as of the date the property is returned [in whole or in part]." *Id.*

The discovery sought by OZ Africa is tailored to each of these statutory requirements and the controlling case law in this Circuit.

*First*, it is a bedrock principle that the MVRA applies only when "an identifiable victim or victims has suffered a physical injury or pecuniary loss." 18 U.S.C. § 3663A(c)(1)(B). *See United States v. Catoggio*, 326 F.2d 323, 329 (2d Cir. 2003) ("The MVRA is clear that restitution can only be imposed to the extent that the victims of a crime are actually identified. . . . Identification of victims is a statutory prerequisite to the application of the MVRA."). Under the MVRA, the "property" at issue must be the "property of a victim." 18 U.S.C. § 3663A(b). Claimants are alleged to be former shareholders of Africo Resources Limited ("ARL" or "Africo"), and their ARL shares are the property they owned. Because ARL shares traded on the Toronto Stock Exchange throughout the relevant period, from day-to-day ARL's shareholders changed, as did the value of their shares and their ownership interests. Despite repeated requests, Claimants have yet to identify themselves individually, or the dates of their purchases and sales of ARL shares, or the prices at which they purchased and sold them. This information is vital, since assuming that former shareholders of ARL can be "victims" within the meaning of that term in the MVRA, it is only those former shareholders who owned ARL shares "on the date of the damage, loss, or destruction" who can be "victims" and who can claim a loss compensable under the MVRA. In part because Claimants fail to identify the "date of the damage, loss, or destruction," in their November 22, 2019 submission (ECF 69), OZ Africa and the Court have no way of knowing which former shareholders of ARL are Claimants in this action.[1] For example, those former ARL

---

[1] Claimants have put forth broad non-specific dates of loss, including: (i) the "2008" period cited in the Claimants' November 2019 SRK Addendum (ECF 69-2 at 1); (ii) a valuation of the Kalukundi Project as

4

shareholders who sold their shares in ARL *prior to* the date of loss, or who *bought shares after* the date of loss, have no compensable loss. Because Claimants also fail to identify the "the date the property [was] returned" (such that the difference between the value of the property between the date of loss and date of return is determinable) a loss calculation under the MVRA is impossible. OZ Africa thus respectfully asks the Court to permit basic discovery from Claimants to determine: (i) who Claimants are; (ii) what they owned; (iii) when they owned it; (iv) the prices at which they purchased and sold it; (v) when, precisely, it was lost or damaged; and (vi) when it (or any of it) was returned. The MVRA compels as much, and this is precisely the information the Court anticipated would be produced in the Claimants' submission,[2] but which Claimants have refused to provide.

*Second*, restitution is limited to a victim's "'actual loss caused by the scheme.'" *United States* v. *Calderon*, 2019 WL 6482379 at *14 (2d Cir. Dec. 3, 2019) (citation omitted) (reversing award of restitution). "[T]he law does not authorize restitution to victims 'in excess of their losses.'" *United States* v. *Kinney*, 684 F. App'x 73, 75 (2d Cir. 2017) (quoting *United States* v. *Pescatore*, 637 F.3d. 128, 139 (2d Cir. 2011)). "'Restitution should not be ordered in respect to a

---

of "the time of loss (April 2008)" (ECF 26-6 at 1); and (iii) asserting the victims are a "class" of shareholders who owned shares in ARL in "spring 2008 (the time of the corrupt takeover)." (ECF 69 at 4-5). ARL shareholders changed every day. Without knowing a date of loss, there is no way to identify the shareholder victims seeking recovery. The Government's November 22, 2019 submission suggests that it too does not know what interests any individual Claimant had. *See* ECF 68 at 2 n.2 ("Additional calculations would be necessary to ascribe values of the mining rights . . . to the appropriate restitution amount for individual Claimants.").

