# EXHIBIT 1

# UNITED STATES DISTRICT COURT
for the
Eastern District of New York

| | |
|---|---|
| United States of America <br> v. <br> OZ AFRICA MANAGEMENT GP, LLC <br> _Defendant_ | ) ) ) ) ) Case No. 1:16-cr-00515-NGG |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS IN A CRIMINAL CASE

To: Morris J. Fodeman, on behalf of Claimants
Wilson Sonsini Goodrich & Rosati, 1301 Avenue of the Americas, New York, NY 10019-6022

*(Name of person to whom this subpoena is directed)*

**YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following books, papers, documents, data, or other objects:
See attached Exhibit A

| Place: | Date and Time: |
|---|---|
| Cahill Gordon & Reindel LLP <br> 80 Pine Street <br> New York, NY 10001 | |

Certain provisions of Fed. R. Crim. P. 17 are attached, including Rule 17(c)(2), relating to your ability to file a motion to quash or modify the subpoena; Rule 17(d) and (e), which govern service of subpoenas; and Rule 17(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

*(SEAL)*

Date: _____

*CLERK OF COURT*

_____
*Signature of Clerk or Deputy Clerk*

The name, address, e-mail, and telephone number of the attorney representing *(name of party)* OZ AFRICA MANAGEMENT GP, LLC , who requests this subpoena, are:

Anirudh Bansal, Cahill Gordon & Reindel LLP, 80 Pine Street, New York, NY 10005
abansal@cahill.com; 212-701-3207

**Notice to those who use this form to request a subpoena**

Before requesting and serving a subpoena pursuant to Fed. R. Crim. P. 17(c), the party seeking the subpoena is advised to consult the rules of practice of the court in which the criminal proceeding is pending to determine whether any local rules or orders establish requirements in connection with the issuance of such a subpoena. If no local rules or orders govern practice under Rule 17(c), counsel should ask the assigned judge whether the court regulates practice under Rule 17(c) to 1) require prior judicial approval for the issuance of the subpoena, either on notice or ex parte; 2) specify where the documents must be returned (e.g., to the court clerk, the chambers of the assigned judge, or counsel's office); and 3) require that counsel who receives produced documents provide them to opposing counsel absent a disclosure obligation under Fed. R. Crim. P. 16.

Please note that Rule 17(c) (attached) provides that a subpoena for the production of certain information about a victim may not be issued unless first approved by separate court order.

Case No. 1:16-cr-00515-NGG

# PROOF OF SERVICE

This subpoena for *(name of individual and title, if any)* _____
was received by me on *(date)* _____ .

❒ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❒ I returned the subpoena unexecuted because: _____
_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

## Federal Rule of Criminal Procedure 17 (c), (d), (e), and (g) (Effective 12/1/08)

**(c) Producing Documents and Objects.**

    **(1) In General.** A subpoena may order the witness to produce any books, papers, documents, data, or other objects the subpoena designates. The court may direct the witness to produce the designated items in court before trial or before they are to be offered in evidence. When the items arrive, the court may permit the parties and their attorneys to inspect all or part of them.

    **(2) Quashing or Modifying the Subpoena.** On motion made promptly, the court may quash or modify the subpoena if compliance would be unreasonable or oppressive.

    **(3) Subpoena for Personal or Confidential Information About a Victim.** After a complaint, indictment, or information is filed, a subpoena requiring the production of personal or confidential information about a victim may be served on a third party only by court order. Before entering the order and unless there are exceptional circumstances, the court must require giving notice to the victim so that the victim can move to quash or modify the subpoena or otherwise object.

**(d) Service.** A marshal, a deputy marshal, or any nonparty who is at least 18 years old may serve a subpoena. The server must deliver a copy of the subpoena to the witness and must tender to the witness one day's witness-attendance fee and the legal mileage allowance. The server need not tender the attendance fee or mileage allowance when the United States, a federal officer, or a federal agency has requested the subpoena.

**(e) Place of Service.**

    **(1) In the United States.** A subpoena requiring a witness to attend a hearing or trial may be served at any place within the United States.

    **(2) In a Foreign Country.** If the witness is in a foreign country, 28 U.S.C. § 1783 governs the subpoena's service.

**(g) Contempt.** The court (other than a magistrate judge) may hold in contempt a witness who, without adequate excuse, disobeys a subpoena issued by a federal court in that district. A magistrate judge may hold in contempt a witness who, without adequate excuse, disobeys a subpoena issued by that magistrate judge as provided in 28 U.S.C. § 636(e).

