UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>-against-<br><br>OZ AFRICA MANAGEMENT GP, LLC,<br><br>Defendant. | Case No.: 1:16-cr-00515-NGG |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF OZ
AFRICA MANAGEMENT GP, LLC'S MOTION FOR DISCOVERY
UNDER FEDERAL RULE OF CRIMINAL PROCEDURE 17(C)**

Pursuant to Federal Rule of Criminal Procedure 17(c) and the Order entered by the Court on December 4, 2019, Defendant OZ Africa Management GP, LLC ("OZ Africa") respectfully submits this Reply Memorandum in further support of its request that the Court order Claimants and their expert to provide limited discovery relevant to their claim for restitution. *See* ECF 72.

Claimants have been found to be victims and seek restitution under the Mandatory Victims Restitution Act ("MVRA"), 18 U.S.C. § 3663A(b). ECF 51 at 20. In its August 29, 2019 Memorandum and Order, the Court stated: "On the current record, the court is unprepared to decide how much restitution Defendant owes Claimants." ECF 51 at 20. Following a hearing, Judge Garaufis directed the parties to confer on discovery, set a briefing schedule for discovery motions should that be necessary (*see* Order entered December 4, 2019) and he referred discovery to this Court.[1]

---

[1] Courts in this District routinely order discovery in connection with claims for restitution. *See United States* v. *Dharia,* 284 F. Supp. 3d 262, 264-65 (E.D.N.Y. 2018) (Weinstein, J.) (ordering discovery of restitution claimants), *reconsideration denied*, 2018 WL 2440730 (E.D.N.Y. Feb. 2, 2018) (Weinstein, J.), *mandamus denied sub nom. In re PRP Brooklyn Eatery, LLC*, 2018 WL 2459564 (2d Cir. Apr. 2, 2018);

Claimants have yet to produce *any* discovery. Claimants refuse to identify who they are. They refuse to say what property of theirs was taken and when. They refuse to provide *any* information concerning their alleged purchases and sales of common shares of Africo Resources Limited ("Africo"). They have not even provided customary expert disclosure, despite agreeing to do so. They have not produced a single document (even those they said they would provide).

## I. Claimants Ignore the Dictates of the MVRA

OZ Africa's discovery requests are tailored to address both the directives of the Court in its August 29, 2019 Memorandum and Order, and its ultimate determination of restitution.

### A. Controlling Law Requires Production of the Information Requested

Restitution must be determined on a victim-by-victim basis and requires an evaluation of the actual loss to each victim caused by the defendant's criminal conduct.[2] The restitution determination, by the text of the MVRA, and a host of legal precedent to which Claimants fail to respond (*see* ECF 72 at 3-7), requires not only that the Court identify and value the "property of a victim" and the date that it was subject to "damage, loss, or destruction," 18 U.S.C. § 3663A(b), but also that "even where a defendant's [criminal offense] results in many victims whose identities and losses are difficult to ascertain, the district court should *identify the victims and their actual losses prior to imposing restitution under the MVRA*." *Catoggio*, 326 F.3d at 329 (emphasis added). Request No. 1 to Claimants is aimed at precisely this information – the identification of each Claimant, and his/her/its alleged actual loss. *See* ECF 72-1 at 5.

---

*United States* v. *Gushlak*, No. 03-cr-0833 (E.D.N.Y. Aug. 19, 2011) (unpublished order) (Garaufis, J.) (ordering production of "information on which the Government's [restitution] expert will base his expert report and opinion"); *United States* v. *Donaghy*, 570 F. Supp. 2d 411, 419 (E.D.N.Y. 2008) (Amon, J.) (ordering discovery of restitution claimants).

[2] *See United States* v. *Catoggio*, 326 F.3d 323, 328-29 (2d Cir. 2003); *United States* v. *Carboni*, 204 F.3d 39, 47 (2d Cir. 2000); *United States* v. *Gushlak*, 728 F.3d 184, 188 (2d Cir. 2013).

