

Wilson Sonsini Goodrich & Rosati
Professional Corporation

1301 Avenue of the Americas
40th Floor
New York, New York 10019-6022

O: 212.999.5800
F: 212.999.5899

July 28, 2020

<u>VIA CM/ECF</u>

The Honorable Nicholas G. Garaufis
Senior United States District Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    <u>*United States v. OZ Africa Management GP, LLC*</u>, No. 1:16-cr-00515-NGG

Dear Judge Garaufis:

Consistent with the Court's direction during the telephonic status conference on July 23, 2020, this letter is respectfully submitted to address: (i) the restitution amount that is being jointly recommended by the "Parties" – collectively, the Government, Defendant OZ Africa Management GP, LLC, and the victims represented by this firm who comprise approximately 68% of the former equity owners of Africo (the "Identified Victims") – as a reasonable restitution amount to be awarded to the Identified Victims, (ii) a description of the efforts undertaken by this firm to identify the former equity holders of Africo who are victims in this case, and (iii) the requirements, if any, under 18 U.S.C. § 3664(d)(5). We also address what we see as the next steps to allow this matter to proceed to sentencing.

**<u>The Recommended Restitution Amount</u>**

As the Court is aware, having found that the Africo stakeholders represented by our firm are victims of a crime covered by the MVRA, they are entitled to mandatory restitution in an amount equivalent to their losses – the greater of the value of the property harmed at the time of loss or the time of sentencing – as well as any expenses incurred as a result of their participation in the Government's investigation, prosecution, and sentencing of the defendant, including attorneys' fees and costs. *See* 18 U.S.C. § 3663A(b). While the Second Circuit has made clear that the calculation of restitution may be a "vexing task," the calculation is not required to be "mathematically precise" and instead need only be a "reasonable approximation . . . supported by a sound methodology." *United States v. Gushlak*, 728 F.3d 184, 195-96, 200 (2d Cir. 2013); *see also United States v. Jafari*, 663 F. App'x 18, 24-25 (2d Cir. 2016); *United States v. Murdock*, 542 F. App'x 57, 59 (2d Cir. 2013)

To assist the Court in arriving at a reasonable approximation of restitution, the Parties submitted differing valuations for 100% of Africo's interest in the Kalukundi mining rights, both at the time of loss (in or around April 2008), and at or around the time of sentencing. The Identified

**WILSON SONSINI**

The Honorable Nicholas G. Garaufis
July 28, 2020
Page 2 of 6

Victims, through their mining experts, asserted that the value of the mining rights to Africo at the time of sentencing was approximately $422 million; the Government, with the assistance of its financial expert, calculated that those rights had a value of approximately $151 million; and Defendant, with the assistance of its experts, calculated that those rights had a value of approximately $25 million.

After extensive discussions, the Parties jointly recommended to the Court on July 13th that the amount of restitution to be paid to the Identified Victims by Defendant (the "Recommended Restitution Amount") be $136 million, inclusive of fees and costs incurred by counsel for the Identified Victims as provided for by the MVRA. *See* 18 U.S.C. § 3663A(b). This number is supported by a sound methodology as set forth below.

As the Court is aware from the extensive briefing and the voluminous expert reports it has received from the Parties, the Government and the Identified Victims advocated the use of the discounted cash flow ("DCF") valuation methodology. There was some disagreement over, among other things, the appropriate discount rate to use in that methodology. The Government, through its financial expert, noted a range of discount rates and ultimately recommended a discount rate of 19.6%. The Identified Victims, through its mining experts, explained that a discount rate no higher than 12% was appropriate, and that such a rate was supported by every comparable mining transaction in the region for a copper/cobalt mine. The Defendant, through its experts, opposed the use of DCF valuation, but argued that if DCF methodology was to be used, the discount rate should be 24%. Despite the differing views on the applicable discount rate, however, all Parties acknowledge that there is a range of reasonableness for a reasonable restitution award in this matter. As a result, using a discount rate of approximately 16.66% – a rate between the various rates advanced by the Parties – and applying that rate to the DCF model prepared by the Government's financial expert, which the Parties have also agreed to adopt for these purposes, generates a value for Africo's mining rights in the Kalukundi mine of approximately $215 million, which after a deduction for the proceeds from the sale of shares, and the addition of attorneys' fees and costs, comes to $136 million for the Identified Victims who comprise 68% of the former Africo owners. A chart reflecting this calculation is attached hereto as Exhibit A.

Based on the significant work performed by the Parties and their respective experts, and the lengthy settlement discussions that have since ensued, the Parties are in agreement and submit that $136 million constitutes a "reasonable approximation" of the loss to the Identified Victims, and one that is based on a proper methodology, and therefore recommend to the Court that it accept and "So Order" this amount as the restitution to be paid by Defendant to the Identified Victims.

