

U.S. Department of Justice

United States Attorney
Eastern District of New York

AES:DCP/JPL/JPM/GMM
F. #2012R01716

271 Cadman Plaza East
Brooklyn, New York 11201

November 2, 2020

By ECF and Email

The Honorable Nicholas G. Garaufis
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

        Re:    United States v. OZ Africa Management GP, LLC
                  Criminal Docket No. 16-515 (NGG)

Dear Judge Garaufis:

        The government respectfully submits this letter in connection with the sentencing of defendant OZ Africa Management GP, LLC (the "Defendant") in the above-referenced matter. As the Court is aware, sentencing is currently scheduled for Wednesday, November 4, 2020 at 2:30 p.m. The Court has asked the government to provide "the elements necessary for the Court to consider and to order at the Defendant's sentencing." (See Dkt. Entry dated October 30, 2020). Set forth below are each of the components of the Defendant's sentencing.

I.    CARES Act Findings

        Because the sentencing hearing will not be conducted in person, prior to imposing sentence, the government respectfully asks the Court to make certain findings as contemplated by the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act"):

        *First*, that the Judicial Conference of the United States has found that the coronavirus emergency will "materially affect the functioning" of the federal courts. CARES Act § 15002(b)(2)(A); see "Judiciary Authorizes Video/Audio Access During COVID-19 Pandemic," Administrative Office of the United States Courts (published March 31, 2020) (available at https://www.uscourts.gov/news/2020/03/31/judiciary-authorizes-videoaudio-access-during-covid-19-pandemic);

        *Second*, that the Chief United States District Judge for the Eastern District of New York has found that felony sentencings under Rule 32 of the Federal Rules of Criminal

Procedure "cannot be conducted in person without seriously jeopardizing public health and safety."  CARES Act § 15002(b)(2)(A); see Administrative Order No. 2020-13-2, dated September 21, 2020;

*Third*, that the Court finds "for specific reasons that the . . . sentencing . . . cannot be further delayed without serious harm to the interests of justice."  CARES Act § 15002(b)(2)(A);[1] and

*Fourth*, that the Defendant knowingly, intelligently and voluntarily waives its right to an in-person sentencing hearing.  See CARES Act § 15002(b)(4).  Because the Defendant's consent is required, the government respectfully submits that a brief inquiry is appropriate in order to preserve the record, and suggests the following questions:

- Defendant, you have the right to be present in open court for sentencing, and you may have the proceeding adjourned until it is safe to do that.  Do you understand that?

- I am advised that you wish to waive that right and to consent to be sentenced by videoconference.  Have you had an opportunity to discuss your options with counsel?

- Do you believe that you have had sufficient time to discuss this decision with counsel and to make a decision about how you wish to proceed?

- Defendant, do you waive your right to an in-person hearing, and consent to proceed with this sentencing hearing by videoconference?

- Defense counsel, do you believe that the Defendant's consent is knowing, intelligent and voluntary?

Assuming that the Court makes the above-described findings and that the answers to all of the above questions are in the affirmative, the government requests that the Court accept the Defendant's waiver and proceed to sentencing the Defendant.

---

[1]  In this case, the government respectfully submits that not delaying the Defendant's sentencing would be appropriate to bring finality to the victims and to the Defendant.  As the Court is aware, the losses to the victim shareholders occurred approximately 13 years ago, for which the victims still await restitution.  Moreover, sentencing in this matter has been adjourned for many years due to extensive litigation between the parties, well beyond what the parties initially anticipated.  Thus, further delay would, among other things, needlessly prolong justice for the victims in this case.

II.     Sentencing Pursuant to the Plea Agreement

As the Court is aware, the parties have entered into an agreement pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) (the "Plea Agreement") that sets forth an agreed-upon sentence for the defendant OZ Africa Management GP ("OZ Africa"). The Court accepted the Defendant's guilty plea pursuant to the Plea Agreement on September 29, 2016. Accordingly, the terms of the Plea Agreement should apply at sentencing.