[2] *See* Sept. 23, 2019 Conference Tr. at 10 ("[B]ut with regard to your submission, you're going to be submitting what? You're going to submit the number of claimants, the amount of the shares per claimant, I assume, and the loss per share, I assume."). The Court's statements made perfect sense because shares are the "property" owned by Claimants. The most objective and complete valuation of the mining rights is reflected in the price of the publicly traded securities of ARL whose single material asset was an indirect interest in those rights. In its submission, the Government acknowledges that "[i]n both criminal and civil securities fraud cases, many courts have recognized that a company's opportunities are reflected in its share price." (ECF 68 at 12). *See Basic, Inc.* v. *Levinson*, 485 U.S. 224, 246 (1988) ("the market price of shares traded on well-developed markets reflects all publicly available information" concerning the company).

loss which would have occurred regardless of the defendant's conduct.'" *United States* v. *Marino*, 654 F.3d 310, 319 (2d Cir. 2011) (quoting *United States* v. *Vaknin*, 112 F.3d 579, 589 (1st Cir. 1997)). Since the Claimants never directly owned mining rights but were in fact ARL shareholders – as they seem now to concede (ECF 69 at 5) – it is critical that, *months before* the September 2006 default judgment that led to the complained-of temporary loss of the mining rights, ARL was on the brink of insolvency. *See* Rubicon Notice of Annual and Special Meeting of Shareholders and Management Information Circular (July 7, 2006) (ECF 38-7) at 14:

> The viability of the Kalukundi project and the ability for the company to continue as a going concern are dependent on future financing. . . . If financing is not achieved, the Company may not be able to meet its obligations as they become due.

For years, ARL had publicly disclosed in filings with its regulators and in statements to its public shareholders that, if it did not obtain additional financing, it stood to lose its interest in the Kalukundi property:

> Pursuant to the Swanmines Agreement, Africo is contractually obligated to provide the funding for the Kalukundi Property. There can be no assurance that such additional financing will be available to Africo or, if it is, that it will be offered on acceptable terms. If additional financing is raised through the issuance of equity or convertible debt securities of Africo, the interests of shareholders in the net assets of Africo may be **significantly diluted**. If additional financing is not available, Africo may be unable to satisfy its obligations under the Swanmines Agreement. Any such failure . . . may result in the loss of its interest in the Kalukundi Property.

Africo Resources Limited 2007 Annual Information Form (dated March 28, 2008) (ECF 38-2) at 17 (emphasis added); *see also id*. at 3-4, 7, 14-20. In fact, in 2007 Africo contracted for a private placement of equity securities in order to raise essential capital. This equity offering, underwritten by Paradigm Capital, Inc. (the "Paradigm Transaction") would have *substantially diluted* the ownership of all existing shareholders through the issuance of additional shares, and it would have taken place if the criminal offense had not occurred. The Paradigm Transaction was fully agreed and known to the market when ARL first learned of the taking of the mining rights. ARL pulled

6

the Paradigm Transaction, and the ownership interests of all existing shareholders in ARL remained un-diluted until the closing of the Camrose Transactions two years later, at which time Africo received a cash infusion of approximately $100 million, and the dilution that did occur substantially mirrored that which would have occurred in the Paradigm Transaction had the criminal offense never taken place. Discovery is appropriate concerning Africo's need for capital to remain a going concern, its efforts to raise capital independent of any criminal offense, and the substantial dilution of all existing shareholders – the Claimants' supposed loss of "control" – that would be a necessary consequence thereof *even had the criminal offense never taken place.*

*Third*, regardless of what property loss is being valued, "the amount of restitution ordered must reflect a 'reasonable approximation of losses supported by a sound methodology.'" *United States* v. *Tanner*, 942 F.3d 60, 67 (2d Cir. 2019) (holding district court abused its discretion in ordering restitution because it failed to use a sound methodology) (quoting *United States* v. *Gushlak*, 728 F.3d 184, 196 (2d Cir. 2013)). "[L]osses that are hypothetical or speculative" are not compensable by way of MVRA restitution. *United States* v. *Maynard*, 743 F.3d 374, 378 (2d Cir. 2014). The discounted cash flow ("DCF") methodology put forth by Claimants with respect to the mining rights not only purports to value property that Claimants never directly owned, but also is seriously flawed in a number of respects. As the Government recognized: "While the DCF method may provide a means to assess the Kalukundi mining rights, it is also limited by the reliability and accuracy of the various inputs utilized to estimate the revenues, costs, risks and resulting cash flows. Adjustments to certain inputs can have a significant effect on the concluded value." ECF 68 at 5. The Government goes on to disagree with Claimants' inputs on commodity prices, royalties/taxes, capital costs and particularly discount rates – all of which are key drivers in a DCF analysis. *See* ECF 68 at 6-11. To permit the Court to evaluate the Claimants' DCF