# EXHIBIT A[1]

1. Documents identifying each Claimant,[2] and separately as to each Claimant:

    a.  all purchases/acquisitions of ARL[3] securities and the dates, quantities and prices thereof;

    b.  all sales/dispositions of ARL securities and the dates, quantities and prices thereof;

    c.  any employment position held by each Claimant at ARL (*e.g.*, director, officer, employee or consultant) and the time period the position was held;

    d.  each Claimant's purported loss;

    e.  the date of the purported loss; and

    f.  any contracts or agreements to which each Claimant is a party regarding the voting of ARL securities.

2. Documents valuing ARL or any portion thereof, or any class of ARL securities.

3. The following categories of documents concerning the Kalukundi mining rights:

    a.  any contracts, agreements or other documents pursuant to which the mining rights are alleged to exist, any amendments thereto, and any documents or communications concerning the renewal thereof;

    b.  documents and communications concerning the satisfaction or the failure to satisfy obligations under any contract, agreement, or other document pursuant to which the mining rights are alleged to exist, including but not limited to any communications with any agent or agency of the Democratic Republic of the Congo or Gecamines concerning such obligations;

    c.  documents concerning the acquisition, transfer, or actual or potential purchase or sale of the mining rights or any portion thereof;

---

[1]  We incorporate herein the Uniform Definitions in Discovery Requests, pursuant to E.D.N.Y. Local Rule 26.3.

[2]  "Claimant" means each person claiming to be a victim entitled to restitution in this action.

[3]  "ARL" means Africo Resources Ltd. as well as its predecessors, successors, affiliates, and any wholly-owned subsidiaries that hold, or held at any point in time, an interest in the exploitation rights to the Kalukundi property.

d.  documents concerning the value of the mining rights as of the date of the purported loss or as of any other date between January 1, 2006 and the present (including any feasibility or technical mining study discussing the same).

4. Documents and communications concerning any efforts to develop the Kalukundi property, including documents: (i) concerning the raising of capital or financing for the purposes of developing the property; (ii) plans, specifications, or surveys conducted in an effort to develop the property; and (iii) any other obstacles or impediments to develop the Kalukundi property.

5. Documents and communications concerning the Camrose Transactions.[4]

6. Documents, models, and data referenced or relied upon in the drafting of the SRK Consulting Report titled "Valuation of the Kalukundi Copper/Cobalt Project," dated November 21, 2017 and all supplements/amendments thereto including the "November 2019 Addendum to the Valuation of the Kalukundi Copper/Cobalt Project," including:

    a. a complete copy of the 2006 MDM Ferroman (Pty) Ltd feasibility study conducted on the Kalukundi Project;

    b. the RSG Global Financial Model and Valuation of the Kalukundi project (referenced in the 2006 feasibility study and ARL/Rubicon public filings)

    c. all data inputs used in connection with the Leapfrog Software; the Datamine Mining Software; and Whittle Pit Analysis Software, and all models and outputs generated from the same as referenced in the 2017 SRK Consulting Report and the 2019 SRK Report Addendum, including the Whittle 4X files;

    d. all "Technical Economic Models," including those referenced on page 21 of the 2017 SRK Report, pages 59 and 72 of the 2019 SRK Report Addendum, and referenced in Section 6.3.1 of the SRK 2008 Valuation Report, and all native Excel files containing such models and related calculations;

    e. the "Mine Design" shapes as referenced on page 14 of the 2019 SRK Report Addendum;

    f. all geological maps relating to the property;

    g. all digital exploration files relating to the property including: lithological models, structural models, mineralization models, weathering surface models, all drilling trenching, and sampling results, density measurements, geophysical surveys, and mineralogical or petrographic studies;

---

[4] "Camrose Transactions" means those transactions defined in the ARL Notice of Annual and Special Meeting of Shareholders and Management Information Circular dated May 14, 2008 and subsequently approved by the shareholders of ARL.

    h. valuation estimates and financial projections relayed to, or relied upon by SRK Consulting or Dr. Neal Rigby;

    i. information and data utilized by Dr. Neal Rigby and SRK Consulting concerning taxes affecting the Kalukundi Project and its revenues;

    j. information and data utilized by Dr. Rigby and SRK Consulting concerning the prices or price forecasts for copper and cobalt; and

    k. information and data utilized by Dr. Rigby and SRK Consulting concerning the capital expenditures necessary to develop the Kalukundi Project.

7. Information concerning the qualifications of Dr. Rigby and all fees and expenses paid to Dr. Rigby.