2

Claimants' failure to identify themselves prevents OZ Africa and the Court from making the actual loss calculation required by the MVRA. *See* ECF 72 at 4-5. At the September 23, 2019 conference, Judge Garaufis recognized that OZ Africa could "need discovery of certain information [to] assist [] in making an appropriate response" to the Government and Claimants' submissions. *See* Sept. 23, 2019 Tr. at 10, 15 (also stating: "[B]ut with regard to [Claimants'] submission, you're . . . going to submit the number of claimants, the amount of the shares per claimant, I assume, and the loss per share, I assume."). Such information, that the Court assumed Claimants would have already provided in their opening submission, is essential to the restitution calculation, and is required to be determined "*prior* to imposing restitution under the MVRA." *Catoggio*, 326 F.3d at 328-29 (emphasis added) (this identification "is a statutory prerequisite to the application of the MVRA," and necessary to "ensure[] that [] victims receive the pro-rat[ed] share of the restitution funds to which they are entitled"); *United States* v. *Hatfield*, 2014 WL 7271616, at *14 (E.D.N.Y. Dec. 18, 2014) (Seybert, J.) (restitution calculation based on "actual data regarding individual shareholders" is "consistent with the Second Circuit's requirement that victims must be identified prior to the imposition of a restitution order").

Claimants' suggestion that they need not identify themselves and their respective losses, and that the Court can consider restitution on an anonymous class-wide basis, is contrary to law. *See United States* v. *Collardeau*, 2005 WL 1106475, at *7-8, *20 (D.N.J. Apr. 28, 2005) (denying motion for restitution to "three separate victim 'classes'" as "an illogical and overly simplistic method to calculate the damages"); *United States* v. *Gushlak*, 2011 WL 128359, at *2-3 (E.D.N.Y. Jan. 14, 2011) (Garaufis, J.) (ordering the production of a list identifying each individual victim and the amount of his/her/its alleged loss).

3

Former shareholders who *sold before* the date of loss or who *bought after* the date of loss suffered no compensable injury. Claimants' statement that it "is irrefutable [] that some individual or entity did . . . hold [the] interests and thus was harmed by the Defendant" (Claimants' Brief (ECF 75) at 18) misses the point. The Wilson Sonsini law firm does not represent the world at large; it represents a specific number (not all) of Africo's former shareholders. Their refusal to provide any discovery, and to attempt to litigate on a "class" basis, prevents a finding on whether particular Claimants suffered any loss, and, if so, in what specific, individualized amount, as the law of the Circuit requires. *See Catoggio*, 326 F.3d at 329.

This is not an issue of undue burden. Claimants admit that they have the information about themselves that is requested, and state "[t]o the extent that the Court requests the Victims to provide . . . the identities of the Victims and the amount of equity held by each during the relevant period, we will of course do so . . . ." ECF 75 at 18-19. But instead of simply providing it, Claimants assert that the appropriate identifying information can be obtained "from the Canadian depositories where the shares were held." ECF 75 at 18 n.15. Information about Claimants who seek restitution should not become a cross-border scavenger hunt. Discovery games by prior restitution claimants have not been well received by Courts in this District.[3]

---

[3] *See Dharia,* 284 F. Supp. 3d at 264-65 (Weinstein, J.) (individuals and entities sought intervention claiming to be victims of the defendant's crimes and seeking restitution, but refused to provide required discovery and after "contentious" discovery, it was shown that claimants were not entitled to restitution and their claims for restitution were dismissed), *reconsideration denied*, 2018 WL 2440730 (E.D.N.Y. Feb. 2, 2018) (Weinstein, J.), *mandamus denied sub nom. In re PRP Brooklyn Eatery, LLC*, 2018 WL 2459564 (2d Cir. Apr. 2, 2018).

### B. The Discovery Sought Will Expedite the Determination of Restitution and Completion of Sentencing

Claimants have it backwards in suggesting that discovery will "delay the payment of restitution." ECF 75 at 10. The Second Circuit has made clear that information concerning the identity of each Claimant, his/her/its stock purchase history, and the date of their purported loss must be produced "*prior to* imposing restitution under the MVRA." *Catoggio*, 326 F.3d at 328-29 (emphasis added). By refusing to provide any discovery, it is Claimants who are prolonging the sentencing process.