**The Efforts to Identify the Victims**

The Court inquired of the efforts undertaken by this firm to identify the victims in this matter. We advise as follows: this firm was engaged by a group of former equity holders of Africo in early 2017 (the "Client Group"), shortly after the charges against the Defendant and the deferred

**WILSON SONSINI**

The Honorable Nicholas G. Garaufis
July 28, 2020
Page 3 of 6

prosecution agreement for Och Ziff Capital Management were publicly announced. The original Client Group was comprised of certain former board members, officers and employees of Africo, who were also equity holders. The Client Group then expanded its number by using surviving company records, public filings and word of mouth. In addition, the Client Group contacted Africo's original underwriters, Haywood Securities, TD Securities, and Canaccord Genuity Corporation, and those companies in turn contacted (by email or mail) its clients who could be identified and who held Africo shares at the requisite time. As a result of the efforts of the Client Group, Wilson Sonsini now represents approximately 160 former Africo equity owners from around the world constituting approximately 68% of the total equity held in Africo during the relevant time.

As we advised Your Honor, despite the extensive efforts of the Client Group to identify victims who were significant holders of Africo equity – an undertaking that was not the responsibility of the Client Group or its counsel – there remain the holders of approximately one-third of the equity of Africo who have not been identified.[1] Neither the Client Group, Wilson Sonsini nor the Government have been able to locate a complete list of relevant shareholders. We have also confirmed with Computershare, Africo's transfer agent, that it also does not possess a list of all beneficial owners of Africo securities at the relevant time. And notwithstanding the widespread publicity concerning the potential restitution claim, no additional former shareholders have come forward beyond those already identified by the Client Group.

While we are aware of no complete list of Africo investors, we did receive two partial lists from surviving company records of Africo shareholders as of May 2008. The first list, known as the Registered Shareholder List, covers what we believe to be all or substantially all of the 27 million outstanding shares of Africo in the relevant time period, but approximately 25 million of those shares are registered in the name of securities depositories in the United States and Canada, Cede & Co. and CDS & Co. respectively, which act as a nominee for brokerage firms. As a result, we cannot identify any actual shareholders who own shares registered in the name of the depositories and have no way to reasonably contact such shareholders. We do note that almost all of the remaining 2 million shares on that list, who are actually identified by name, are already part of the Client Group.

The second partial list consists of shareholders who chose to make their identity, mailing address and share ownership known to Africo for the purposes of receiving corporate notices (the "Company List"). This Company List does not provide any information identifying the shareholders' stockbroker, or any email or phone contact details. But the Company List does include the names and home addresses or PO Box details (as of May 2008) for 2,275 shareholders who collectively held 7,726,274 shares of Africo. Again, Wilson Sonsini already represents the

---

[1] While we understand that the Government undertook efforts of its own through the FBI to contact victims, we are not aware of the full extent of those efforts and believe the Government can best address the efforts it undertook to identify and notify victims in this matter.

**WILSON SONSINI**

The Honorable Nicholas G. Garaufis
July 28, 2020
Page 4 of 6

large majority of the shares on the Company List, specifically those shareholders who together held approximately 5.5 million out of the 7.7 million shares. However, that leaves approximately 2.2 million shares spread across more than two thousand shareholders that we do not represent and who have never come forward in this matter. While many of these shareholders held very few shares (some as little as one share), they are nonetheless at least potentially identifiable and could be victims entitled to restitution. *United States v. Catoggio*, 326 F.3d 323, 328 (2d Cir. 2003) ("[A]lthough we believe the victims of [the defendant's] fraud are identifiable, the court erred in not identifying them before ordering restitution.").

Because the investors on the Company List can at least potentially be identified and located (and possibly found to be victims), since last week's status conference, we informed both the Government and counsel for the Defendant of this list. The Government has expressed its view that an effort should be made to contact these additional individuals who held Africo shares during the relevant period. We certainly do not object, and although we do not represent any of these former shareholders, we have offered to assist the Government in any way we can to get notices out as quickly as possible so that restitution can be Ordered to our clients as quickly as possible. The Government is now coordinating with its victim-witness team and has promised to update us in the next day or two on its plan for trying to reach these victims. At that time, we can submit a joint letter to the Court providing a game plan on the method and timing for getting such notices out as promptly as possible.

As for the Defendant, it has advised that it will wait and see how many (if any) additional identified victims come forward as a result of these notices. If the number of new victims does not materially change the percentage of shares represented, the Defendant will go forward with the contingent settlement with our clients by paying the agreed upon $136 million to the Identified Victims, plus an additional amount to any newly identified victims. If the new victims do materially change the percentage of shares represented, the Defendant will then determine whether it will adhere to the contingent settlement agreement by paying $136 million to the Identified Victims and an additional amount to any newly identified victims; or withdraw from the contingent settlement altogether and await the Court's determination on the value of Africo's mining rights and the corresponding restitution to be paid to the victims, but now with a larger percentage of the victims having been identified.