Och-Ziff, the Defendant's then-parent company, has already paid to the government a $213,055,689 criminal penalty pursuant to a Deferred Prosecution Agreement (the "DPA") in a related criminal case captioned United States v. Och-Ziff Capital Management Group LLC, 16-CR-516 (NGG). As noted in the government's prior sentencing letter in this case, (see Dkt. Entry 40), the penalty paid under the DPA exceeded the maximum fine that could be imposed against the Defendant ($182,362,364).[2] Because the conduct by OZ Africa overlapped that which was admitted to by Och-Ziff in the DPA, the government and Och-Ziff agreed that, to avoid a duplicative penalty, any fine imposed by the Court on the defendant could be satisfied by transferring part of the penalty to satisfy the fine. (See DPA ¶ 7 ("The parties agree that any criminal fine that might be imposed by the Court against OZ Africa Management GP, LLC, in connection with its guilty plea and plea agreement, will be paid from the $213,055,689 monetary penalty held in the escrow account and that any remaining balance will be transferred from the escrow account within ten (10) days of entry of the judgment to the United States Treasury.")). Although the DPA stated that the penalty payment would be held in an "escrow account," the parties encountered logistical issues when attempting to set up an escrow account after the DPA was signed. The government and Och-Ziff subsequently agreed that the DPA penalty would be paid into a "suspense account" pending the sentencing of the Defendant. Any fine imposed by the Court would be satisfied through the transfer of funds from the penalty currently being held in the suspense account.

Accordingly, pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, the parties have agreed to recommend jointly that the Court impose a nominal criminal fine of $1,000 on the Defendant at sentencing, which will be paid from the criminal penalty already paid by Och-Ziff. The Defendant is also required to pay a mandatory $400 special assessment pursuant to 18 U.S.C. § 3013(a)(2)(B), (see also Plea Agreement ¶ 20(b)).

III.    Restitution

Subsequent to the Defendant's guilty plea, former equity owners of Africo Resources Limited ("ARL") came forward as potential victims and on August 28, 2019, the Court determined that shareholders of ARL qualified as victims under the Mandatory Victims Restitution Act (the "MVRA"), and are therefore entitled to receive restitution in

---

[2] Similarly, the recommended fine range pursuant to the Defendant's applicable United States Sentencing Guidelines is well below the criminal penalty paid by the parent company. See Dkt. Entry 40; Plea Agreement ¶ 19.

this matter. (See Dkt. Entry 51). For the reasons set forth below, the Court should order restitution in the amount of $135,040,082.23.

Under the MVRA, as part of sentencing, the Court is to order restitution that fully compensates the victims for their respective losses. See 18 U.S.C. § 3663A(b). That amount is not required to be determined with mathematical precision but need only be a reasonable approximation of loss based on a sound methodology. See United States v. Gushlak, 728 F.3d 184, 195-96 (2d Cir. 2013); see also United States v. Jafari, 663 F. App'x 18, 24-25 (2d Cir. 2016); United States v. Murdock, 542 F. App'x 57, 59 (2d Cir. 2013).

As the Court is aware, the government, the Defendant, and counsel at Wilson Sonsini who represent more than 200 such former equity owners (referred to in various prior communications with the Court as the "Identified Victims") provided the Court with extensive legal briefing, and numerous expert reports, focused on the question of how to value the mining rights at the Kalukundi mine that the victims lost due to Defendant's criminal conduct. After discussions among the parties, and with the assistance of mining and financial experts engaged to assist in this matter, the parties have ultimately agreed on a resolution as to a reasonable and appropriate amount of restitution for the victim former shareholders of ARL.

As set forth in detail in the parties' prior submissions, (see, e.g., Dkt. Entry 100), the agreed-upon restitution amount is based primarily on a discounted cash flow analysis methodology generated a value for ARL's mining rights of approximately US$215 million. Based on the holdings of the former ARL equity owners, that came to a gross amount of approximately US$6.57 per share. For each former shareholder that amount was then reduced; either based on the actual proceeds from the sale of the shares if that data was available, or if not based on a weighted sales average of US$0.96. The calculation for certain option and warrant holders was different only in that the "strike price" was deducted from the gross share price rather than the proceeds amount. This agreed-upon valuation approach and share price calculation represent a sound methodology to determine a reasonable loss amount in this matter.