7

valuation, discovery of the inputs and analyses that the Claimants' expert, Dr. Rigby, used in his DCF calculation is required.[3]

The subpoenas sought herein are specific, narrow, and seek undeniably relevant evidence. If provided, the requested discovery will allow OZ Africa and the Court to identify the "property" at issue, the date of loss, and the potential ARL shareholder victims. It will help demonstrate that the complained-of impact of the Camrose Transactions on the Claimants' ownership in ARL was planned to occur and would have occurred even had there never been a criminal offense. It will provide a full understanding of what Dr. Rigby actually relied on in the preparation of his reports. It will also provide a basis to determine the market value of the Claimants' property – their shares of ARL – which, as we will demonstrate at the appropriate time, is the only methodologically sound analysis applicable in the circumstances presented.[4]

Request No. 1: OZ Africa seeks the identification of each Claimant, and information necessary to calculate his/her/its purported losses. *See* Exhibit 1, Request 1. The Court must "identify the victims and their actual losses prior to imposing restitution under the MVRA." *Catoggio*, 326 F.3d at 328-29 (such identification is necessary to "ensure[] that those victims receive the pro-rat[ed] share of the restitution funds to which they are entitled"); *see also United*

---

[3] OZ Africa conferred with counsel for the Claimants on December 3, 2019 regarding the necessity of each of the discovery requests contained herein. Counsel for Claimants agreed to provide the information requested concerning Dr. Rigby's expert report that is in their possession (items 6 and 7 in the proposed subpoena to the Claimants), but refused to produce material responsive to the remaining items without the intervention of the Court.

[4] "Market prices are typically viewed superior to other valuation techniques because, unlike, *e.g.*, a single person's discounted cash flow model, the market price should distill the collective judgment of the many based on all the publicly available information about a given company and the value of its shares." *DFC Global Corp. v. Muirfield Value Partners LP*, 172 A.3d 346, 369-70 (Del. 2017); *see also United States* v. *Gushlak*, 728 F.3d 184, 200 (2d Cir. 2013) (affirming, in a restitution proceeding, an expert's "reasonable estimate of loss founded on a sound basis for approximation" where expert relied on stock movement analysis to calculate loss to alleged shareholder victims).

*States* v. *Gushlak*, 2011 WL 128359, at *2-3 (E.D.N.Y. Jan. 14, 2011) (Garaufis, J.) (ordering the Government to provide a list of victims and the amounts of each of their losses).[5]

Request Nos. 2-3. OZ Africa seeks information relating to the valuation of the Kalukundi mining rights. *See* Exhibit 1, Request 2-3. Documents requested in this category include valuations of ARL or ARL's securities (the entity which held a single material asset – the mining rights); valuations of the mining rights between 2006 and present (to encompass the time of the offense through the time of sentencing); the contract pursuant to which the rights are alleged to exist; and documents related to the acquisition or potential sale of the mining rights. This information relates directly to the Court's request that the parties to address "the value of the mining rights . . . as of either 2006-2008 or the present day" (ECF 51 at 20 & n.12), is likely in the possession of Claimants who served in management and board positions as well as being shareholders of ARL, and will be used by OZ Africa to address and defend itself against the valuations put forth by the Claimants and the Government in their submissions of November 22, 2019. (ECF 68 & 69). To the extent ARL was in default of obligations necessary to maintain the mining rights, or those rights were slated to expire, this information bears directly on valuation.

Request Nos. 4-5. OZ Africa requests information related to efforts and impediments to developing the Kalukundi Project (*see* Exhibit 1, Request 4), including but not limited to impediments to raising necessary capital and other obstacles, which bear on both the valuation of the rights and the Court's request that the parties provide information concerning which losses were caused by the "multitude of other potential problems with Congolese mining." (ECF 51 at

---

[5] Requests 1(c) and 1(f) are intended to seek evidence of Claimants' control over ARL, either through their role in management or through their exercise of voting rights, which will ultimately bear on Claimants' potential argument that such control was lost or affected by the offense.