The Government has also submitted to the Court that it is not yet in a position to calculate "the appropriate restitution amount for individual Claimants," ostensibly because Claimants have failed to provide the requisite information. ECF 68 at 2 n.2.

### C. Claimants Mischaracterize the Court's Ruling

In its August 29, 2019 Memorandum and Order, the Court contemplated the submission of information not then in the record, stating: "On the current record, the court is unprepared to decide how much restitution Defendant owes Claimants." ECF 51 at 20. The Court's ruling therefore anticipated the need for discovery, which is what OZ Africa now seeks.

Showing their inability to address the issue of discovery on the merits, Claimants spend the bulk of their brief discussing the OZ Africa Plea Agreement and the Och-Ziff Deferred Prosecution Agreement, which have no bearing on who Claimants are and whether they have an injury compensable in restitution. Claimants' assertion that former Africo shareholders can, in concept, be "victims" does not obviate the need for the discovery requested.

Claimants mischaracterize the Court's ruling as having "rejected Defendant's argument that the only losses suffered by the Africo Owners were the dilution of their shares or damage to the price of those shares." ECF 75 at 6. In fact, the Court was not presented with, nor was it

5

considering, let alone deciding, the correct methodology to use in calculating a restitution award, but instead was evaluating whether Claimants' "attenuated" interest in the Kalukundi mining rights permitted them to be considered possible "victims" under the MVRA. ECF 51 at 11-13. The Court made no determination as to whether the dilution of Claimants' equity ownership interest in Africo, or any loss in the value of their Africo shares – the only "property" allegedly owned by Claimants – was or was not a proper basis for the loss determination. *See* ECF 51 at 13.

The issue now is discovery. Not the merits. At the appropriate time, OZ Africa will make submissions supporting an objective, market-based methodology for the purposes of a restitution determination.

### D. Claimants Mischaracterize the Issue Presented

Claimants argue that OZ Africa seeks to re-litigate: "(1) the relevance of the manner in which the Victims held their interest in the Kalukundi mining rights"; "(2) the financial condition of Africo prior to and during Defendants' criminal conspiracy, and the potential for dilution with third-party financing"; "(3) the value of the Kalukundi mining rights as the appropriate measure of harm suffered by the Victims"; and "(4) whether Defendant was the direct and proximate cause of the harm to the victim's mining rights." ECF 75 at 14. That is not so. OZ Africa only seeks discovery on issues clearly relevant to the determination before the Court.

At all relevant times, Africo was a single-asset-corporation and that asset was its intangible, indirect interest in the Kalukundi mining rights. Any evidence of the value of Africo necessarily reflects the value of its single asset and is relevant and probative to the issue of restitution.

In this regard, we believe that two of the Claimants were the senior-most management of Africo in 2006-2008 – Christopher Theodoropoulos (Africo's Chairman of the Board) and Antony

Harwood (its CEO)[4] – and they authorized and signed the annual reports and regulatory filings made by Africo in early 2007 in which the audited balance sheet of Africo listed its total "Mineral properties" at approximately $4 million.[5] Theodoropoulos was also the contemporaneous recipient of an internal Africo memorandum valuing Africo's total interest in the Kalukundi mining rights as of 2008 at ***$1 million***.

Those contemporaneous audited and internal (non-litigation) numbers are a far cry from the pie-in-the-sky litigation-driven numbers now being bandied about by Claimants. To the extent there is other contemporaneous evidence of the value of Africo, its interest in the Kalukundi mining rights, or the mining rights themselves that are in Claimants' possession, custody or control – especially as here authorized or presented over the signatures of Claimants – they should be produced. *See* footnote 1, *supra*. The discovery that Claimants are refusing to provide will undercut their claims.

## II. The Requests are Narrowly-Tailored and Meet the *Nixon* Standard

Each request is narrowly tailored to the issues relevant to restitution.[6]

---

[4] In discussions, Claimants have identified a certain subset of their clients, making their refusal to identify their remaining clients as the law requires all the more confounding.