**The Relevance of 18 U.S.C. § 3664(d)(5)**

Section 3664(d)(5) does not *require* a court to wait 90 days following sentencing to impose restitution. Rather, this provision *allows* a court to take additional time to order restitution, where a "victim's losses are not ascertainable" at sentencing. We did not locate any case holding that a court was required to delay ordering restitution for 90 days under § 3664(d)(5) purely so that the Government could search for additional victims, especially where, like here, reasonable efforts had already been made to find those victims and additional efforts are still to be undertaken in advance of sentencing. Instead, the case law supports the clear interpretation that § 3664(d)(5) imposes a

**WILSON SONSINI**

The Honorable Nicholas G. Garaufis
July 28, 2020
Page 5 of 6

deadline rather than a requirement.  *See, e.g.*, *Dolan v. United States*, 560 U.S. 605, 608, 611 (2010) (holding that a "sentencing court that misses the *90-day deadline* nonetheless retains the power to order restitution" at least in part because § 3664(d)(5) is a "deadline seek[ing] speed by creating a time-related directive that is legally enforceable but does not deprive a judge or other public official of the power to take the action to which the deadline applies if the deadline is missed") (emphasis added).  *See also Gushlak*, 728 F.3d at 191 (holding that the court was empowered to order restitution beyond the 90-day deadline); *United States v. Qurashi*, 634 F.3d 699, 705 (2d Cir. 2011); *United States v. Pickett*, 612 F.3d 147, 148 (2d Cir. 2010) (holding district court had authority to order restitution more than 90 days after defendant's sentencing hearing).

Here, of course, assuming the Defendant adheres to the contingent settlement agreement, the losses for the Identified Victims will have been reasonably "ascertained" in advance of sentencing, which is why the parties approached the Court with their joint recommendation for a settlement amount.  However, based on the Company List, as discussed above, we agree with the Government that an effort should be undertaken to notify the other individuals and entities on that list.  Accordingly, we agree that sentencing should be delayed until that process is completed and the universe of identified victims is finalized.

**Proposed Next Steps**

As we alerted the Court in our letter of July 13, 2020, Dkt. No. 98, the Defendant and the Identified Victims are in the process of negotiating and executing a conditional settlement agreement pursuant to which Defendant will agree to pay the Recommended Restitution Amount to counsel for the Identified Victims on the day of sentencing upon satisfaction of certain conditions (the "Settlement Agreement").  This conditional Settlement Agreement, which is designed to facilitate and expedite payment to the Identified Victims without the need for further proceedings either by the Court or the Probation Department, is contingent on: (i) the Court accepting and ordering a restitution amount to the Identified Victims that is not materially higher than $136 million, (ii) Defendant not withdrawing from the Settlement Agreement due to additional victims coming forward in advance of sentencing who materially impact the shares represented by the identified victims before the Court, and (iii) Defendant being entitled to have its payment to the Identified Victims pursuant to the separate Settlement Agreement, plus any additional amount Defendant agrees to pay to any additional victims that may come forward in advance of sentencing, constitute full satisfaction of the Court's restitution order.  *See* 18 U.S.C. §3664(j)(2).

Based on the above, we submit that the sequencing of further proceedings in this matter should be as follows: (i) the Government promptly sends out a notice to the other victims on the Company list, (ii) a reasonable period of time is given to those victims to respond, (iii) a final percentage of the former Africo equity holders is determined from the Identified Victims we represent and any newly identified victims, (iv) if that percentage is materially higher than 68% of the equity holders in Africo, the Defendant will then advise the other parties and the Court whether it will proceed with the settlement, including paying the additional victims, and (v) if the victim

**WILSON SONSINI**

The Honorable Nicholas G. Garaufis
July 28, 2020
Page 6 of 6

percentage is not materially higher than 68%, or if it is but Defendant nevertheless elects to proceed with the contingent settlement by paying $136 million to the Identified Victims and an additional amount to the other identified victims, the sentencing of Defendant can immediately move forward.

    Respectfully submitted,

    WILSON SONSINI GOODRICH & ROSATI
    Professional Corporation

    *s/ Morris J. Fodeman*
    Morris J. Fodeman
    Michael S. Sommer
    Kate T. McCarthy
    1301 Avenue of the Americas, 40th Floor
    New York, New York 10019
    Telephone: (212) 999-5800
    Facsimile: (212) 999-5899
    mfodeman@wsgr.com
    msommer@wsgr.com
    kmccarthy@wsgr.com

    *Counsel for the Identified Victims*

cc:  All Counsel of Record (via CM/ECF)