On October 13, 2020, the government provided the Court with a list of victims that it has determined should qualify for restitution.[3] (See Dkt. No. 106, Ex. A (filed under seal)). The victims on that list have affirmed that they were shareholders at the relevant time and have provided the government with any necessary supporting documentation to allow the government to confirm the victim status of each. Counsel for the Defendant and the Identified Victims concur with the government's assessment. The list captures approximately 68% of the former equity holders of ARL during the relevant time period. The list of victims is the result of extensive efforts by both the government and counsel for

---

[3] Since the time the government provided the list of victims to the Court, three additional victims who held approximately 36,000 shares have come forward and are now included in the appropriate restitution calculation. Prior to sentencing, the government will provide the Court with proposed restitution order including the final list of victims.

the Identified Victims to locate and contact ARL equity holders, including by sending thousands of notice letters to individuals and entities that might have been equity owners during the relevant period of time.

Accordingly, the government submits that all reasonable efforts to identify additional victims have now been taken, and as a result, sentencing can proceed, and the Court can order a restitution award to those victims on the final victim list provided to the Court. As the Court will see from the chart, for each victim there is a calculation of the net loss sustained – an amount that the government, the Defendant and counsel to the Identified Victims have all agreed represents a reasonable estimate of loss. For that reason, on the issue of restitution, the parties jointly request that the Court "So Order" the appropriate restitution amount set forth on the government's final victim list, which in total aggregates to $135,040,082.23.[4]

In the event the Court agrees with the parties' proposed restitution amount, the Defendant has committed to the prompt payment of restitution to the victims following the Court's issuance of a Judgment in this case. As the Court is aware, there is a settlement agreement in place between Defendant and the Identified Victims. According to that Agreement, provided the Court enters a restitution order no higher than $141 million, Defendant will, on the day of sentencing, wire transfer to Wilson Sonsini its restitution payment for the Identified Victims. Beyond the more than 200 victims represented by Wilson Sonsini, the government has identified 133 additional victims whose loss amounts are also included in the final list of victims. The amount of those losses aggregates to $2,039,502.78. Provided the Court accepts and So Orders the government's list, the Defendant, consistent with its obligations under the plea agreement, will be making its restitution payment to those additional victims within 10 business days of entry of the judgment by depositing $2,039,502.78 with the Clerk of the Court for the Eastern District of New York.

The government respectfully requests that the Court seal Exhibit A to this submission. The defendant and counsel to the Identified Victims agree to this request. The letter contains the name and identity of victims, information that is personal and should be sealed in order to keep it private. See United States v. Amodeo, 71 F.3d 1044, 1050-51 (2d Cir. 1995) (privacy interests of third parties may be compelling reason justifying sealing);

---

[4] The government and counsel for the Identified Victims have notified the victims in this case of the sentencing proceeding and provided them with information to attend the proceeding by videoconference or telephone. In addition, the victims have been offered the opportunity to address the Court prior to sentencing. To date, one victim has provided the government with a letter, which is attached hereto, under seal, as Exhibit A.

5

see also 18 U.S.C. § 3771(a)(8) (establishing a crime victim's "right to be treated with fairness and with respect for the victim's dignity and privacy") (emphasis added).

                                      Respectfully submitted,

                                      SETH D. DuCHARME
                                      Acting United States Attorney

By:          /s/
                                      David C. Pitluck
                                      Jonathan P. Lax
                                      James P. McDonald
                                      Assistant U.S. Attorneys
                                      (718) 254-7000


                                      DANIEL S. KAHN
                                      Acting Chief, Fraud Section
                                      U.S. Dept. of Justice, Criminal Division

By:          /s/
                                        Gerald M. Moody, Jr.
                                      Trial Attorney
                                      (202) 616-4988

cc:     Clerk of the Court (NGG) (by ECF)
         All Counsel of Record (by ECF)