9

20 & n.13). OZ Africa also requests documents relating to the Camrose Transactions[6] (*see* Exhibit 1, Request 5), which would provide valuation information as well as information concerning "the value as of the date the property is returned" as required by the MVRA, because part of the Camrose Transactions involved the reassignment of the mining rights to ARL. 18 U.S.C. § 3663A(b).

Requests No. 6 and 7, and Exhibits 2-3. OZ Africa seeks discovery concerning the report of Claimants' expert, Dr. Neal Rigby (ECF 26-6 and 69-1), upon which Claimants' proffered valuation analysis rests. *See* Exhibit 1, Request 6; Exhibits 2-3 (requesting from Claimants' expert and Claimants' expert's firm the bases for Claimants' valuations and any reports, studies, or testimony by Claimants' expert concerning copper or cobalt mining in the Democratic Republic of the Congo during the relevant time period. The defense is entitled to this information in order to test the valuation advanced by the Claimants.[7] *See United States* v. *Gushlak*, No. 03-cr-0833 (E.D.N.Y. Aug. 19, 2011) (unpublished order) (Garaufis, J.) (ordering Government to produce "information on which the Government's expert will base his expert report and opinion," in response to which the Government filed a list of all documents provided to its restitution expert);

---

[6] "Camrose Transactions" means those transactions defined in the ARL Notice of Annual and Special Meeting of Shareholders and Management Information Circular dated May 14, 2008 and subsequently approved by the shareholders of ARL.

[7] Federal Rule of Evidence 705 will require the disclosure of the facts and data underlying Dr. Rigby's opinion on cross-examination. As discussed in the Advisory Committee notes to the Rule, this requirement "assumes that the cross-examiner has the advance knowledge which is essential for effective cross-examination," which is assured by "the discretionary power of the [Court] to require preliminary disclosure." *Cf.* Fed. R. Crim. P. 16(a)(1)(G) ("At the defendant's request, the government must give to the defendant a written summary of any testimony that the government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence during its case-in-chief at trial."); Fed. R. Crim. P. 16(a)(1)(F)("Upon a defendant's request, the government must permit a defendant to inspect and to copy or photograph the results or reports of . . . any scientific test or experiment if: (i) the item is within the government's possession, custody, or control; (ii) the attorney for the government knows – or through due diligence could know – that the item exists; and (iii) the item is material to preparing the defense or the government intends to use the item in its case-in-chief at trial.").

*United States* v. *Tuzman*, 2017 WL 6527261, at *11 (S.D.N.Y. Dec. 18, 2017) (Gardephe, J.) (expert "needed to disclose the formulas or calculations that [the expert] used to reach his conclusions"); *United States* v. *Marcus*, 193 F. Supp. 2d 552, 561 (E.D.N.Y. 2001) (Hurley, J.) (requiring pretrial production of "'not only all scientific reports but also all findings, scientific or technical data upon which such reports are based'") (citation omitted). As indicated, the Claimants have agreed to produce the information requested in Exhibit 1, items 6 and 7, to the extent it is in their possession. Accordingly, the Claimants presumably will consent to this part of the instant application.

Finally, Exhibit 3, the proposed subpoena to SRK Consulting, includes a request for similar information concerning SRK's 2008 Valuation Report on the Kalukundi Project. *See* Exhibit 3, Request 2. This material is relevant to the Court's directive that the parties brief the value of the mining rights as of the date of the loss, which the Claimants' broadly (but without sufficient specificity) state to be 2008. *See also* ECF 68 at 5 (Government November 22, 2019 submission citing to and attaching as an exhibit the SRK 2008 Valuation Report).

## Conclusion

For the foregoing reasons, the defense respectfully requests that the Court approve the issuance of the proposed subpoenas in the forms attached hereto as Exhibits 1-3.

Respectfully submitted,

CAHILL GORDON & REINDEL LLP

By: /s/ Charles A. Gilman
    Charles A. Gilman
    Anirudh Bansal
    Tara H. Curtin
    Samantha Lawson
    Benjamen Starkweather
80 Pine Street
New York, New York 10005
Tel.: (212) 701-3000

*Attorneys for OZ Africa Management GP, LLC*

December 9, 2019