[5] While Claimants may argue that its "Mineral properties" were carried on Africo's balance sheet at cost, the $4 million figure is still a relevant metric, particularly where the Claimants now, for litigation purposes, claim the value of the same property is over 72 times more. *See* Claimants' Submission (ECF 69) at 1-2.

[6] Claimants' repeated assertion that OZ Africa is engaged in an improper "fishing expedition" (*see* ECF 75 at 1, 13, 20, 22, 25) is baseless, and the cases Claimants cite to support this argument are inapposite. *See, e.g.*, *United* States v. *Ashburn*, 2015 WL 1033063, at *2-3 (E.D.N.Y. Mar. 5, 2015) (Garaufis, J.) (quashing subpoenas issued during the middle of trial where defendant "ha[d] not made a single representation to the court regarding the materiality of th[e] request"); *United States* v. *Robinson*, 2017 WL 1331274, at *3-4 (E.D.N.Y. Apr. 10, 2017) (Spatt, J.) (defendant's subpoena improper where it sought government reports precluded from disclosure by Rule 16(a)(2), and where the defendant was able to obtain the documents in advance of trial without subpoenas); *United States* v. *Pena*, 2016 WL 8735699, at *2 (S.D.N.Y. Feb. 12, 2016) (information sought by defendant was inadmissible because it was hearsay and at least some portions were privileged); *United States* v. *RW Prof'l Leasing Servs. Corp.*, 228 F.R.D. 158, 163-64 (E.D.N.Y. 2005) (Spatt, J.) (defendant's request did not meet specificity requirements where it demanded "each and every document ever generated, created or received by [the subpoena recipient] in relation to" the conduct at issue); *United States* v. *Cheruvu*, 2018 U.S. Dist. LEXIS 197922, at *8 (W.D.N.Y. Nov. 20, 2018) (noting

7

***Requests 1(c) and (f)***[7]: The requests relating to relevant positions the Claimants held at Africo seek evidence concerning the Claimants' control over Africo and its development of the Kalukundi Project. *See* ECF 72-1 (proposed subpoena to Claimants). To the extent particular Claimants were in decision-making roles regarding the Project, or were involved in or approved of any steps taken to advance it (or not) during the relevant time period, this directly bears on the viability, and therefore the value, of the mining rights and any related opportunities that Claimants may have lost.

***Requests 2 and 3***: Evidence of the value of Africo directly relates to the value of its single, material asset, its indirect interest in the Kalukundi mining rights. Information concerning contracts pursuant to which the mining rights were held, and any satisfaction or failure to satisfy the obligations thereunder, directly relates to the risk of revocation of the ownership of these rights, which impacts their value.[8] Documents concerning the acquisition, transfer, purchase or sale of the mining rights or any portion thereof, relate directly to valuation, and are also relevant. This is particularly so because it is unclear from the public record whether, and if so at what time, Africo owned the portion of the mining rights it now claims to have owned. Notably, public filings appear to show that as of December 2006 Africo may only have owned 48% of the entity through which it derivatively owned the mining rights, while holding an option to purchase the remaining 52%.

---

that "Defendant himself confesses that, at this time, he has no way of knowing whether the documents sought are in fact relevant; he can only speculate"); *United States* v. *Mendineuta-Ibarro*, 956 F. Supp. 2d 511, 515 (S.D.N.Y. 2013) ("the subpoena . . . requests materials that may never be admissible" and "requests materials that are either statutorily protected from pre-trial disclosure or insufficient to justify the use of a 17(c) subpoena").

[7] The other subparts of Request 1 are addressed in Part I, *supra*.

[8] Claimants' contention that the Statement of Facts renders this request "utterly irrelevant" ignores the fact that Africo could very well have owned an interest in the mining rights, yet they were, or could become, subject to revocation. ECF 75 at 21.

Naturally, if Claimants owned a smaller portion of mining rights than they now claim, their loss would be correspondingly lower.

***Request 4***: Documents concerning efforts to develop the Kalukundi property and obstacles or impediments to doing so also relate to the valuation of the mining rights. The Court's August 29, 2019 Memorandum and Order sought submissions on the "complications" attendant to the development of the Kalukundi property. *See* ECF 51 at 20 and n.13. Documents reflecting Africo's internal discussion of those complications are relevant discovery and bear on valuation.

***Request 5***: Documents concerning the Camrose Transactions are relevant to the value of the mining rights to Claimants and Claimants' ownership interest relating to the mining rights. The Camrose Transactions provided Africo with a much-needed $100 million cash equity infusion, as well as the assignment of the mining rights relating to the Kalukundi property. As the Camrose Transactions are part of the underlying offense, to the extent this equity infusion and the attendant dilution of Claimants' indirect interest in the mining rights was consistent with Africo's fundraising goals *prior to* any criminal offense (*e.g.*, the Paradigm transaction (*see* ECF 72 at 6-7)), and to the extent Claimants have documents that explicitly discuss the Camrose Transactions as desirable or consistent with their pre-offense goals, this information is relevant to the Claimants' current assertion that the Transactions harmed them. *See United States* v. *Marino*, 654 F.3d 310, 319 (2d Cir. 2011) ("Restitution should not be ordered in respect to a loss which would have occurred regardless of the defendant's conduct.").

***Requests for Expert Discovery to Claimants, Dr. Rigby, and SRK Consulting***: Claimants have agreed to produce the expert discovery sought in Requests 6 and 7 (ECF 75 at 25), but have still not produced a single responsive document. The Claimants should be ordered to comply with these requests, since, as they obviously recognize, the requests seek nothing more than customary

9

expert disclosure.[9]  Moreover, to the extent any of this routine expert discovery is not in the Claimants' possession, custody, or control, the Court should order Dr. Rigby or SRK Consulting to produce it.  *See* ECF 72-2 (proposed subpoena to Dr. Rigby); ECF 72-3 (proposed subpoena to SRK).

Claimants argue that the additional material requested from Dr. Rigby and SRK – the data supporting the 2008 SRK Report and Dr. Rigby's prior analyses of copper and cobalt mining in the DRC – is only sought for impeachment purposes.  ECF 75 at 24-25.  This is not so.  The 2008 SRK Report contains a valuation of the Kalukundi mining rights (ECF 68 at 5), and Dr. Rigby's own prior analyses of copper and cobalt mining projects in the DRC will also contain relevant valuation metrics.  Where there are "other valid potential evidentiary uses for the [requested] material," the fact that such evidence might also be used for impeachment purposes does not prevent it from being validly subpoenaed under Rule 17(c).  *United States* v. *Nixon*, 418 U.S. 683, 701-02 (1974).

---

[9] *See Gushlak*, No. 03-cr-0833 (E.D.N.Y. Aug. 19, 2011) (unpublished order) (Garaufis, J.) (ordering Government to produce "information on which the Government's expert will base his expert report and opinion," in response to which the Government filed a list of all documents provided to its restitution expert); *United States* v. *Tuzman*, 2017 WL 6527261, at *11 (S.D.N.Y. Dec. 18, 2017) (Gardephe, J.) (expert "needed to disclose the formulas or calculations that [the expert] used to reach his conclusions"); *United States* v. *Marcus*, 193 F. Supp. 2d 552, 561 (E.D.N.Y. 2001) (Hurley, J.) (requiring production of "'not only all scientific reports but also all findings, scientific or technical data upon which such reports are based'").

10

## Conclusion

For the foregoing reasons, the defense respectfully requests that the Court approve the issuance of the proposed subpoenas.

Respectfully submitted,   CAHILL GORDON & REINDEL LLP

By: /s/ Charles A. Gilman
    Charles A. Gilman
    Anirudh Bansal
    Tara H. Curtin
    Samantha Lawson
    Benjamen Starkweather
80 Pine Street
New York, New York 10005
Tel.: (212) 701-3000
*Attorneys for OZ Africa Management GP, LLC*

December 20, 2019